# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00683-CMA-NYW

SPOWER DEVELOPMENT COMPANY, LLC,

      Plaintiff,

v.

COLORADO PUBLIC UTILITIES COMMISSION, a regulatory agency of the State of Colorado;
JEFFREY P. ACKERMANN, in his official capacity as Commissioner and Chairman of the Colorado Public Utilities Commission;
FRANCES A. KONCILJA, in her official capacity as Commissioner of the Colorado Public Utilities Commission; and
WENDY M. MOSER, in her official capacity as Commissioner of the Colorado Public Utilities Commission,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Nina Y. Wang

      This matter comes before the court on three pending motions:

      (1)     Prospective Intervenor Public Service Company of Colorado's ("Public Service") Motion to Intervene [#15, filed Apr. 6, 2017];

      (2)     Defendants Colorado Public Utilities Commission, Jeffery P. Ackermann, Frances A. Koncilja, and Wendy M. Moser's (collectively, "Defendants") Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (the "Motion to Dismiss") [#16, filed Apr. 7, 2017]; and

      (3)     Prospective Intervenor Black Hills/Colorado Electric Utility Company, LP's ("Black Hills") Motion to Intervene [#20, filed Apr. 21, 2017].

The undersigned Magistrate Judge considers the pending motions pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated May 1, 2017 [#32], and the memorandum dated May 1, 2017 [#33]. This court concludes that oral argument would not materially assist in the resolution of this matter. Accordingly, upon careful review of the pending motions and associated briefing, the applicable law, and entire case file, this court respectfully RECOMMENDS that the Motion to Dismiss be GRANTED and the Motions to Intervene be DENIED AS MOOT with leave to re-file, if necessary, after the disposition of this Recommendation.[1]

## BACKGROUND

Plaintiff sPower Development Company, LLC ("Plaintiff" or "sPower") initiated this action by filing its Complaint for declaratory and injunctive relief on March 16, 2017. [#1]. Plaintiff, a Delaware limited liability company, develops and builds electric generation facilities powered by renewable energy resources. [*Id.* at ¶ 5]. sPower requests that the court "overturn a state regulation adopted by Defendants that violates [the Public Utility Regulatory Policies Act of 1978 ("PURPA" or "Act")] and unlawfully restricts the process by which certain independent companies can supply electric energy and/or capacity to electric utilities." [*Id.* at ¶ 1]. Accordingly, sPower brings this action pursuant to section 210(h)(2)(B) of the Act against the Colorado Public Utilities Commission ("COPUC"), including its Commissioners Mr.

---

[1] For purposes of this Recommendation, given the fact that the Motion to Dismiss is dispositive and requires a Recommendation, this court treats the Motions to Intervene as dispositive. *See Galyas v. Lockheed Martin Corp.*, No. 10-CV-03122-PAB-BNB, 2011 WL 3648577, at *1 (D. Colo. June 14, 2011); *but see Pub. Serv. Co. of Colorado v. Bd. of Cty. Com'r of San Miguel Cty.*, No. 04-CV-01828 REB CBS, 2005 WL 2293650, at *3 (D. Colo. Sept. 19, 2005) (concluding that a motion to intervene is non-dispositive because it does not have *res judicata* effect on the prospective intervenor's future claims against the plaintiff or defendant).

Ackermann and Mses. Koncilja and Moser, a "State regulatory authority" as defined under the Act. [*Id.* at ¶¶ 7-9].

Currently, sPower is developing eleven electric generation facilities in Colorado—facilities the Federal Energy Regulatory Commission ("FERC") certified as Qualifying Facilities ("QFs") under the PURPA. [*Id.* at ¶¶ 5-6, 17-18]; *see also* 16 U.S.C. § 824a-3; 18 C.F.R. § 292.101(b)(1). Under the Act and the FERC's implementing regulations, electric utilities are required to purchase a QF's offered energy and/or capacity at the utility's "avoided costs," i.e., "the incremental costs to the utility" of capacity and/or energy that the utility would have produced or purchased elsewhere had it not purchased the energy/capacity from the QF. [*Id.* at ¶¶ 2, 19-21]. This is commonly referred to as the PURPA's "must-buy" provision. *See* [*id.* at ¶¶ 2, 19]; *see also* 16 U.S.C. § 824a-3(a); 18 C.F.R. § 292.303(a). QFs and utilities have the ability to enter into contracts or legally enforceable obligations under the "must-buy" provision. [*Id.* at ¶ 2].

