## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-00683-CMA-NYW
**sPower Development Company, LLC**, a Delaware limited liability company,

       Plaintiff,

v.

**Colorado Public Utilities Commission**, an agency of the State of Colorado;
**Jeffrey P. Ackermann**, in his official capacity as Commissioner and Chairman of the Colorado Public Utilities Commission;
**Frances A. Koncilja**, in her official capacity as Commissioner of the Colorado Public Utilities Commission; and
**Wendy M. Moser**, in her official capacity as Commissioner of the Colorado Public Utilities Commission;

       Defendants.

---

## PLAINTIFF SPOWER'S OBJECTIONS TO RECOMMENDED DECISION PURSUANT TO FED. R. CIV. P. RULE 72 OF SPOWER DEVCO

---

Plaintiff sPower Development Company, LLC (**sPower**), through its undersigned counsel and pursuant to Fed. R. Civ. P. Rule 72, respectfully submits these objections (**Rule 72 Objections**) to the RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE issued by Magistrate Judge Nina Y. Wang on June 6, 2017 (**Recommended Decision** or **RD**).

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

This case raises the important legal question of whether the Colorado Public Utilities Commission (**CoPUC**) has violated federal law by abrogating federal legal rights

that Congress bestowed on qualifying facilities (**QFs**), including those owned by sPower, under the Public Utility Regulatory Policies Act of 1978 (**PURPA**).

Congress enacted PURPA to solve a problem: it was difficult for developers, like sPower, to finance and develop small power production facilities, such as those using renewable energy and cogeneration, because utilities have immense market power that allows them to refuse to purchase power from (or sell power to) these producers. *FERC v. Mississippi*, 456 U.S. 742, 750 (U.S. 1982). To combat the utilities' market power, Congress gave QFs the right to force a utility to purchase any energy and capacity that the QF makes available to the utility at the same cost that the utility would pay to generate that energy and/or capacity itself or purchase it from a non-QF third-party (known as the "**avoided cost**"). Congress directed the Federal Energy Regulatory Commission (**FERC**) to promulgate rules to implement the new rights it created for QFs and the new obligations it created for utilities. 16 USC § 824a-3(a); 18 CFR § 292.303(a). The Tenth Circuit has confirmed that as long as a QF satisfies the statutory and regulatory eligibility criteria for QF status, which sPower's QFs have satisfied, a QF "can force a utility to buy the energy for its 'avoided cost.'" *N. Laramie Range Alliance v. FERC*, 733 F.3d 1030, 1033 (10th Cir. 2013) (citing 16 USC § 824a-3(a)-(b), (d); 18 CFR §§ 292.101(b)(6), 292.303(a), 292.304(a)(2)).

sPower alleges in its Complaint that the CoPUC's 4 CODE OF COLORADO REGULATIONS 723-3-3902(c) (Rule 3902(c)) unlawfully abrogates the legal right Congress bestowed on QFs (like sPower) under federal law to force a utility to buy QF energy and capacity at the utility's avoided cost. Specifically, the Complaint alleges that

Rule 3902(c) requires a QF to compete in and win a competitive request for proposal (**RFP**) through a utility's quadrennial electric resource planning (**ERP**) process before a QF may sell energy and capacity to a utility. Compl. [#1], ¶¶ 34-37. Because Rule 3902(c) requires a QF to compete in and win an RFP process as a precondition to sell energy and capacity to a utility, sPower cannot "force a utility" to buy its power at the utility's avoided cost rate, as it has the right to do under PURPA. Compl. ¶ 38, 40-42.

Because Rule 3902(c) has prevented sPower from exercising its legal right under PURPA, sPower has been unable to complete development of its QFs, and it has suffered economic and competitive injuries as a result. Specifically, sPower has been prevented from completing the development of its QFs in Colorado, and it has suffered competitive injury by being denied its PURPA right to sell energy and capacity to Public Service Company of Colorado (**Public Service**) without competing in the ERP. Compl. ¶¶ 45-47, 35-38. When Congress bestows a right under the law, a person who is denied that right suffers an injury-in-fact, and has standing to bring a complaint to redress that injury. sPower has demonstrated through the allegations in its Complaint that it has suffered this injury, that this injury is caused by CoPUC Rule 3902(c), and that the relief sPower has requested in its Complaint will redress this injury.

