# **EXHIBIT 2**

Federal Energy Regulatory Commission – Petition for Enforcement Pursuant to Section 210(h) of the Public Utility Regulatory Policies Act of 1978 dated December 30, 2016

2582312.1

UNITED STATES OF AMERICA

BEFORE THE FEDERAL ENERGY REGULATORY COMMISSION

| | ) | |
|---|---|---|
| Sustainable Power Group, LLC | ) | Docket Nos.   EL16-___-000 |
| sPower Development Company, LLC | ) | QF17-502-000 |
| | ) | |

**PETITION FOR ENFORCEMENT
PURSUANT TO SECTION 210(h)
OF THE PUBLIC UTILITY REGULATORY POLICIES ACT OF 1978**

Pursuant to Section 210(h)(2)(B) of the Public Utility Regulatory Policies Act of 1978 (PURPA),[1] Sustainable Power Group, LLC (sPower) and sPower Development Company, LLC (collectively, Petitioners) hereby petition the Federal Energy Regulatory Commission (the Commission) to initiate an enforcement action against the Colorado Public Utilities Commission (CPUC) for its failure to implement PURPA consistent with federal law and the Commission's regulations (Petition for Enforcement).

**I.       Introduction and Summary of Argument**

The Commission has recently found – twice, in *Hydrodynamics, Inc.* and in *Windham Solar, LLC* – that requiring a qualifying facility (QF) to compete in and win a competitive solicitation as the only means by which it can obtain a long-term avoided cost contract is inconsistent with PURPA and the Commission's regulations implementing PURPA.[2] The CPUC's Rule 3902(c) imposes such an unlawful requirement. Specifically, the CPUC's Rule 3902(c), which applies to QFs larger than 100 kW, requires that "[t]he utility is obligated to purchase capacity and energy from a qualifying facility only if the qualifying facility is awarded a contract under the bid or auction combination process," which is held every four years in

---

[1] 16 USC § 824a-3(h)(2)(B).
[2] *Hydrodynamics, Inc.*, 146 F.E.R.C. P61,193, 61840 (F.E.R.C. 2014), and *Windham Solar, LLC*, 156 F.E.R.C. P61,042, 61232 (F.E.R.C. 2016).

1

Colorado pursuant to an approved electric resource plan.[3] Like the Montana and Connecticut rules at issue in *Hydrodynamics* and *Windham Solar*, this requirement "imposes an unreasonable obstacle to obtaining a legally enforceable obligation" with a Colorado utility to purchase the QF's energy and capacity.[4]

sPower brought the CPUC's non-compliance with PURPA to the CPUC's attention, arguing before the CPUC that Rule 3902(c) is inconsistent with PURPA and the Commission's regulations implementing PURPA to the extent it requires QFs larger than 100 kW to win an infrequently held, all-source solicitation as a precondition to obtaining a long-term contract or legally enforceable obligation.[5] Ignoring the Commission's clear guidance in *Hydrodynamics* and *Windham Solar*, the CPUC declined to remedy its improper implementation of PURPA.[6] Specifically, the CPUC held that "[u]se of competitive bidding is an appropriate means by which the [CPUC] establishes avoided costs for purchases from QFs," and that *Hydrodynamics* and *Windham Solar* were not binding precedent in Colorado.[7] The CPUC ignored sPower's arguments that winning a competitive bidding process is an inappropriate precondition to obtaining a long-term QF contract or legally enforceable obligation, which is the issue that sPower raised with the CPUC and that Petitioners raise here.

