## **EXHIBIT 3**

Letter from counsel for sPower to counsel for
Public Service Company of Colorado, dated July 18, 2016

# KEYES, FOX & WIEDMAN LLP

July 18, 2016

William Dudley
Christopher Irby
Xcel Energy, Inc.
1800 Larimer St., Suite 1100
Denver, CO 80202

**RE: Request for Avoided Cost Pricing and Contracts for Proposed Qualified Facilities in Public Service Company of Colorado's Service Territory**

Dear Mr. Dudley and Mr. Irby,

This letter follows up on an email correspondence sent to your attention on June 23, 2016 in which we asked if there are any avenues, other than the all-source solicitation, for Sustainable Power Group, LLC, (sPower), to sell Qualifying Facility (QF) power from a facility larger than 10 MW (e.g., short-term or long-term contracts, energy-only contracts or energy and capacity contracts). You asked that all correspondence regarding such matters be between counsel for sPower and Public Service Company of Colorado (Public Service), doing business as Xcel Energy, and we are honoring that request.

As you know, the federal Public Utility Regulatory Policies Act of 1978 (PURPA) requires a utility, such as Public Service, to purchase QF capacity and energy at the utility's avoided cost. 16 U.S.C. § 824a-3(a)(2) (requiring utilities to purchase from QFs); 18 C.F.R. 292.303 (obligation to purchase energy and capacity); FERC Order No. 69, 45 Fed. Reg. 12,214 at 12,219 (Feb. 25, 1980) ("The [Federal Energy Regulatory] Commission interprets this provision to impose on electric utilities an obligation to purchase all electric energy and capacity made available from qualifying facilities with which the electric utility is directly or indirectly interconnected, except during periods [of] system emergencies.")

This letter serves as sPower's notification to Public Service that it plans to make energy and capacity available to Public Service from QFs that will be developed by sPower. Pursuant to PURPA, sPower requests long-term contracts from Public Service for the purchase of energy and capacity from these QFs. Specifically, sPower intends to make energy and capacity available to Public Service from the following QFs:

- Twin Peaks Phase 1, 80 MW, July 2022 COD, GI-2016-9
- Twin Peaks Phase 2, 80 MW, July 2022 COD, GI-2016-9
- Twin Peaks Phase 3, 80 MW, July 2022 COD, GI-2016-9
- Twin Peaks Phase 4, 80 MW, July 2022 COD, GI-2016-9
- Twin Peaks Phase 5, 80 MW, July 2022 COD, GI-2016-9
- Twin Peaks Phase 6, 80 MW, July 2022 COD, GI-2016-9
- Boone Hill Phase 1, 80 MW, July 2019 COD, GI-2016-7

# KEYES, FOX & WIEDMAN LLP

- Boone Hill Phase 2, 80 MW, July 2019 COD GI-2016-7
- Boone Hill Phase 3, 80 MW, July 2019 COD GI-2016-7
- Pueblo Solar, 80 MW, July 2019 COD, GI-2016-12
- Haynes Creek Solar, 80 MW, July 2019 COD, queue # TBD

Each of the projects listed above will use solar photovoltaic panels with single axis tracking capability. The list above includes the commercial operation date (COD) that each project will begin delivering energy and capacity to Public Service, as well as the project's queue number. Each project will be certified with the Federal Energy Regulatory Commission (FERC) as a QF.

Pursuant to 18 C.F.R. 292.304(d)(2)(ii), sPower opts to enter into a contract or other legally enforceable obligation with Public Service for a term of 20 years and to establish the avoided cost rate at which Public Service will purchase energy and capacity from each of the above projects at the time the obligation is incurred. In order to begin construction and interconnect the QF projects listed above by the dates specified, sPower seeks to determine the avoided cost rate through negotiations with Public Service within 30 days of the date of this letter.

As Public Service is aware, in Proceeding No. 16A-0055E, Public Service's application to develop its proposed Solar*Connect program, Public Service has proposed to calculate the bill credit that will be enjoyed by participants in the Solar*Connect program "based on the PURPA QF methodology established by the Commission in Proceeding No. 13AL-0958E" (see Rebuttal Testimony of Steven W. Wishart in Proceeding No. 16A-0055E, page 18). Using the methodology established by the Commission, "Public Service proposes to lock in the 2018 capacity credit for the life of the [Solar*Connect] program" but to update the energy credit for the program on an annual basis.

Given that Public Service has proposed to lock in the avoided capacity rate for its own 50 MW solar program for 20 years, sPower requests that Public Service likewise lock in the avoided cost rate forecasted for the first year of operation of each of the QFs listed above for 20 year terms.

To determine the avoided energy rate that will apply to each of the QFs listed above, sPower likewise requests that Public Service apply the same methodology that Public Service has proposed to apply to its own Solar*Connect program, with one modification. Rather than update avoided energy rate annually, as Public Service has proposed for Solar*Connect, sPower requests that Public Service lock in the forecasted avoided energy cost rate for 20 years following the in-service date of each project, levelized over 20 years. Such an arrangement will benefit both Public Service and its ratepayers by providing price certainty and price stability over the course of the 20-year contract, especially given Public Service's expectations that its avoided energy costs will increase over the next 20 years (see Rebuttal Testimony of Steven W. Wishart in Proceeding No. 16A-0055E, Table SWW-1).

The FERC has consistently recognized the importance of long-term contracts with fixed pricing to fulfilling PURPA's purpose of encouraging the development of QFs. Specifically, the FERC has found, "In order to be able to evaluate the financial feasibility of a cogeneration or small

# KEYES, FOX & WIEDMAN LLP

power production facility, an investor needs to be able to estimate, with reasonable certainty, the expected return on a potential investment before construction of a facility." *JD Wind 1, LLC*, 130 FERC P61,127, 61631 (FERC 2010). Consistent with this finding, sPower expects that its contracts with Public Service will specify the rates at which Public Service will purchase capacity and energy from the projects listed above for the entire term of each 20-year contract.

sPower is aware that Rule 3902(c) of the Colorado Public Utilities Commission's Rules Regulating Electric Utilities (4 Code of Colorado Regulations 723-3-3902) requires utilities to use "a bid or auction or combination procedure to establish its avoided costs for facilities with a design capacity of greater than 100 kW." sPower is of the understanding, based on Kent Scholl's email to sPower's Director of Business Development, Adam Schumaker, that Public Service interprets Rule 3902(c) to refer to Public Service's Electric Resource Plan, which is generally filed every four years. sPower is of the opinion that this process does not comply with the requirements of PURPA. In 2014, the FERC invalidated a similar process for establishing avoided cost in Montana, finding that such a process imposes "an unreasonable obstacle to obtaining a legally enforceable obligation" with a utility (*Hydrodynamics Inc.*, 146 FERC P61,193, 61,845 (FERC 2014)). sPower hopes that, through collaboration with Public Service, a process for determining avoided cost that is compliant with PURPA can be developed in Colorado and that sPower wil be able to enter into long-term contracts with Public Service under the terms identified in this letter.

Thank you for your prompt attention to this matter. We look forward to hearing from you.


Very truly yours,



_/s/ Kevin Fox_____
Kevin Fox



_/s/ Scott Dunbar_____
Scott Dunbar