## **EXHIBIT 4**

Letter in reply from counsel for Public Service Company of Colorado
to counsel for sPower, dated August 8, 2016



William M. Dudley
*Assistant General Counsel - Lead*

1800 Larimer Street, Suite 1100
Denver, CO 80202
Phone: 303.294.2842
Fax: 303.294-2852
Email: bill.dudley@xcelenergy.com

August 8, 2016

<u>Via Email & U.S. Mail:</u>     kfox@kfwlaw.com
sdunbar@fkwlaw.com

Mr. Kevin Fox
Mr. Scott Dunbar
Keyes, Fox & Weidman LLP
1580 Lincoln St. Suite 880
Denver, CO 80203

Re:   Request for Avoided Cost Pricing and Contracts for Proposed Qualified Facilities in Public Service Company of Colorado's Service Territory

Dear Mr. Fox and Mr. Dunbar:

I am responding to your letter to Christopher Irby and me dated July 18, 2016. Through your letter, you inform Public Service Company of Colorado ("Public Service") that your client Sustainable Power Group, LLC ("sPower") plans to make capacity and energy available to Public Service from eleven 80 MW solar projects that will be Qualifying Facilities ("QFs") pursuant to the Public Utility Regulatory Policies Act ("PURPA"). You indicate that sPower is opting "to enter into a contract or other legally enforceable obligation with Public Service for a term of 20 years and to establish the avoided cost rate at which Public Service will purchase energy and capacity from each of the above projects at the time the obligation is incurred." You further state that sPower hopes to determine the avoided cost rate through negotiations with Public Service within 30 days of the date of your letter.

Public Service cannot satisfy your request.

As you acknowledge in your letter, PURPA requires each state to adopt rules implementing its requirements. The Colorado Public Utilities Commission ("CPUC") rules implementing PURPA generally require the use of competitive bidding for the establishment of avoided cost rates for both capacity and energy purchases. *See* CPUC Rule 3902(c). While you point out that the Federal Energy Regulatory Commission ("FERC") has questioned whether the use of competitive bidding to satisfy a utility's purchase obligation is consistent with PURPA, and therefore you question whether the CPUC rule complies with the requirements of PURPA, Public Service is nonetheless required to adhere to the CPUC rules in their present form.

Moreover, it is not clear to us what applicability the prior FERC declaratory orders have to the CPUC and Public Service for several reasons. None of the declaratory rulings you cite or others of which we were aware address the implementation of PURPA by the CPUC. All of the declaratory rulings addressed situations that we believe are distinguishable from the situation presented by the CPUC rules and Public Service's specific circumstances. To elaborate on this later point, we believe

Mr. Kevin Fox
Mr. Scott Dunbar
August 8, 2016
Page Two

that the competitive bidding processes that FERC addressed in its declaratory order effectively foreclosed QFs from selling power to utilities in those states.

That is plainly not the situation in Colorado. As sPower is aware, given its intervenor status in CPUC Proceeding No. 16A-0396E, Public Service's Phase I Electric Resource Plan ("ERP") is presently pending before the CPUC. As filed, Public Service's ERP shows a resource need of approximately 615 MW over an eight-year Resource Acquisition Period ("RAP"). Public Service has indicated its intent to conduct an all-source solicitation to acquire resources to fulfill that resource need. sPower will have an opportunity to participate in the competitive resource acquisition process. In this context, sPower's present effort to "put" power to Public Service under PURPA would have a significant potential of foreclosing the competitive process that Public Service expects to conduct in Phase II of its ERP pursuant to CPUC rules. Public Service does not believe that this result is consistent with PURPA or any of its underlying policies. Thus, the concern that you express about the ERP process only occurring every four years is academic given that (1) we are in the ERP process at this time, and (2) the 2016 ERP proposes using a competitive acquisition process to fill the future capacity and energy needs of the system over an eight-year RAP through 2023.

Your July 18, 2016, letter also suggests that sPower could enter into a legally enforceable obligation or "LEO" with Public Service. How or when LEOs are created is determined by state commissions as part of their implementation of PURPA, and given the general reliance on competitive bidding to establish avoided cost rates for large QFs, the CPUC's QF rules do not make provision for the establishment of LEOs and administratively determined avoided cost rates. Moreover, we are aware that where state PURPA schemes do make provision for LEOs, they typically require more than preliminary negotiation efforts to establish the existence of an LEO. *See, e.g., Power Res. Grp., Inc. v. Pub. Util. Comm'n of Tex.*, 422 F.3d 231 (5th Cir. 2005) (upholding a Public Utility Commission of Texas rule that a utility can be compelled to purchase power from a QF pursuant to an LEO only if the QF can provide that power within 90 days). Such requirements make sense since an entity should show that it has a viable QF before it can require that a utility obligate itself to purchase energy from that QF. At this time, sPower has only communicated to Public Service the names, proposed interconnection locations, anticipated capacity ratings, and in-service dates of a number of solar projects that sPower asserts it will construct. We do not believe that is enough to establish a LEO under Colorado law.

For these reasons, we do not believe that sPower can put QF power to us on the terms laid out in your letter. Instead, we anticipate sPower's participation in the competitive solicitation that we will be conducting as part of our pending ERP.

Sincerely,

William M. Dudley

WMD/yan