Plaintiff avers that, although state regulatory authorities have some latitude in setting avoided costs, they must still comply with the Act's "must-buy" provision and the FERC's implementing regulations. [#1 at ¶¶ 2, 23-29]. Here, sPower challenges Defendants' Rule 3902(c) of the Rules Regulating Electric Utilities that applies to QFs with a design capacity of greater than 100 kilowatts ("kW"). [*Id.* at ¶¶ 3, 33-34]; *see also* 4 Colo. Code Regs. § 723-3:3902(c). Rule 3902(c) states, in relevant part, that utilities "shall use a bid or an auction or a combination procedure to establish its avoided costs for facilities . . . [t]he utility is obligated to purchase capacity or energy from a [QF] *only if* the [QF] is awarded a contract under the bid or auction or combination process." 4 Colo. Code Regs. § 723-3:3902(c) (emphasis added). The

"bid or auction or combination process" referred to in the rule is the electric resource planning ("ERP") process that applies to every utility regulated by the COPUC, and the ERP process occurs every four years. [#1 at ¶¶ 35-36]. The purpose of the quadrennial ERP is for utilities "to acquire new utility resources" for its customers. [*Id.* at ¶ 37]; 4 Colo. Code Regs. § 723-3:3611(a). However, the COPUC "regularly approves contracts for the acquisition of resources outside of the ERP process." [#1 at ¶ 39].

sPower alleges that Rule 3902(c) "places an unlawful restriction on a QF's ability to enter a contract with a utility at an avoided cost rate, thereby violating PURPA's must-buy requirement[.]" [#1 at ¶ 38]. Specifically, the FERC's regulations provide QFs with two mechanisms for selling their electrical output to a utility: (1) on an "as available" basis with avoided costs calculated at the time of delivery; or (2) through a contract or legally enforceable obligation with avoided costs calculated at the time of delivery or at the time the obligation is incurred. *See* [*id.* at ¶¶ 24, 40]; 18 C.F.R. § 292.304(d). However, sPower asserts that Rule 3902(c) prevents a QF, such as sPower, from exercising these rights by requiring it to win "an infrequently-held [request for proposals ("RFP")]" before selling its output. [#1 at ¶ 41]. Plaintiff contends that Defendants have thus prevented it from procuring contracts or legally enforceable obligations from Colorado utilities to buy its electrical output from its eleven QFs in Colorado—a violation of both the PURPA and the FERC's implementing regulations. [*Id.* at ¶¶ 42-43, 60]. Further, sPower asserts that the FERC, on two prior occasions, has held that similar rules violate the PURPA and its own regulations. [*Id.* at ¶¶ 4, 44].

On December 30, 2016, sPower filed its Petition for Enforcement pursuant to section 210(h) of the Act with the FERC. [*Id.* at ¶ 45]; 16 U.S.C. § 824a-3(h). Plaintiff requested that

the FERC invalidate the ERP requirement of Rule 3902(c); the FERC then had sixty (60) days to initiate enforcement proceedings. [*Id.* at ¶¶ 46-47]; 16 U.S.C. § 823a-4(h). However, because the FERC did not possess the necessary quorum to initiate such proceedings, it did not act on sPower's petition within the requisite 60 days; thus, Plaintiff filed the instant action in this court pursuant to section 210(h)(2)(B) of the Act. [#1 at ¶¶ 48-53]; 16 U.S.C. § 824a-3(h)(2)(B).

On April 6, 2017, prospective Intervenor Public Service filed its Motion to Intervene. [#15]. The following day, Defendants filed their Motion to Dismiss, seeking dismissal of Plaintiff's Complaint in its entirety. [#16]. Then, on April 21, 2017, prospective Intervenor Black Hills filed its Motion to Intervene.[2] [#20]. A Scheduling Conference is currently set for June 22, 2017, before the undersigned Magistrate Judge. [#40]. The pending motions are now ripe for Recommendation.