II.   **SPOWER HAS STANDING TO BRING THIS LAWSUIT BECAUSE IT HAS SUFFERED AN INJURY-IN-FACT THAT IS CAUSED BY THE COPUC'S RULE 3902(C) AND A FAVORABLE DECISION IN THIS CASE WILL REDRESS SPOWER'S INJURY.**

When ruling on a motion to dismiss for want of standing, the Court must accept as true all material allegations of the Complaint, and the Court must construe the Complaint in favor of the complaining party. *Warth v. Seldon*, 422 U.S. 490, 501 (1975).

3

The Court must also presume "that general allegations embrace those specific facts that are necessary to support the claim," *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal citations omitted), and the Court must consider all allegations contained in documents that are incorporated by reference, such as the exhibits submitted with sPower's Complaint. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (finding documents incorporated by reference, such as exhibits attached to a complaint, to be part of the complaint for evaluating the complaint's sufficiency).

The Recommended Decision errs in finding that "most of [sPower's] factual allegations appear for the first time in [sPower's] Response to Defendants' Motion to Dismiss, not its Complaint." RD at 10-11. All factual allegations that sPower discusses in its Response to Defendants' Motion to Dismiss also appear in Exhibit 2 to sPower's Complaint, and are the logical outgrowth of the most favorable reading of the general allegations in the Complaint. Accordingly, in addition to the factual allegations recognized in the Recommended Decision, the Court must also consider, and must consider as true for the purposes of evaluating the Motion to Dismiss, the following factual allegations that appear in Exhibit 2 to the Complaint: (1) sPower's QFs are under development; (2) sPower attempted to force Public Service to purchase energy and capacity from its QFs; (3) Public Service rejected sPower's efforts, citing Rule 3902(c) as the reason that Public Service does not believe it is required to purchase QF energy and capacity from sPower; (4) despite a motion from sPower explaining that Rule 3902(c) does not comply with PURPA or the FERC's regulations, the Defendants refused to enforce PURPA's must-buy requirement, and (5) the Defendants have further

prejudiced sPower by allowing Public Service to develop and own significant new generating facility capacity outside of the ERP process while forcing sPower to compete in and win the ERP as the only means of developing its QFs. Compl., Exhibit 2 at 5-8, 13-15. The Magistrate Judge erred in failing to acknowledge these well-plead facts.

When the Court considers these factual allegations in addition to the allegations that appear in the body of sPower's Complaint, the Court will find that sPower has suffered, and continues to suffer, an injury-in-fact, and that sPower's Complaint is not based on a hypothetical or theoretical argument that QFs in Colorado may not be able to exercise their rights under PURPA. *See* RD at 12. Accordingly, the Recommended Decision should not be followed and the Defendant's Motion to Dismiss should be denied. sPower is inarguably within the class of entities that PURPA was enacted to protect, and this matter should proceed so the Court may address the merits of sPower's Complaint and redress sPower's injuries consistent with PURPA.

**A.** **sPower Has Suffered Multiple Injuries-In-Fact Because the CoPUC Has Abrogated sPower's Rights Under PURPA and That Abrogation Has Resulted in Financial and Competitive Injuries to sPower.**

To establish an injury-in-fact, sPower "must show that [it] suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (US 2016) (citing *Lujan*, 504 U.S. at 560 (1992)). sPower satisfies this element of standing by alleging in its Complaint, and the attachments thereto, that: (i) that sPower has been denied its federal legal right under PURPA to force Public Service to purchase its energy and capacity, (ii) that sPower's inability to force a sale under PURPA has

prevented sPower from completing the development of its QFs in Colorado, and (iii) that sPower has suffered a competitive injury by being denied its right to sell energy and capacity to a utility while the CoPUC has approved new utility-owned generation outside of the ERP process. The Court should find these allegations sufficient to demonstrate sPower's constitutional standing to bring its Complaint. The Recommended Decision errs in looking to the development stage of sPower's QFs to determine whether sPower has standing to bring this action.