The CPUC has demonstrated that it is unwilling to implement PURPA in accordance with federal law and the Commission's regulations. Consequently, pursuant to Section 210(h)(2) of PURPA, Petitioners respectfully request that the Commission initiate an action against the CPUC in federal court to enforce PURPA. Specifically, Petitioners request that the Commission

---

[3] CPUC Decision No. C16-0958, CPUC Proceeding No. 16A-0117E, ¶ 13, (attached as Attachment 1) citing 4 Code of Colorado Regulations (CCR) 723-3-3902(c) (attached as Attachment 2). See also 4 CCR 723-3-3603(a) (Attachment 2).
[4] *Hydrodynamics,* at 61840.
[5] Motion of Sustainable Power Group LLC (sPower) for Waiver of Commission Rule 3902(c) (sPower's Motion for Waiver), attached as Attachment 3.
[6] Attachment 1, Ordering ¶ 1.

seek to enjoin the CPUC from enforcing the requirement in Rule 3902(c) that a QF must win a competitive solicitation process as a condition precedent to obtaining a long-term contract or legally enforceable obligation with a Colorado utility. Petitioners further request that the Commission provide notice as to whether it will initiate an enforcement action within 60 days pursuant to Section 210(h)(2)(B) of PURPA. Finally, Petitioners request that the Commission provide any additional relief that it deems appropriate.

## II.   Communications

Any communications or correspondence regarding this Petition for Enforcement should be directed to the following individuals:

Scott F. Dunbar and Kevin T. Fox
Keyes & Fox LLP
1580 Lincoln St., Suite 880
Denver, CO 80203
Phone: (720) 216-1184 (Dunbar)
Phone: (510) 314-8201 (Fox)
sdunbar@kfwlaw.com
kfox@kfwlaw.com
Counsel to Petitioners

## III.   Background

*A. PURPA requires utilities to purchase a QF's output at the utility's avoided cost rate.*

The United States Congress passed PURPA in 1978 for the purpose of reducing the nation's reliance on fossil fuels.[8] Section 210 of PURPA "sought to accomplish that goal by encouraging the development of nontraditional electricity generating facilities, such as those that use renewable resources."[9] Recognizing that "traditional electricity utilities were reluctant to purchase power from … nontraditional facilities," PURPA directed the Commission to

---

[7] *Id.* at ¶¶ 14-15.
[8] See FERC v. Mississippi., 456 U.S. 742, 750 (U.S. 1982).
[9] Allco Renewable Energy, Ltd. v. Mass. Elec. Co., 2016 U.S. Dist. LEXIS 130617 (D. Mass., 2016).

3

promulgate rules requiring electric utilities to purchase the electrical output of any QF.[10] A QF can be any facility 80 MW or smaller that is powered by solar, wind, waste, or geothermal energy, as well as co-generation facilities.[11]

The obligation placed on utilities to purchase the output from QFs is generally referred to as PURPA's "must-buy" requirement. To protect ratepayers and to ensure that QFs are paid a fair rate, PURPA and the Commission's regulations require utilities to purchase a QF's output at a rate based on a utility's avoided costs. The term "avoided costs" is defined as "the incremental costs to an electric utility of electric energy or capacity or both which, but for the purchase from the qualifying facility or qualifying facilities, such utility would generate itself or purchase from another source."[12] As such, a utility's avoided costs represent the "costs which the utility would incur if it supplied the power itself or purchased it from another source."[13]

The Commission's regulations at 18 C.F.R. § 292.304(d) provide a QF with two options for how to sell its electrical output to a utility:

> Each qualifying facility *shall have* the option either:
>
> (1) To provide energy as the qualifying facility determines such energy to be available for such purchases, in which case the rates for such purchases shall be based on the purchasing utility's avoided costs calculated at the time of delivery; or
>
> (2) To provide energy or capacity pursuant to a legally enforceable obligation for the delivery of energy or capacity over a specified term, in which case the rates for such purchases shall, at the option of the qualifying facility exercised prior to the beginning of the specified term, be based on either:
>
>> (i) The avoided costs calculated at the time of delivery; or
>>
>> (ii) The avoided costs calculated at the time the obligation is incurred.[14]

---

[10] FERC, 456 U.S. at 750 (citing 16 USCS § 824a-3(a)). While utilities may now apply to the Commission to terminate their QF purchase obligations under PURPA, Public Service has not done so and is obligated to purchase power from all QFs in its service territory.
[11] 16 USCS § 796(17) and (18).
[12] 18 CFR § 292.101(b)(6)
[13] *State ex rel. Utilities Comm'n v. North Carolina Power*, 450 S.E.2d 896 (N.C. 1994).
[14] (emphasis supplied).