## LEGAL STANDARD

Defendants move to dismiss sPower's Complaint for three reasons. First, Defendants argue that this court lacks subject matter jurisdiction over Plaintiff's claim, because Plaintiff lacks standing to challenge Rule 3902(c). [#16 at 6-9]. Second, Defendants argue that, to the extent sPower levies an "as applied" challenge to the rule, such a claim must be filed in state court pursuant to section 210(g) of the PURPA. [*Id.* at 9-10]. Lastly, despite these jurisdictional shortcomings, Defendants argue that Plaintiff fails to state a claim for relief under Rule 12(b)(6). [*Id.* at 10-13]. Because this court concludes that sPower lacks standing, it does not reach their alternative arguments. *See Cunningham v. BHP Petroleum Great Britain PLC*, 427 F.3d 1238,

---

[2] Both Public Service and Black Hills identify themselves as public utilities regulated by the COPUC. [#15, #20].

1245 (10th Cir. 2005) (holding that once a federal court determines that it is without subject matter jurisdiction, it must not proceed to consider any other issue).

Federal courts are courts of limited jurisdiction and, as such, "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *The Wilderness Soc. v. Kane Cty., Utah*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). Under Article III of the United States Constitution, federal courts only have jurisdiction to hear certain "cases" and "controversies." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014). To satisfy Article III's case or controversy requirement, Plaintiff must establish: (1) an injury in fact; (2) a sufficient causal connection between the injury and the conduct complained of; and (3) a likelihood of redressability by a favorable decision. *New Mexico v. Dep't of Interior*, 854 F.3d 1207, 1214-15 (10th Cir. 2017) (quotations and citations omitted).[3]

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may bring either a facial or factual attack on subject matter jurisdiction, and a court must dismiss a complaint if it lacks subject matter jurisdiction. *See generally Pueblo of Jemez v. United States*, 790 F.3d 1143, 1147 n.4 (10th Cir. 2015) (explaining that Rule 12(b)(1) motions may facially or factually challenge subject matter jurisdiction, and that courts may consider affidavits and other

---

[3] A plaintiff must also satisfy the requirements of prudential standing. To establish prudential standing, a plaintiff must (1) assert its own rights, rather than those belonging to third parties; (2) demonstrate that its claim is not simply a "generalized grievance;" and (3) show that its grievance falls within the zone of interests protected or regulated by statutes or constitutional guarantee invoked in the suit. *See Bd. of Cty. Comm'rs of Sweetwater Cty. v. Geringer,* 297 F.3d 1108, 1112 (10th Cir. 2002) (citations omitted). Here, it appears that Defendants do not contest sPower's prudential standing to bring this suit, and this court assumes without deciding that sPower has established prudential standing under section 210(h) of the PURPA, 16 U.S.C. § 824a-3(h). *Compare* [#31 at 3-4] *with* [#35 at 2-3]. Therefore, this court's inquiry focuses solely on sPower's constitutional standing.

documents when addressing a factual attack). For a facial attack, the court takes the allegations in the Complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a factual attack on subject matter jurisdiction, the court may not presume the truthfulness of the complaint's factual allegations, and has wide discretion to allow affidavits and other documents to resolve disputed jurisdictional facts. *Id.* at 1003.

It is not entirely clear what type of challenge Defendants are asserting. Defendants introduce matters outside of the Complaint, and cite the law that indicates that the court's consideration of information outside the record does not convert a motion to dismiss to one for summary judgment, suggesting a factual attack. [#16 at 4, 5; #16-1]. But Defendants also argue that Plaintiff's Complaint on its face is deficient because it fails to include sufficient supporting facts. [#16 at 6]. This court concludes that under either standard, the outcome is the same (given the fact that in response, Plaintiff offers no evidence) [#31], but this court will apply the more liberal standard of a facial attack as it does not rely on Defendants' proposed exhibit in its analysis.