### 1. sPower has suffered a concrete and particularized injury-in-fact because it has been denied its federal legal right under PURPA to force Public Service to purchase its energy and capacity.

sPower has alleged sufficient facts in its Complaint, including Exhibit 2 to the Complaint, for the Court to find that sPower has been denied its federal legal rights as a QF as a result of Rule 3902(c). Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute. *Linda R. S. v. Richard D.*, 410 U.S. 614, 617 (1973). The Supreme Court has consistently found, across a variety of fact patterns, that a plaintiff who has alleged the invasion of a right created by statute has suffered an injury-in-fact and has standing to sue in federal court.

For example, Congress has elevated "an individual's personal interest in living in a racially integrated community" and "a company's interest in marketing its product free from competition" to the status of legally cognizable injuries, even though the invasion of these interests would not confer constitutional standing in the absence of an applicable statute. *Lujan*, 504 U.S. at 578 (1992) (citing *Trafficante v. Metropolitan Life Ins. Co.*,

and *Hardin v. Kentucky Utilities Co.*, 390 U.S. 1, 6 (1968)); *see also Public Citizen v. United States Department of Justice*, 491 U.S. 440, 449 (1989) (holding that public interest groups' denial of access to documents that were required to be made public under the Federal Advisory Committee Act resulted in a distinct injury-in-fact); *see also Federal Election Comm'n v. Akins*, 524 U. S. 11, 20-25 (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury-in-fact to satisfy Article III).

Here, PURPA has created a legal right for owners of QFs, such as sPower, to force a utility, such as Public Service, to purchase QF energy and capacity. 16 USC § 824a-3(a); 18 CFR 292.303(a). This is known as PURPA's must-buy requirement and state utility regulatory authorities, such as the Defendant, must enforce it by requiring utilities to purchase any QF energy and capacity that is made available to them. 16 USC § 824a-3(f);18 CFR § 292.303(a). By requiring QFs to compete in a quadrennial RFP process through Rule 3902(c), Defendants abrogate a QF's federally bestowed right to force a sale of energy and capacity on a utility. Compl., ¶ 35-37; Compl., Exhibit 2 at 11; *see also Hydrodynamics Inc.*, 146 F.E.R.C. P61,193, 61844-5 (FERC 2014).

Since PURPA grants sPower the legal right to force Public Service to purchase its energy and capacity, the abrogation of this right constitutes "a sufficiently distinct injury to provide standing to sue." *Public Citizen*, 109 S. Ct. at 2564. As a result, sPower "need not allege any *additional* harm beyond the one Congress has identified," *Spokeo, Inc.*, 136 S. Ct. at 1550 (italics in original). In this case, sPower's inability to exercise its

right under PURPA to force Public Service to purchase its QF energy and capacity at Public Service's avoided cost is a concrete injury.

Congress specifically considered that a state regulatory authority's non-compliant implementation of PURPA could cause sufficient harm to a QF that a QF would need to file a petition for enforcement with the FERC and, if the FERC did not act, bring suit in federal district court. 16 USC § 824a-3(h)(2)(B). Because sPower owns QFs, but cannot force a sale of energy and capacity from those QFs due to the Defendants' non-compliant implementation of PURPA, sPower has suffered an injury-in-fact and has a right to file its Complaint in federal court pursuant to Section 210(h)(2)(B) of PURPA.

sPower's injury is concrete because Congress has specifically granted the owners of QFs, like sPower, the rights Defendants have denied. The injury is particularized because sPower itself has suffered this injury directly, and the Defendants' refusal to require Public Service to purchase energy and capacity from sPower's QFs has directly impacted sPower's QFs and sPower's underlying interest in selling its QF energy and capacity to Public Service. Because Defendants have denied sPower its rights granted to it by PURPA, the Court should find that sPower has alleged a cognizable injury-in-fact and has constitutional standing to bring this case.

### 2. sPower has suffered an injury-in fact because it has been prevented from forcing a sale under PURPA that would allow sPower to complete the development of its QFs in Colorado.