4

PURPA directs state regulatory commissions, such as the CPUC, to implement the Commission's regulations. State commissions have some latitude in how to implement PURPA and the Commission's regulations. They "may comply with the statutory requirements by issuing regulations, by resolving disputes on a case-by-case basis, or by taking any other action reasonably designed to give effect to FERC's rules."[15] Of particular importance here, "the states play the primary role in calculating avoided costs and in overseeing the contractual relationship between QFs and utilities operating under the regulations promulgated by [the Commission]."[16] Notwithstanding states' significant role in PURPA implementation, "a state may take action under PURPA only to the extent that that action is in accordance with the Commission's rules."[17]

> B. *In contravention of PURPA's must-buy requirement, Colorado requires a utility to purchase QF output only if the QF wins the competitive solicitation phase of the utility's Electric Resource Plan.*

Colorado has chosen to implement PURPA and the Commission's regulations through Rules 3900 through 3953 of the CPUC's Rules Regulating Electric Utilities.[18] Relevant here, Rule 3902 addresses the determination of avoided costs and the circumstances under which a QF may obtain a legally enforceable obligation.[19]

Rule 3902(a) states: "Each utility shall pay qualifying facilities a rate for energy and capacity purchases based on the utility's avoided costs."[20] To determine avoided cost, Rule 3902(c) states: "A utility shall use a bid or an auction or a combination procedure to establish its avoided costs for facilities with a design capacity of greater than 100 kW." However, Rule 3902(c) goes on to state:

---

[15] *FERC*, 456 U.S. at 751 (U.S. 1982)
[16] *Independent Energy Producers Ass'n v. California Public Utilities Commission*, 36 F.3d 848, 856 (9th Cir., 1994).
[17] *JD Wind 1, LLC*, 129 F.E.R.C. P61,148, 61632 (F.E.R.C. 2009)
[18] 4 CCR 723-3-3900 – 3953.
[19] 4 CCR 723-3-3902.
[20] 4 CCR 723-3-3902(a).

> The utility is obligated to purchase capacity or energy from a qualifying facility *only if* the qualifying facility is awarded a contract under the bid or auction or combination process.[21]

As the Commission explained in *Hydrodynamics* and *Windham Solar*, requiring a QF to compete in and win a competitive solicitation as the only means by which it can obtain a long-term avoided cost contract, which is what is required by CPUC Rule 3902(c), contradicts Commission Rule 292.304(d) by imposing an unreasonable obstacle to a QF obtaining a legally enforceable obligation with a utility.

The unlawful requirement that a QF must win a competitive solicitation to obtain a QF contract or legally enforceable obligation is also reflected in Public Service Company of Colorado (Public Service) Colorado Electric Tariff, Sheet No. P2, which states, "QFs with a design capacity greater than 100 kW *must be* successful bidders through the Company's Integrated Resource Planning process, as set forth in the CPUC's Electric Integrated Resource Planning Rules."[22]

According to the CPUC's rules, Colorado utilities subject to CPUC jurisdiction need only file an Electric Resource Plan (ERP) with the CPUC every four years.[23] Public Service's previous ERP was filed in October 2011 and the Company issued its most recent all-source solicitation in March 2013. The Company's most recent ERP was filed on May 31, 2016 (2016 ERP). Given the procedural schedule of the 2016 ERP, the competitive resource acquisition phase of the ERP, generally referred to as "Phase II," will not begin until sometime in late 2017 or perhaps in 2018. As a result, at least four years will have elapsed since the previous solicitation in which QFs were able to participate.