## ANALYSIS

Defendants move to dismiss sPower's Complaint because sPower fails to allege facts demonstrating that it suffered an injury-in-fact caused by Rule 3902(c) that this court can redress. [#16 at 6]. Defendants contend that the Complaint "neglects to include any facts" concerning sPower's "planned" QFs in Colorado, whether such facilities are developed, or how Rule 3902(c) "thwarted" its development efforts or its ability to procure "must-buy" contracts and/or legally enforceable obligations from utilities under the PURPA. [*Id.*]. sPower insists that it has "statutory standing," under 16 U.S.C. § 824a-3(h)(2)(B), and that it also has standing under

7

the "common-law standard."  [#31 at 2].  For the following reasons, this court respectfully concludes that sPower lacks standing in this action.

## I.       Statutory Standing

The court first addresses Plaintiff's argument that it has "statutory standing."  In making this argument, sPower conflates the concepts of "statutory standing" and "jurisdictional standing," which are not synonymous or interchangeable.  *Day v. Bond*, 511 F.3d 1030 (10th Cir. 2007).  The United States Supreme Court has long made it clear that the question of "statutory standing," i.e., "whether plaintiff came within the 'zone' of interests' for which the cause of action was available," and "jurisdictional standing," whether there exists a case and controversy under Article III," are separate concepts.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 (1998).  As aptly noted by Defendants, the existence of a private right of action does not supplant the requirement for a plaintiff to establish that it has standing.  *See Spokeo, Inc. v. Robins*, 138 S.Ct. 1540, 1547-48 (2016).  sPower cites no authority, and this court could find none, that suggests an exception to this general rule (that the availability of a statutory remedy under PURPA is sufficient to confer Article III standing), and this court declines to find one.

## II.      Article III Standing

As discussed above, federal courts are courts of limited jurisdiction, and Plaintiff bears the burden of satisfying the elements of standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  The court first turns to injury-in-fact, which has been described as the "first of three 'irreducible' requirements for Article III standing."  *Spokeo*, 128 S.Ct. at 1552 (Thomas, J., concurring) (citing *Lujan*, 504 U.S. at 560)).

***Injury in fact.*** First, Defendants argue that sPower fails to allege that it suffered an actual injury. [#16 at 6; #35 at 3]. Defendants aver that the Complaint fails to include facts supporting sPower's allegations that Rule 3902(c) has prohibited it from procuring contracts or legally enforceable obligations from Colorado utilities or that the rule has adversely affected the development of its QFs. [#16 at 6]. Rather, any claimed injury is conjectural or hypothetical, not concrete and particularized or actual and imminent. [#16 at 7-8; #35 at 4-5]. This is because: (1) it is unclear whether sPower's planned QFs are actually developed; (2) nothing precludes sPower from participating in the ERP process or seeking to enforce a contract or legally enforceable obligation procured outside of the ERP process; and (3) it is mere speculation that, absent Rule 3902(c), sPower would procure contracts or legally enforceable obligations from Colorado utilities.[4] [#16 at 8; #35 at 4-5].

Plaintiff responds that Rule 3902(c)'s ERP requirement prohibits it from procuring contracts or legally enforceable obligations from Colorado utilities which, in turn, precludes it from completing the development of its QFs. [#31 at 5]. Specifically, the lack of contracts or legally enforceable obligations has hindered sPower's ability to acquire "financing for the projects, [has] delayed the projects' schedules, and has led to uncertainty as to whether [it] will be able to recover its investments in these QFs at all, all of which diminish the value of sPower's investments and prevent it from pursuing its normal course of business." [*Id.*]. In addition, Plaintiff asserts that a Colorado utility rejected its offer to contract with its QFs because of Rule 3902(c). [*Id.* at 7].

---

[4] Defendants' arguments for injury-in-fact and redressability are similar, and the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has "observed that each of the three standing elements blends into the others[.]" *Wyoming Sawmills Inc. v. U.S. Forest Serv.*, 383 F.3d 1241, 1247-48 (10th Cir. 2004) (internal quotations and citation omitted).