Although the violation of its PURPA rights is sufficient to demonstrate standing, sPower has alleged financial harm that further demonstrates that sPower has suffered an injury-in-fact. Specifically, the inability to force a sale under PURPA has caused, and

continues to cause, sPower to suffer economic harm because it cannot complete the development of its QFs. sPower has invested substantial company resources into planning and developing its QFs in Colorado in reliance on its PURPA rights to compel Public Service to purchase its QF energy and capacity. In Exhibit 2 to sPower's Complaint, sPower states that it has determined the capacity size and commercial operation date for each QF, submitted (and paid for) requests for interconnection studies for each QF, and submitted FERC's Form 556 certifying QF status. Compl., Exhibit 2, at 7-8. The economic consequences to sPower's business because of the uncertainty it faces are substantial, and "[e]conomic injury is clearly a sufficient basis for standing." *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir., 1996) (internal citations omitted). In addition to being injured by being denied its PURPA rights, the Court should find that sPower has suffered financial injuries that constitute an injury-in-fact due to its inability to rely on PURPA.

> **3. sPower has suffered a competitive injury by being denied its right to force a sale of energy and capacity on Public Service outside of the ERP while the CoPUC has approved Public Service's request to build and own a new generating facility without the need for Public Service to compete in the ERP.**

sPower also has "competitor standing" to bring its Complaint. *New World Radio, Inc. v. FCC*, 294 F.3d 164, 170 (2002). A plaintiff demonstrates competitor standing when the plaintiff alleges "probable economic injury resulting from [governmental actions] that alter competitive conditions." *Clinton v. City of New York*, 524 U.S. 417, 433 (1998) (quoting 3 K. Davis & R. Pierce, Administrative Law Treatise 13-14 (3d ed. 1994) (alterations in original)).

Although the CoPUC requires QFs, such as those owned by sPower, to compete in and win a quadrennial RFP process before they may sell their energy and capacity to Public Service, the CoPUC places no such requirements on the public utilities themselves in Colorado. Colorado public utilities, like Public Service, may propose to develop and own new generating facilities without participating in and winning the RFP that is part of a quadrennial ERP process. Compl., ¶ 39; Compl., Exhibit 2 at 13. By allowing Public Service to build generating facilities outside the ERP, the CoPUC lessens the need for Public Service to acquire new energy and capacity during the ERP, which reduces the opportunities that sPower's QFs would have to sell energy and capacity to Public Service within the ERP. *Id*.

A plaintiff "suffers constitutional injury in fact when agencies lift regulatory restrictions on [its] competitors or otherwise allow increased competition" against it. *La. Energy & Power Auth. v. FERC*, 141 F.3d 364, 367 (D.C. Cir., 1998). Here, the CoPUC has used Rule 3902(c) to place burdens on sPower's QFs that it does not place on utilities like Public Service. This puts QFs at a competitive disadvantage in building new generating facilities in Colorado. Accordingly, the Court should find that sPower has demonstrated competitor standing to bring its Complaint.

### 4. The development stage of sPower's QFs is irrelevant to whether sPower has standing to bring this action.

The Recommended Decision errs in finding that sPower lacks standing because "there are no allegations in the Complaint that Plaintiff has QFs that stand ready to sell energy and capacity to a utility; rather, the allegations are that sPower has 'eleven *planned* QFs.'" RD at 11 (italics in original); *see also* RD at 11 ("[t]here are no

allegations that sPower can enter contracts to provide energy and capacity with only planned QFs, or in what stage of development these QFs sit.") Such allegations are irrelevant to whether sPower has standing to bring this action.

Neither PURPA nor the FERC's regulations contain a requirement that a QF stand ready to sell energy and capacity to a utility before it may force a sale under PURPA, and Defendants have not cited to any such requirement. When the FERC promulgated its regulations implementing PURPA, the FERC recognized that QFs would need to obtain financing prior to construction, and that, in order to obtain financing, QFs would need to know the price and the other terms under which a utility will purchase its energy and capacity. The FERC stated:

> [I]n order to be able to evaluate the financial feasibility of a cogeneration or small power production facility [i.e., a QF], an investor needs to be able to estimate, with reasonable certainty, the expected return on a potential investment *before the construction of a facility*. This return will be determined, in part, by the price at which the qualifying facility can sell its electric output.