---

[21] 4 CCR 723-3-3902(c) (emphasis supplied).
[22] Attached as Attachment 4. Colorado now uses the term "Electric Resource Planning" in lieu of "Electric Integrated Resource Planning," as used in the tariff.
[23] 4 CCR 723-3-3603(a) (Attachment 2).

6

Other than those facilities that qualify for net metering or virtual net metering,[24] QFs larger than 100 kW have not been provided with *any* opportunities to sell energy or capacity to Public Service at avoided cost between solicitations. Requiring QFs to win a competitive solicitation that only occurs every four years in order to sell energy and capacity to Public Service violates QFs' rights under PURPA.

> C. *In reliance on CPUC Rule 3902(c), Public Service has refused to recognize PURPA's must-buy requirement, instead directing the QFs to participate in Phase II of the ERP proceeding in order to sell QF output to Public Service.*

On April 7, 2016, via telephone, and again on May 2, 2016, via email, sPower contacted Public Service regarding proposed renewable power generation projects and requested information from Public Service regarding QF pricing for these projects. On May 10, 2016, sPower received an email response from Public Service stating that QFs with a design capacity of greater than 100 kW must be successful bidders through the Company's ERP process.

On July 18, 2016, counsel for sPower sent a letter to counsel for Public Service.[25] The letter served as legal notice to Public Service that sPower intends to avail itself of its federal legal right under PURPA to make energy and capacity available to Public Service from several QFs.[26] Citing PURPA's must-buy requirement, the letter requested long-term avoided cost contracts for the purchase of the QFs' output. The letter included for each QF: the planned capacity, commercial operation date, and the interconnection queue number that had been

---

[24] Many customer-sited facilities that would likely be able to certify as QFs are eligible for net metering, but only if they are sized to supply no more than 120 percent of the customer's average annual electricity consumption at that site and do not exceed the customer's service entrance capacity. 4 CCR 723-3-3664 (Attachment 2). This petition focuses on QFs that are not customer-sited or would not otherwise qualify for net metering.
[25] Attached as Attachment 5.
[26] While only one of the projects at issue has currently submitted a FERC Form 556 Certification of Qualifying Facility Status for a Small Power Production or Cogeneration Facility, the other projects meet the criteria of a qualifying small power production facility contained in 18 C.F.R. Part 292 and intend to file a FERC Form 556 in the near future.

7

assigned to the project in Public Service's OASIS system.[27] sPower also stated its request for Public Service to lock in avoided cost rates for 20-year terms for each of the planned projects, which is required by Colorado procurement rules.[28]

On August 8, 2016, counsel for Public Service sent a reply to sPower's letter.[29] Counsel for Public Service stated that Public Service could not enter into a long-term contract or other obligation with sPower to purchase energy and capacity from the QFs that sPower listed in its July 18, 2016 letter. Public Service's August 8, 2016 rejection letter pointed specifically to CPUC Rule 3902(c) as the cause of the rejection and stated that sPower's QFs must participate in the competitive solicitation phase of the 2016 ERP proceeding to sell QF power.

### IV. CPUC Rule 3902(c) violates PURPA and the Commission's regulations implementing PURPA.

*A. The Commission has recently held that requiring a QF to win a competitive solicitation as a precondition to being awarded an avoided cost contract is inconsistent with PURPA's must-buy requirement.*

The Commission recently found that a rule similar to Rule 3902(c) that was promulgated by the Montana Public Service Commission did not comply with PURPA or the Commission's regulations implementing PURPA.[30] In *Hydrodynamics*, several developers of QF projects in Montana challenged Montana's PURPA rules, which required any QF larger than 10 MW to win an all-source competitive solicitation in order to receive a long-term contract to supply energy and capacity to a utility.[31] The Commission ruled that the Montana rule was inconsistent with PURPA and FERC's regulations implementing PURPA. Specifically, the Commission found Montana's rule to be inconsistent with PURPA "to the extent that it offers the competitive