"Injury in fact involves invasion of a legally protected interest that is concrete, particularized, and actual or imminent." *Citizen Ctr. v. Gessler*, 770 F.3d 900, 910 (10th Cir. 2014). Conjectural or hypothetical injuries or future injuries that are not certainly impending are insufficient. *See Brown v. Buhman*, 822 F.3d 1151, 1165 (10th Cir. 2016); *accord Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 544 (10th Cir. 2016) ("[A] plaintiff must offer something more than the hypothetical possibility of injury. . . . the alleged injury [cannot be] too speculative"). And, while general factual allegations of injury may suffice, conclusory allegations are insufficient; sPower "must adequately allege a plausible claim of injury." *COPE v. Kansas State Bd. of Educ.*, 821 F.3d 1215, 1221 (10th Cir. 2016).

While true that economic injuries generally constitute injuries in fact, *see, e.g.*, *Robbins v. Wilkie*, 300 F.3d 1208, 1211 (10th Cir. 2002), most of Plaintiff's factual allegations appear for the first time in Plaintiff's Response to Defendants' Motion to Dismiss, not its Complaint. *See In re Qwest Communications Int'l., Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) ("The plaintiff[] may not effectively amend [its] Complaint by alleging new facts in [its] response to a motion to dismiss."). The case law is clear that the court's consideration of sPower's standing must be based on the allegations in its Complaint at the time the Complaint is filed; this is so even if sPower were to amend its Complaint. *Cf. S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013). In the Complaint, sPower alleges: (1) "Rule 3902(c) places unreasonable restrictions on the rights of QFs to enter into long-term obligations by requiring QFs, such as those owned by Plaintiff, to win a competitive solicitation process before they may enter into a contract," in violation of the PURPA [#1 at ¶¶ 3, 38, 41]; (2) "Rule 3902(c) has prevented sPower [] from entering into contracts or other legally enforceable obligations to sell

energy and capacity from its eleven planned QFs to a public utility in Colorado," [*id.* at ¶¶ 42, 60]; and (3) "Rule 3902(c) has resulted in ongoing injury to [Plaintiff] because it has thwarted [its] efforts to complete the development of its planned QFs in Colorado and to make business plans for the future," [*id.* at ¶¶ 43, 61].  Respectfully, this court concludes that sPower fails to proffer sufficient factual allegations to support its alleged injury.  *See COPE*, 821 F.3d at 1221 ([P]laintiff[] must adequately allege a plausible claim of injury.").

As an initial matter, there are no allegations in the Complaint that Plaintiff has QFs that stand ready to sell energy and capacity to a utility; rather, the allegations are that sPower has "eleven *planned* QFs."  [#1 at ¶ 42 (emphasis added); #31 at 7].  There are no allegations that sPower can enter contracts to provide energy and capacity with only planned QFs, or in what stage of development these QFs sit.  There are also no factual allegations, in contrast to a conclusion, that Rule 3902(c) has caused or will cause otherwise willing utilities to forego contracting with sPower.  *See generally* [#1].

There are also insufficient facts to establish that the ERP process itself prohibits sPower from exercising its rights under the PURPA and the FERC's implementing regulations.  To that end, there are no allegations that Defendants preclude sPower from participating in the ERP process or that sPower will be unsuccessful in the ERP process, such that it will be precluded from selling excess energy and capacity to utilities.  Next, sPower alleges that the COPUC "regularly approves contracts for the acquisition of resources outside of the ERP process."  [#1 at ¶ 39].  According to Plaintiff's own admission, it appears that sPower can exercise its rights under the PURPA and the FERC's implementing regulations, despite Rule 3902(c)'s ERP requirement.  *Cf. Allco Fin. Ltd. v. Klee*, No. 3:15-CV-608 (CSH), 2016 WL 4414774, at *15 (D.

Conn. Aug. 18, 2016) (holding that the plaintiff's alleged injury—"not being able to get a contract" under a Connecticut regulation implementing the PURPA—"can only be characterized as 'conjectural or hypothetical.'"). The factual allegations in the Complaint are simply insufficient for this court to conclude that an injury is "actual or imminent."