45 Fed. Reg. at 12,218 (italics added).

Courts have also recognized the importance of establishing the terms of a contract or legally enforceable obligation prior to a QF being constructed. *See, e.g.*, *Appeal of Public Serv. Co.*, 539 A.2d 275, 280 (N.H. Jan. 29, 1988) (finding the FERC "has recognized that investors must be able to estimate the expected return on their investment with reasonable certainty *before* the development of a qualifying facility") (italics added); *Snow Mt. Pine Co. v. Mauldin,* 734 P.2d 1366, 1371 (Or. Ct. App. Apr. 8, 1987) (finding that "[t]o permit a utility to delay the date to be used to calculate the

[avoided cost] purchase price simply by refusing to purchase energy would expose qualifying facilities to risks that we believe Congress … intended to prevent").

By assuming that a QF must "stand ready to sell energy and capacity" before it may negotiate the terms of a contract or legally enforceable obligation, or bring a complaint to enforce PURPA, the Recommended Decision disregards the financing needs of QFs and the contractual assurances that investors need to provide financing.

## B. sPower's Injuries Are Caused by the CoPUC's Rule 3902(c), and Public Service's Reliance on Rule 3902(c).

To establish the second element of standing, sPower must demonstrate that there is "a causal connection between the injury and the conduct complained of – the injury has to be 'fairly … trace[able] to the challenged action of the defendant.'" *Lujan*, 504 U.S. at 560 (internal citations omitted). sPower satisfies this element of standing by alleging through its Complaint, including the exhibits attached thereto, that CoPUC Rule 3902(c) has caused sPower's injuries because Public Service has refused to purchase energy and capacity from sPower's QFs due to Public Service's reliance on Rule 3902(c). Compl., at ¶ 42, 60; Compl., Exhibit 2 at 7-8. Exhibit 2 to sPower's Complaint discusses in detail sPower's prior efforts to force a sale of energy and capacity on Public Service. Compl. Exhibit 2, pp. 7-8. As stated in Exhibit 2, Public Service's letter rejecting sPower's attempt to enter into contract negotiations based on its QF rights "pointed specifically to [the CoPUC's] Rule 3902(c) as the cause of the rejection." *Id*.

The Recommended Decision is incorrect in finding that only a refusal to contract by "otherwise willing utilities" would lead to an injury-in-fact. RD at 11. As discussed above, the purpose behind PURPA was to overcome utilities' unwillingness to purchase

power from QFs. *FERC*, 456 U.S. at 750. PURPA requires a utility that is subject to PURPA's "must buy" requirement, such as Public Service, to purchase energy and capacity made available to it by a QF, regardless of whether the utility wants to make the purchase or not. 16 USC § 824a-3(a); 18 CFR § 292.303(a). As a result, the willingness or lack thereof on the part of Public Service to contract with sPower is irrelevant to determining that sPower has suffered an injury-in-fact that is caused by Rule 3902(c).

### C. sPower's Injuries Will Be Redressed by a Favorable Decision by This Court Enjoining the CoPUC From Enforcing Rule 3902(c).

To establish the third element of standing, sPower must show that it is "likely," as opposed to merely "speculative" that its injuries will be redressed by a favorable decision from this Court. *Lujan*, 504 U.S. at 561. sPower has satisfied this element of standing by alleging in its Complaint, including the attachments thereto, that without the CoPUC's Rule 3902(c), sPower would be able to exercise its rights under PURPA. This is clearly acknowledged by the petitions to intervene of Public Service and Black Hills, both of which correctly recognize that they will be required to purchase sPower's QF energy and capacity if the Court grants the relief sPower seeks. Viewing sPower's allegations in the light most favorable to sPower, as the Court must, the Court should find that sPower's injury can be redressed through the relief sPower seeks.

#### 1. sPower has alleged facts that demonstrate sPower's injury will be redressed by a favorable decision from this Court.

Because both Public Service and Defendants have relied explicitly on Rule 3902(c) as the reason that sPower has been denied its right to force Public Service to

purchase its QFs' power, the declaratory and injunctive relief that sPower seeks from this Court will redress sPower's injuries by removing the obstacle sPower faces in exercising its PURPA rights in Colorado. Compl., Exhibit 2 at 7-8 and 14-15. Having already unsuccessfully petitioned the Defendants to bring their PURPA implementation into compliance, and having already filed a Petition for Enforcement at the FERC, Compl., ¶¶ 45, 47, 53; Compl., Exhibit 2 at 14-15, sPower has no other way to redress its injury-in-fact than through the relief it seeks from this Court.