---

[27] Public Service lists generation interconnection requests on its OASIS site at: http://www.rmao.com/wtpp/PSCO_Transmission_Studies.html.
[28] 4 CCR 723-3-2656(f) states, "Renewable energy supply contracts entered into after July 2, 2006: … (III) shall have a minimum term of 20 years (or shorter at the sole discretion of the seller)." See Attachment 2.
[29] Attached as Attachment 6.

solicitation process as the only means by which a QF greater than 10 MW can obtain long-term avoided cost rates."[32] Colorado Rule 3902(c) even more egregiously requires that QFs with a design capacity greater than 100 kW *must be* successful bidders through a utility competitive solicitation process as the only means by which to obtain long-term avoided cost rates.[33]

In reaching its finding in *Hydrodynamics*, the Commission recognized that a QF has an "unconditional right" to choose how it wants to sell its power.[34] A QF has the right to choose whether to sell its power "as available" or at a forecasted avoided cost rate pursuant to a legally enforceable obligation.[35] As explained by the Commission in Order No. 69 implementing PURPA, the "[u]se of the term 'legally enforceable obligation' is intended to prevent a utility from circumventing the requirement that provides capacity credit for an eligible qualifying facility merely by refusing to enter into a contract with the qualifying facility."[36] Given that a QF has an unconditional right to choose to sell power pursuant to a legally enforceable obligation, the Commission reasoned that Montana's policy of "requiring a QF to win a competitive solicitation as a condition to obtaining a long-term contract imposes an unreasonable obstacle to obtaining a legally enforceable obligation."[37]

The Commission very recently found that another state regulation requiring a competitive solicitation process does not comply with PURPA's must-buy requirement. Similar to *Hydrodynamics*, in *Windham Solar*, the Connecticut Public Utilities Regulatory Authority's (PURA) regulations implementing PURPA required QFs to participate in a bidding process to

---

[30] *Hydrodynamics*, at 61840.
[31] *Id.*
[32] *Id.* at 61845.
[33] 4 CCR 723-3-3902(c).
[34] *Id.* at 61844
[35] *Id.* at 61844 (citing 18 CFR § 292.304(d)).
[36] *Id.* (citing *Final Rule Regarding the Implementation of Section 210 of the Public Utility Regulatory Policies Act of 1978*, Order No. 69, FERC Stats. & Regs. P 30,128 at 30,880 *order on reh'g*, Order No. 69-A, FERC Stats. & Regs. P 30,160 (1980)).

obtain a contract at long-term avoided cost rates.[38] In finding that the Connecticut PURA's regulations were inconsistent with PURPA, the Commission quoted its *Hydrodynamics* decision, and further stated, "Regardless of whether a QF has participated in a request for proposal, that QF has the right to obtain a legally enforceable obligation."[39]

> B. *The CPUC's Rule 3902(c) is inconsistent with PURPA's must-buy requirement because requiring a QF to win a competitive solicitation is an unreasonable obstacle to obtaining a legally enforceable obligation.*

Colorado's implementation of PURPA must comply with federal law, including the Commission's regulations.[40] Neither the CPUC's Rule 3902(c) nor Public Service's Colorado Electric Tariff comply with PURPA or the Commission's regulations implementing PURPA. Under federal law, the CPUC – and by extension, Public Service – cannot require a QF to win a competitive solicitation in order to obtain a long-term contract to sell QF power to Public Service at avoided cost.

Similar to the Montana rule at issue in *Hydrodynamics*, CPUC Rule 3902(c) offers the ERP's competitive solicitation process as the only means by which a QF can obtain long-term avoided cost rates for the QF's output. However, CPUC Rule 3902(c) applies to QFs as small as 101 kW, whereas the Montana rule applied to QFs larger than 10 MW. As evidenced by Public Service's August 8, 2016 letter to sPower's counsel, Public Service, citing CPUC Rule 3902(c), refused to enter into a contract to purchase QF power from sPower and referred sPower to its