Nor does this court find sufficient an allegation that Rule 3902(c) may pose obstacles to sPower's financial future, as there are insufficient facts alleged to lead the court to conclude that there is a future injury that is certainly impending or that "there is a substantial risk that the harm will occur." *Brown*, 822 F.3d at 1165 (quotations and citation omitted). Accordingly, this court concludes that sPower fails to plead an actual or imminent injury.[5]

***Redressability.*** Defendants also contend that, even if the court strikes the ERP requirement from Rule 3902(c), Plaintiff's theory of recovery—that it will enter into contracts or legally enforceable obligations with Colorado utilities—"depends on layers of conjecture and speculation." [#35 at 5]. Namely, there is no guarantee that sPower will be able to procure such contracts or legally enforceable obligations given the competition from other QFs within Colorado. [*Id.* at 5]. According to Defendants, the remedy sought by Plaintiff will have no practical effect; thus, Plaintiff fails to satisfy the redressability prong of standing. [*Id.* at 5-6].

For Plaintiff's injury to be redressable, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1223 (10th Cir. 2008) (internal quotations omitted) (quoting

---

[5] To the extent Plaintiff raises a preemption challenge to Rule 3902(c) predicated on the Supremacy Clause, *see* [#31 at 9-10], this court also concludes that sPowers lacks standing to raise such a claim, because Plaintiff fails to allege an actual injury and, as discussed *infra*, a favorable decision will not redress any alleged injury. *See The Wilderness Soc. v. Kane Cty., Utah*, 632 F.3d 1162, 1168 n.1 (10th Cir. 2011) ("Even in a preemption challenge, a party must have constitutional standing which is jurisdictional.").

*Lujan*, 504 U.S. at 560-61). Further, "what makes a declaratory judgment action a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is [] the settling of some dispute which affects the behavior of the defendant toward the plaintiff." *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994) (internal quotations and citations omitted), *superseded by statute on other grounds as recognized in Walker v. UPS Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001).

While Defendants argue that granting sPower the relief requested against Defendants does not guarantee that it will have better success procuring contracts or legally enforceable obligations from Colorado utilities, *see Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1159 (10th Cir. 2005) (explaining that redressability "must be the effect of the court's judgment on the defendant that redresses the plaintiff's injury, whether directly or indirectly"), the motions to intervene filed by Public Service and Black Hills tell a different story. Both prospective intervenors argue that if the relief sought by Plaintiff is afforded, they will be forced to purchase the capacity and energy output from sPower, rather than sPower's allegation that it is precluded from supplying such output and capacity to the utilities. *See* [#15, #20]. This court finds that given its analysis on the injury-in-fact prong of standing, it need not reach redressability.

For the reasons set forth herein, this court respectfully **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** for lack of standing.

III.    **The Motions to Intervene**

Because this court respectfully recommends granting Defendants' Motion to Dismiss, this court also respectfully **RECOMMENDS** that the motions to intervene be **DENIED AS**

**MOOT** with leave to re-file, if appropriate, after the Honorable Christine M. Arguello's disposition of this Recommendation.

## CONCLUSION

For the reasons stated herein, this court respectfully **RECOMMENDS** that:

(1)    Defendants Colorado Public Utilities Commission, Jeffery P. Ackermann, Frances A. Koncilja, and Wendy M. Moser's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [#16] be **GRANTED**;

(2)    Prospective Intervenor Public Service Company of Colorado's Motion to Intervene [#15] be **DENIED AS MOOT** with leave to re-file, if necessary; and

(3)    Prospective Intervenor Black Hills/Colorado Electric Utility Company, LP's Motion to Intervene [#20] be **DENIED AS MOOT** with leave to re-file, if necessary.[6]

---

[6] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

**IT IS FURTHER ORDERED** that:

(1)     The Scheduling Conference set for **June 22, 2017, at 10:30 a.m.** is **VACATED**; and

(2)     Within three (3) business days of the disposition of this Recommendation, to the extent that Judge Arguello's Order does not fully dispose of this matter, the Parties shall jointly **CONTACT** the Chambers of Magistrate Judge Wang to schedule a status conference to discuss further scheduling of this matter.

DATED:  June 6, 2017                              BY THE COURT:

                                                 s/Nina Y. Wang_____
                                                 Nina Y. Wang
                                                 United States Magistrate Judge