   2.   ***The utilities' interventions correctly recognize that they will be required to purchase QF energy and capacity from sPower if the Court grants the relief sPower seeks.***

   Although the Recommended Decision does not decide the redressability element of standing, the Magistrate Judge observes that "[b]oth prospective intervenors [Public Service and Black Hills] argue that if the relief sought by Plaintiff is afforded, they will be forced to purchase the capacity and energy output from sPower." RD at 13. Public Service and Black Hills correctly recognize that PURPA requires them to purchase any QF energy and capacity made available to them, and that they are currently escaping this obligation because of Rule 3902(c).[1]

   3.   ***The ERP process is not an acceptable substitute for PURPA's must-buy requirement.***

   The Recommended Decision also errs in finding, "there are no allegations that Defendants preclude sPower from participating in the ERP process or that sPower will

---

[1] The Recommended Decision also errs in stating the relief sPower requests "does not guarantee that it will have better success procuring contracts or legally enforceable obligations from Colorado utilities." RD at 13. sPower's potential future "success" at procuring contracts is irrelevant. PURPA grants each QF a right to sell its energy and capacity, and a state may not prevent a QF from exercising this right.

be unsuccessful in the ERP process, such that it will be precluded from selling excess energy and capacity to utilities." RD at 11. Respectfully, it is not necessary for sPower to have made these allegations because sPower has alleged that the ERP process itself imposes conditions on sPower's ability to force a sale that are inconsistent and noncompliant with PURPA. Compl., ¶ 44.

Moreover, the question of whether the ERP process is an insufficient legal substitute for PURPA's must-buy requirement is at the heart of sPower's legal claims. Through briefing, sPower plans to expand upon its legal argument to explain to the Court why the Defendants do not comply with PURPA when they offer sPower nothing more than the opportunity to compete with QFs and non-QFs alike in a quadrennial bidding process. However, under the guise of ruling on the sufficiency of sPower's pleadings, the Recommended Decision has, in effect, improperly prejudged the merits of the case. sPower has properly challenged the Defendants' implementation of Rule 3902(c), and consistent with PURPA this Court is charged with resolving this action on its merits after a full exploration and briefing of the issues before it.

III.     **CONCLUSION AND REQUEST FOR RELIEF**

For these reasons, and based on the most favorable view of the facts alleged in the Complaint and the exhibits incorporated therein, sPower respectfully requests that the Court reject the Recommended Decision and deny Defendants' Motion to Dismiss.

Dated: June 27, 2017

KEYES & FOX LLP and

By: /s/ *Scott F. Dunbar*
Kevin T. Fox, California No. 256609
                    Oregon No. 052551
                    Colorado No. 50835
Scott F. Dunbar, Colo. No. 44521
1580 Lincoln St., Suite 880
Denver, CO 80203
Telephone: (510) 314-8201 (Fox)
Telephone: (720) 216-1184 (Dunbar)
sdunbar@kfwlaw.com
kfox@kfwlaw.com

<u>Certificate of Service</u>

I hereby certify that on June 27, 2017, I served a true and complete copy of the foregoing **PLAINTIFF SPOWER'S OBJECTIONS TO RECOMMENDED DECISION PURSUANT TO FED. R. CIV. P. RULE 72 OF SPOWER DEVCO** electronically using the Court's CM/ECF filing system and/or via U.S. Postal Service, addressed as follows:

Colorado Public Utilities Commission
Chairman Jeffrey P. Ackermann
Commissioner Frances A. Koncilja
Commissioner Wendy M. Moser
1560 Broadway, Suite 250
Denver, CO 80202

Erin McLaughlin
Matthew Lindsay
Paul Gomez
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203

Gregory E. Sopkin
Matthew S. Larson
Wilkinson Barker Knauer LLP
1755 Blake Street, Suite 470
Denver, CO 80202

William M. Dudley
Christopher M. Irby
Xcel Energy Services Inc.
1800 Larimer Street, Suite 1100
Denver, Colorado 80202-1414

Kevin L. Opp
Black Hills Corporation
1515 Wynkoop St. Ste. 500
Denver, CO 80202

/s/ *Scott F. Dunbar*