---

[37] *Id.* at 61844, 61845.
[38] *Windham Solar,* at 61232.
[39] *Id.*
[40] *United Distribution Cos. v. FERC*, 88 F.3d 1105, 1155 (D.C. Cir. 1996) ("The Constitution provides that the laws of the federal government 'shall be the supreme Law of the Land; … any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.' That principle of supremacy is implemented through the doctrine of federal 'preemption,' under which state and local law may be stripped of its effect." (quoting U.S. Constitution, Article VII.)); *Farina v. Nokia, Inc.*, 625 F.3d 97, 115 (3d Cir. 2010) ("Federal regulations preempt state laws in the same fashion as congressional statutes."); *See also*, *Midwest ISO Transmission Owners v. FERC*, 373 F.3d 1361, 1372 (D.C. Cir. 2004) ("Federal preemption and the Supremacy Clause … operate to prevent the states from taking regulatory action in derogation of federal regulatory objectives.")

2016 ERP competitive solicitation process, which will not occur for potentially a year or more from the date of Public Service's August 8, 2016 rejection letter. However, the Commission's holdings in *Hydrodynamics* and *Windham Solar* clarify that requiring the QFs to participate in the ERP's competitive solicitation imposes an unreasonable obstacle to the QFs obtaining a legally enforceable obligation. As a result, CPUC Rule 3902(c) violates PURPA and the Commission's rules implementing PURPA.

Just as the Commission found that the QF at issue in *Windham Solar* had the right to obtain a legally enforceable obligation regardless of whether or not it had participated in the utility's request for proposals process, Petitioners' QFs have the right to obtain a legally enforceable obligation under which Public Service must purchase their output at avoided cost. It is a violation of PURPA for the CPUC and Public Service to require Petitioners' QFs to wait a year or more to participate in the ERP's all-source solicitation in order to sell their power to Public Service.

If CPUC Rule 3902(c) is allowed to stand, it renders completely meaningless PURPA's must-buy requirement. Any independent power producer (IPP) that meets the requirements of a Colorado utility's ERP can participate in a competitive solicitation, including non-QFs. Requiring QFs to participate in the ERP's competitive solicitation to obtain a long-term contract treats QFs as if they are no different from any other IPP, thereby ignoring the rights Congress afforded to QFs (and only QFs) to require a utility to purchase the QF's energy and capacity under a legally enforceable obligation at the utility's avoided cost. Accordingly, Petitioners request that the Commission initiate an action against the CPUC in federal court to enforce PURPA and enjoin the CPUC from requiring QFs to win a competitive solicitation as a

precondition to obtaining a long-term contract or legally enforceable obligation with a Colorado utility.

> C. *CPUC Rule 3902(c) is not meaningfully distinguishable from the Montana rule that the Commission found inconsistent with PURPA's must-buy requirement.*

Unlike the Montana rule at issue in *Hydrodynamics*, Colorado requires competitive solicitations to occur every four years.[41] However, simply increasing the frequency of what the Commission has found to be an "unreasonable obstacle to obtaining a legally enforceable obligation" cannot transform competitive solicitations into an acceptable methodology for implementing PURPA's must-buy requirement, particularly when CPUC Rule 3902(c) strips all rights provided to QFs under PURPA by treating QFs no different from non-QFs. As long as participation in all-source solicitations remains the only means by which a QF can obtain a legally enforceable obligation in Colorado, Colorado will continue to infringe on QFs' federal rights under PURPA.

In *Hydrodynamics*, the Commission cited the lack of regularity with which competitive solicitations were held in Montana as an aggravating factor, but not as a decisive factor. The decisive factor in the Commission's decision was the Montana rule's failure to recognize a QF's unconditional right to choose how to sell its power under 18 CFR § 292.304(d), as discussed above. The Commission found that the Montana rule was inconsistent with PURPA because it offered "the competitive solicitation process as the *only means* by which a QF ... can obtain long-term avoided cost rates" for its output.[42]

---

[41] The Montana rule at issue in *Hydrodynamics* did not require all-source solicitations to occur (see *Hydrodynamics*, at 61841) whereas Colorado rules require an ERP to be filed every four years. *See* 4 CCR 723-3-3603(a).
[42] *Hydrodynamics*, at 61845 (emphasis supplied).

PURPA gives states some discretion to determine when a legally enforceable obligation is created.[43] However, that discretion is not unfettered; states must still comply with PURPA and the Commission's regulations implementing PURPA. The Commission has already found – twice[44] – that requiring QFs to win a competitive solicitation does not comply with PURPA or the Commission's regulations implementing PURPA, if that competitive solicitation is the only means by which the QF can obtain a legally enforceable obligation. The Commission should likewise find that CPUC Rule 3902(c) does not comply with PURPA or the Commission's regulations.

V. **While QFs must participate in and win competitive solicitations to obtain long-term contracts, the CPUC has approved significant new utility-owned capacity additions outside the competitive solicitation process.**

While QFs must participate in and win infrequently held ERP solicitations to obtain a long-term contract to sell their energy and capacity to Public Service, the CPUC recently approved an application from Public Service to build and own two wind farms with a total combined capacity of 600 MW.[45] The CPUC did not require Public Service to participate in or win a competitive solicitation process for these two wind farms, and the approval of 600 MW of new, utility-owned capacity outside the ERP will inevitably reduce the capacity the utility will need to procure within the ERP.[46] As a result, QFs face a reduced ability to sell their energy and capacity within the ERP and could receive reduced payments for any capacity they are able to provide.

---

[43] *See West Penn Power Company*, 71 F.E.R.C. P61,153, 61495 (F.E.R.C. 1995).
[44] See *Hydrodynamics*, 146 F.E.R.C. P61,193, and *Windham Solar,* 156 F.E.R.C. P61,042, as discussed throughout this petition.
[45] Attachment 1, CPUC Decision No. C16-0958, CPUC Proceeding No. 16A-0117E, ¶¶ 2-3, 47.
[46] *See* 4 CCR 723-3-3660(h)(I), which states, "A [utility] shall be allowed to develop and own as utility rate-based property, without being required to comply with the [CPUC's] competitive bidding requirements, … up to twenty-five percent of the total new eligible energy resources that the [utility] acquires from entering into power purchase agreements and from developing and owning resources after March 27, 2007 if the [CPUC] determines that the

This recent history demonstrates that QFs in Colorado experience significant prejudice comparable to that experienced by QFs in Montana and Connecticut, as discussed in the Commission's *Hydrodynamics* and *Windham Solar* decisions. Like the utilities at issue in those cases, Public Service is permitted to and has acquired generation resources outside of the competitive solicitation process, while QFs' unconditional rights under federal law go ignored.

### VI. An enforcement action is necessary because the CPUC has refused to come into compliance with PURPA despite being presented with the deficiency of its rules.

Prior to filing this Petition for Enforcement, sPower filed a Motion for Waiver of Commission Rule 3902(c) (Motion for Waiver) with the CPUC in the Public Service 2016 ERP proceeding.[47] In its Motion for Waiver, sPower presented the arguments contained in this Petition for Enforcement to the CPUC, arguing that CPUC Rule 3902(c) does not comply with PURPA or the Commission's regulations implementing PURPA because it offers an infrequently held all-source competitive solicitation process as the only means by which a QF larger than 100 kW can obtain a legally enforceable obligation from Public Service.

sPower moved the CPUC to waive Rule 3902(c) and come into compliance with PURPA by requiring Public Service to purchase QF energy and capacity at Public Service's avoided cost, which sPower proposed to determine using a differential revenue requirement methodology.[48] On December 19, 2016, the CPUC issued a written decision denying sPower's Motion for Waiver, wrongly finding that Rule 3902(c) complies with PURPA and the Commission's regulations implementing PURPA.[50] The CPUC's decision failed to recognize the distinction between using a competitive solicitation to establish an avoided cost rate and requiring a QF to

---

[utility]-owned new eligible energy resource can be constructed at a reasonable cost compared to the cost of similar eligible energy resources available in the market" (Attachment 2).
[47] Attachment 3.
[48] Attachment 3, p. 1.
[50] Attachment 1.

win a competitive solicitation before it can sell its output pursuant to a long-term contract. sPower's legal arguments were confined to the latter issue, but the CPUC in its decision focused on the former. Specifically, CPUC held that "[c]ompetitive bidding will establish avoided costs for purchases from QFs in this ERP," and "[u]se of competitive bidding is an appropriate means by which the [CPUC] establishes avoided costs for purchases from QFs."[51] However, the CPUC ignored sPower's arguments that requiring a QF to win a competitive bidding process in order to obtain a long-term contract is inconsistent with PURPA and the Commission's regulations, which was the focus and purpose of sPower's Motion for Waiver.

The CPUC also found that the Commission's decisions in *Hydrodynamics* and *Windham Solar* "are limited to the specific facts presented and are not binding precedent in Colorado."[52] Petitioners acknowledge that these decisions are not technically binding on the CPUC, but the Commission's reasoning in both cases applies directly and straightforwardly to the facts in Colorado. Because Colorado offers a competitive solicitation process as the only means by which a QF larger than 100 kW can obtain a long-term avoided cost contract, CPUC Rule 3902(c) is inconsistent with PURPA and the Commission's regulations implementing PURPA for the same reasons as the Montana and Connecticut rules were legally deficient.

The CPUC's misunderstanding of the relevant issue and its unwillingness to adhere to clear guidance from the Commission indicate that an enforcement action pursuant to Section 210(h)(2)(A) is necessary to bring Colorado into compliance with PURPA. Petitioners believe that the Commission's holdings in *Hydrodynamics* and *Windham Solar* are clear and that their reasoning is clearly applicable to Colorado's Rule 3902(c), but the CPUC's treatment of the issue thus far indicates that an enforcement action is necessary.

---

[51] Attachment 1 at ¶ 13-14.
[52] Attachment 1 at ¶ 15.

### VII.     Conclusion and Requested Relief

For all of the reasons discussed in this Petition for Enforcement, Petitioners respectfully request that the Commission initiate an enforcement action against the CPUC pursuant to Section 210(h)(2) to invalidate the requirement that a QF win a competitive solicitation as a condition precedent to obtaining a long-term avoided cost contract. Petitioners also respectfully request that the Commission provide any other relief that it deems appropriate.

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served this document upon the following:

Joshua Epel, Chairman
Glenn Vaad, Commissioner
Frances Koncilja, Commissioner
Doug Dean, Director
Colorado Public Utilities Commission
1560 Broadway, Suite 250
Denver, CO 80202
Joshua.Epel@state.co.us
Glenn.Vaad@state.co.us
Frances.Koncilja@state.co.us
Doug.Dean@state.co.us


With a copy to:

Cynthia Coffman
Attorney General
Paul Gomez, First Assistant Attorney General
Erin McLauthlin, Assistant Attorney General
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203
Paul.Gomez@coag.gov
Erin.McLauthlin@coag.gov


Though not required, a courtesy copy was provided to counsel for Public Service Company of Colorado via email:

William Dudley, Assistant General Counsel-Lead
Christopher Irby, Assistant General Counsel
Bill.Dudley@xcelenergy.com
Christopher.M.Irby@xcelenergy.com


Dated this 30th day of December, 2016.

    _____*/s/ Scott Dunbar*_____

## LIST OF ATTACHMENTS

1. CPUC Decision No. C16-1156-I.

2. Colorado Electric Rules, 4 Code of Colorado Regulations 723-3

3. sPower Motion for Waiver of Rule 3902(c)

4. PSCo Electric Tariff Sheet No. P2

5. sPower Letter to PSCo Regarding QF Projects

6. PSCo Reply to sPower Regarding QF Projects