# **EXHIBIT 5**

Motion of Sustainable Power Group, LLC (sPower) for
Waiver of Commission Rule 3902(c), filed October 14, 2016 in
Colorado Public Utilities Commission Proceeding No. 16A-0396E

**BEFORE THE PUBLIC UTILITIES COMMISSION OF THE STATE OF COLORADO**

PROCEEDING NO. 16A-0396E
_____

IN THE MATTER OF THE APPLICATION OF PUBLIC SERVICE COMPANY OF COLORADO FOR APPROVAL OF ITS 2016 ELECTRIC RESOURCE PLAN
_____

**MOTION OF SUSTAINABLE POWER GROUP, LLC (sPOWER)
FOR WAIVER OF COMMISSION RULE 3902(c)**
_____

Pursuant to Section IX of the Non-Unanimous Settlement Agreement approved by the Commission in Proceeding No. 16A-0117E, Sustainable Power Group, LLC (sPower), through its undersigned attorneys, hereby files this motion to explain why the Commission's ERP rules are not compliant with the Public Utility Regulatory Policies Act of 1978 (PURPA) and PURPA's implementing regulations promulgated by the Federal Energy Regulatory Commission (FERC). For the reasons explained herein, sPower respectfully moves the Commission to find that Rule 3902(c)[1] of the Commission's Rules Regulating Electric Utilities does not comply with the requirements of PURPA and to waive Rule 3902(c) until such time as a rule that is compliant with PURPA can be adopted. sPower further recommends that the Commission require Public Service Company of Colorado (Public Service or the Company) to purchase qualifying facility (QF) energy and capacity at Public Service's avoided cost, as calculated using the differential revenue requirement methodology. Also pursuant to Section IX of the Non-Unanimous Settlement Agreement filed in Proceeding No. 16A-0117E, sPower proposes that Public Service and other interested parties have until December 9, 2016 to respond to this motion.[2] Finally, sPower respectfully requests that the Commission rule on this Motion as soon as practicable after

---

[1] 4 Code of Colorado Regulations (CCR) 723-3-3902(c).

1

it receives any responses from other parties, and prior to the start of the Phase I evidentiary hearing, currently scheduled to begin on February 1, 2017.

**I.     Statement Regarding Conferral**

As noted, sPower is filing this Motion pursuant to the Non-Unanimous Settlement Agreement filed in Proceeding No. 16A-0117E, which has been approved by the Commission.[3] As a result, counsel for sPower did not formally confer with other parties to this proceeding as to whether they would support, oppose, or take no position on this Motion.[4]

**II.    Summary of Argument**

PURPA requires a utility, such as Public Service, to purchase energy and capacity provided by qualifying facilities (QFs) at the utility's avoided cost. By contrast, the Commission's Rule 3902(c) only requires a utility to purchase energy and capacity from a QF if the QF wins a competitive solicitation, such as will occur in Phase II of this proceeding. The FERC has recently found – twice – that similar rules in Montana and Connecticut were inconsistent with PURPA's must-buy requirement. Like those rules, Rule 3902(c) imposes an unreasonable obstacle to a QF obtaining a legally enforceable obligation with Public Service for the utility to purchase the QF's energy and capacity.

It is crucial that Colorado come into compliance with PURPA before Public Service fulfills its capacity needs through Phase II of this proceeding, after which Public Service's avoided capacity value will be greatly diminished. To come into compliance, the Commission should waive Rule 3902(c) in the near term and require Public Service to begin purchasing QF

---

[2] The extended response time will require a waiver of Commission Rule 1400(b).
[3] The Commission approved the Non-Unanimous Settlement Agreement during its deliberation meeting on September 30, 2016. A written decision had not yet been issued as of the date this Motion was filed.
[4] If the Commission believes it necessary, sPower requests that the Commission waive Rule 1400(a) with respect to the need for conferral.

energy and capacity at its long-term avoided cost rate. Such a waiver is critical to avoid further prejudice to QFs, whose federal rights under PURPA have not been recognized in Colorado since 2005. In the long term, the Commission should open a rulemaking proceeding to develop a PURPA-compliant rule and QF procurement program in Colorado.

### III. Background

*A. PURPA requires utilities to purchase a QF's output at the utility's avoided costs rate.*

The United States Congress passed PURPA in 1978 for the purpose of reducing the nation's reliance on fossil fuels.[5] Section 210 of PURPA "sought to accomplish that goal by encouraging the development of nontraditional electricity generating facilities, such as those that use renewable resources."[6] Recognizing that "traditional electricity utilities were reluctant to purchase power from … nontraditional facilities," PURPA directed the FERC to promulgate rules requiring electric utilities to purchase the electrical output of any QF.[7] A QF can be any facility 80 MW or smaller that is powered by solar, wind, waste, or geothermal energy, as well as co-generation facilities.[8]

The obligation placed on utilities to purchase the output from QFs is generally referred to as PURPA's "must-buy" requirement. To protect ratepayers and to ensure that QFs are paid a fair rate, PURPA and the FERC's regulations require utilities to purchase a QF's output at a rate based on a utility's avoided costs. The term "avoided costs" is defined as "the incremental costs to an electric utility of electric energy or capacity or both which, but for the purchase from the qualifying facility or qualifying facilities, such utility would generate itself or purchase from

---

[5] See *FERC v. Mississippi*, 456 U.S. 742, 750 (U.S. 1982).
[6] *Allco Renewable Energy, Ltd. v. Mass. Elec. Co.*, 2016 U.S. Dist. LEXIS 130617 (D. Mass., 2016).
[7] *FERC*, 456 U.S. at 750 (citing 16 USCS § 824a-3(a)).
[8] 16 USCS § 796(17) and (18).

3

another source."[9] In other words, a utility's avoided costs represent the "costs which the utility would incur if it supplied the power itself or purchased it from another source."[10]

The FERC's regulations provide a QF with two options for how to sell its electrical output to a utility:

> Each qualifying facility *shall have* the option either:
> (1) To provide energy as the qualifying facility determines such energy to be available for such purchases, in which case the rates for such purchases shall be based on the purchasing utility's avoided costs calculated at the time of delivery; or
>
> (2) To provide energy or capacity pursuant to a legally enforceable obligation for the delivery of energy or capacity over a specified term, in which case the rates for such purchases shall, at the option of the qualifying facility exercised prior to the beginning of the specified term, be based on either:
>
>> (i) The avoided costs calculated at the time of delivery; or
>> (ii) The avoided costs calculated at the time the obligation is incurred.[11]

PURPA directs state regulatory commissions, such as this Commission, to implement the FERC's regulations. State commissions have some latitude in how to implement PURPA and the FERC's regulations and "may comply with the statutory requirements by issuing regulations, by resolving disputes on a case-by-case basis, or by taking any other action reasonably designed to give effect to FERC's rules."[12] Of particular importance here, "the states play the primary role in calculating avoided costs and in overseeing the contractual relationship between QFs and utilities operating under the regulations promulgated by the [FERC]."[13] Notwithstanding states' significant role in PURPA implementation, "a state may take action under PURPA only to the extent that that action is in accordance with the [FERC's] rules."[14]

---

[9] 18 CFR § 292.101(b)(6)
[10] *State ex rel. Utilities Comm'n v. North Carolina Power*, 450 S.E.2d 896 (N.C. 1994).
[11] 18 C.F.R. § 292.304(d) (emphasis supplied).
[12] *FERC*, 456 U.S. at 751 (U.S. 1982)
[13] *Independent Energy Producers Ass'n v. California Public Utilities Commission*, 36 F.3d 848, 856 (9th Cir., 1994).
[14] *JD Wind 1, LLC*, 129 F.E.R.C. P61,148, 61632 (F.E.R.C. 2009)

> B. In contravention of PURPA's must-buy requirement, Colorado requires a utility to purchase QF output only if the QF wins the competitive solicitation phase of the utility's Electric Resource Plan.

Colorado has chosen to implement PURPA and the FERC's regulations through Rules 3900 through 3953 of the Commission's Rules Regulating Electric Utilities. Relevant here, Rule 3902 addresses the determination of avoided costs.

Rule 3902(a) appears to honor PURPA's must-buy requirement by stating that "[e]ach utility shall pay qualifying facilities a rate for energy and capacity purchases based on the utility's avoided costs."[15] However, Rule 3902(c) qualifies and effectively contradicts the use of the word "shall" in part (a) of the rule. Rule 3902(c) states, in its entirety,

> A utility shall use a bid or an auction or a combination procedure to establish its avoided costs for facilities with a design capacity of greater than 100 kW. The utility is obligated to purchase capacity or energy from a qualifying facility *only if* the qualifying facility is awarded a contract under the bid or auction or combination process.[16]

This requirement that a QF win a competitive solicitation is also reflected in Public Service's Colorado Electric Tariff, Sheet No. P2, which states, "QFs with a design capacity greater than 100 kW *must be* successful bidders through the Company's Integrated Resource Planning process, as set forth in the Commission's Electric Integrated Resource Planning Rules."[17]

According to the Commission's rules, Public Service must file an Electric Resource Plan (ERP) with the Commission every four years.[18] The Company's previous ERP was filed in October 2011 and the Company issued its most recent all-source solicitation in March 2013. The Company's most recent ERP, which initiated this proceeding, was filed on May 31, 2016. Given

---

[15] 4 CCR 723-3-2902(a).
[16] 4 CCR 723-3-3902(c) (emphasis supplied).
[17] Colorado now uses the term "Electric Resource Planning" in lieu of "Electric Integrated Resource Planning," as used in the tariff. Public Service's complete electric tariff is available at: https://www.xcelenergy.com/staticfiles/xe-responsive/Company/Rates%20&%20Regulations/CO-rates%20rights%20and%20rules-psco_elec_entire_tariff.pdf (emphasis supplied).
[18] 4 CCR 723-3-3603(a).

5

the procedural schedule in this proceeding, the competitive resource acquisition phase of this proceeding, generally referred to as "Phase II," will not begin until sometime in late 2017 or perhaps in 2018.

By the time Public Service issues its next all-source solicitation, at least four years will have elapsed since the previous solicitation. Other than those facilities that qualify for net metering,[19] QFs have not been provided with any opportunities to sell energy or capacity to Public Service at avoided cost between solicitations. Requiring QFs to win a competitive solicitation that only occurs every four years in order to sell energy and capacity to Public Service violates QFs' rights under PURPA.

> *C. Public Service has refused to recognize PURPA's must-buy requirement, instead directing sPower to participate in Phase II of the ERP proceeding in order to sell QF output to Public Service.*

On April 7, 2016, via telephone, and again on May 2, 2016, via email, an sPower employee contacted Public Service regarding several proposed renewable power generation projects and requested information from the Company regarding QF pricing for these projects. On May 10, 2016, sPower received an email response to its inquiry from Public Service stating that QFs with a design capacity of greater than 100 kW must be successful bidders through the Company's ERP process.

On July 18, 2016, the undersigned counsel for sPower sent a letter to Mr. William Dudley and Mr. Christopher Irby, counsel for Public Service (attached as Attachment A), on behalf of sPower. As stated in the letter, the letter served as sPower's notification to Public Service that it plans to make energy and capacity available to Public Service from QFs that sPower will

---

[19] Many customer-sited facilities that would likely be able to certify as QFs are eligible for net metering, but only if they are sized to supply no more than 120 percent of the customer's average annual electricity consumption at that

develop. Citing PURPA's must-buy requirement, the letter requested long-term avoided costs contracts for the purchase of the QFs' output. The letter also included a list of planned QF solar projects, including planned capacity, commercial operation date, and the interconnection queue number that had been assigned to the project in Public Service's OASIS system.[20] sPower also stated its request of Public Service to lock in avoided cost rates for 20-year terms for each of the planned projects.

On August 8, 2016, Mr. Dudley sent a reply to sPower's letter (attached as Attachment B). Mr. Dudley stated that Public Service could not enter into a long-term contract or other obligation with sPower to purchase energy and capacity from the QFs that sPower listed in its letter at its avoided cost. Mr. Dudley referenced the Commission's Rule 3902(c) and stated that it anticipated sPower would participate in the competitive solicitation phase of this proceeding in order to sell QF power.

### IV. The Commission's Rule 3209(c) violates PURPA and the FERC's regulations implementing PURPA.

*A. The FERC has recently held that requiring a QF to win a competitive solicitation as a precondition to being awarded an avoided cost contract is inconsistent with PURPA's must-buy requirement.*

The FERC recently found that a rule similar to Rule 3902(c) that was promulgated by the Montana Public Service Commission did not comply with PURPA or the FERC's regulations implementing PURPA.[21] In *Hydrodynamics, Inc.*, several developers of QF projects in Montana challenged Montana's PURPA rules, which required any QF larger than 10 MW to win an all-

---

site and do not exceed the customer's service entrance capacity. See Rule 3664. This motion focuses on QFs that are not customer-sited or would not otherwise qualify for net metering.

[20] OASIS is shorthand for "Open Access Same-Time Information System" and is used to comply with the FERC's open-access requirements for transmission. Public Service lists generation interconnection requests on its OASIS site at: http://www.rmao.com/wtpp/PSCO_Transmission_Studies.html.

[21] *Hydrodynamics Inc.*, 146 F.E.R.C. P61,193, 61840 (F.E.R.C. 2014)

source competitive solicitation in order to receive a long-term contract to supply energy and capacity to a utility.[22] The FERC ruled that the Montana rule was inconsistent with PURPA and FERC's regulations implementing PURPA. Specifically, the FERC found Montana's rule to be inconsistent with PURPA "to the extent that it offers the competitive solicitation process as the only means by which a QF greater than 10 MW can obtain long-term avoided cost rates."[23]

In reaching its finding in *Hydrodynamics*, the FERC recognized that a QF has an "unconditional right" to choose how it wants to sell its power. A QF has the right to choose whether to sell its power "as available" or at a forecasted avoided cost rate pursuant to a legally enforceable obligation.[24] As explained by the FERC in Order 69, which implemented the relevant sections of PURPA, the "[u]se of the term 'legally enforceable obligation' is intended to prevent a utility from circumventing the requirement that provides capacity credit for an eligible qualifying facility merely by refusing to enter into a contract with the qualifying facility."[25] Given that a QF has an unconditional right to choose to sell power pursuant to a legally enforceable obligation, the FERC reasoned that Montana's policy of "requiring a QF to win a competitive solicitation as a condition to obtaining a long-term contract imposes an unreasonable obstacle to obtaining a legally enforceable obligation."[26]

The FERC very recently found that another state regulation requiring a competitive solicitation process does not comply with PURPA's must-buy requirement. Similar to Montana, in that case, *Windham Solar LLC*, the Connecticut Public Utilities Regulatory Authority's (PURA) regulations implementing PURPA required QFs to participate in a bidding process in

---

[22] *Id*.
[23] *Id*. at 61845.
[24] *Id*. at P61844 (citing 18 CFR § 292.304(d)).

order to obtain a contract at long-term avoided cost rates.[27] In finding that the Connecticut PURA's regulations were inconsistent with PURPA, the FERC quoted its *Hydrodynamics* decision and stated, "Regardless of whether a QF has participated in a request for proposal, that QF has the right to obtain a legally enforceable obligation."[28]

> B. *The Commission's Rule 3902(c) is inconsistent with PURPA's must-buy requirement because requiring a QF to win a competitive solicitation is an unreasonable obstacle to obtaining a legally enforceable obligation.*

Colorado's implementation of PURPA must comply with federal law, including the FERC's regulations.[29] Neither the Commission's Rule 3902(c) nor Public Service's Colorado Electric Tariff comply with PURPA or the FERC's regulations implementing PURPA. Under federal law, the Commission – and by extension, Public Service – cannot require a QF to win a competitive solicitation in order to obtain a long-term contract to sell QF power to Public Service at avoided cost.

Similar to the Montana rule at issue in *Hydrodynamics*, Rule 3902(c) offers the ERP's competitive solicitation process as the only means by which a QF greater than 100 kW can obtain long-term avoided cost rates for the QF's output. As evidenced by Public Service's letter to sPower's counsel, Public Service, citing Rule 3902(c), refused to enter into a contract to purchase QF power from sPower and referred sPower to its ERP competitive solicitation process.

---

[25] *Id*. (citing *Final Rule Regarding the Implementation of Section 210 of the Public Utility Regulatory Policies Act of 1978*, Order No. 69, FERC Stats. & Regs. P 30,128 at 30,880 *order on reh'g*, Order No. 69-A, FERC Stats. & Regs. P 30,160 (1980)).
[26] *Id*. at 61844, 61845.
[27] 156 F.E.R.C. P61,042, 61232 (F.E.R.C. 2016)
[28] *Id*.
[29] *United Distribution Cos. v. FERC*, 88 F.3d 1105, 1155 (D.C. Cir. 1996) ("The Constitution provides that the laws of the federal government 'shall be the supreme Law of the Land; … any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.' That principle of supremacy is implemented through the doctrine of federal 'preemption,' under which state and local law may be stripped of its effect." (quoting U.S. Constitution, Article VII.)); *Farina v. Nokia, Inc.*, 625 F.3d 97, 115 (3d Cir. 2010) ("Federal regulations preempt state laws in the same fashion as congressional statutes."); *See also*, *Midwest ISO Transmission Owners v. FERC*, 373 F.3d 1361, 1372

However, the FERC's holdings in *Hydrodynamics* and *Windham Solar* clarify that requiring sPower to participate in the ERP's competitive solicitation imposes an unreasonable obstacle to sPower obtaining a legally enforceable obligation. As a result, Rule 3902(c) imposes an unreasonable obstacle to a QF obtaining a legally enforceable obligation or contract to sell power to Public Service and therefore violates PURPA.

Just as the FERC found that the QF at issue in *Windham Solar* had the right to obtain a legally enforceable obligation regardless of whether or not it had participated in the utility's request for proposals process, sPower has the right to obtain a legally enforceable obligation under which Public Service must purchase its QFs' output at avoided cost. It is a violation of PURPA for the Colorado Commission and Public Service to require sPower to wait for and participate in the ERP's all-source solicitation in order to sell QF power to Public Service.

Not only does requiring sPower to participate in the ERP's competitive solicitation impose an unreasonable obstacle to obtaining a legally enforceable obligation, it renders meaningless PURPA's must-buy requirement. Any independent power producer (IPP) who otherwise meets the requirements of the ERP's competitive solicitation can participate in the competitive solicitation, including QFs. In other words, QFs would be able to participate in the competitive solicitation regardless of their QF status. Colorado ignores and infringes on QFs' unconditional right to sell energy and capacity granted to them by PURPA when it treats QFs no differently from every other IPP.

---

(D.C. Cir. 2004) ("Federal preemption and the Supremacy Clause … operate to prevent the states from taking regulatory action in derogation of federal regulatory objectives.")

> C. Rule 3902(c) is not meaningfully distinguishable from the Montana rule that FERC found inconsistent with PURPA's must-buy requirement. The Commission should find that Rule 3902(c) is likewise not consistent with PURPA.

Unlike Montana's rules that were at issue in *Hydrodynamics*, Colorado requires competitive solicitations to occur every four years.[30] However, simply increasing the frequency of what the FERC has found to be an "unreasonable obstacle to obtaining a legally enforceable obligation" cannot transform competitive solicitations into an acceptable methodology for implementing PURPA's must-buy requirement. As long as competitive solicitations remain the only means by which a QF can obtain a legally enforceable obligation in this state, Colorado will continue to infringe on QFs' federal rights under PURPA.

It might be argued that the Montana rule at issue in *Hydrodynamics* is distinguishable from the Commission's Rule 3902(c) because the Montana rule did not require all-source solicitations to occur,[31] whereas Colorado's rules require an ERP to be filed every four years.[32] Mr. Dudley, in his letter to sPower counsel on behalf of Public Service, presumably had this minor distinction in mind when he indicated that Public Service believes that the Montana rule effectively foreclosed QFs from selling power to utilities in Montana. However, in its decision, the FERC cited the lack of regularity with which competitive solicitations were held in Montana as an aggravating factor, but not as a decisive factor. The decisive factor in FERC's decision was its recognition of a QF's unconditional right to choose how to sell its power under 18 CFR § 292.304(d), as discussed above.

If the FERC's concern in *Hydrodynamics* were simply that Montana's QF rules were *effectively* foreclosing QFs from selling power to utilities, it could have instructed Montana that

---

[30] 4 CCR 723-3-3603(a).
[31] *Hydrodynamics*, at 61841.
[32] 4 CCR 723-3-3603(a).

11

competitive solicitations must occur regularly or must occur whenever a utility has a need for capacity, which would have ensured QFs had the opportunity to sell power *if* they could win the solicitations. Instead, the FERC found that the Montana rule was inconsistent with PURPA because it offered "the competitive solicitation process as the *only means* by which a QF … can obtain long-term avoided cost rates" for its output.[33] In other words, a state prevents a QF from exercising its unconditional right to choose how to sell its power when the state offers the QF nothing more than the opportunity to compete in a competitive solicitation.

It is true that "PURPA allows states discretion in determining when a [legally enforceable obligation] is created."[34] However, that discretion is not unfettered; states must still comply with PURPA and the FERC's regulations implementing PURPA. The FERC has already found – twice[35] – that requiring QFs to win a competitive solicitation does not comply with PURPA or the FERC's regulations implementing PURPA, if that competitive solicitation is the only means by which the QF can obtain a legally enforceable obligation. This Commission should likewise find, for the same reason, that Rule 3902(c) does not comply with PURPA or the FERC's regulations.

---

[33] *Hydrodynamics*, at 61845 (emphasis supplied).
[34] *Power Res. Group, Inc. v. PUC*, 422 F.3d 231, 239 (5th Cir. Tex. 2005). In Public Service's letter to sPower (Attachment B), Mr. Dudley cites this case from the US Court of Appeals for the Fifth Circuit, in which the court upheld a rule promulgated by the Texas PUC that required QFs to start delivering power to a utility within 90 days in order to create a legally enforceable obligation. As an initial matter, and as the Commission is well-aware, decisions from the Fifth Circuit are not binding upon this Commission. sPower would further contend that the Texas PUC's so-called "90-day rule" at issue in that case also does not comply with PURPA's requirements that states' rules encourage QF development, and was not advisable from a policy perspective. The 90-day rule in Texas imposed an unrealistic expectation on developers to complete or nearly complete projects before a contract or a legally enforceable obligation was even in place, which would make financing projects virtually impossible. Of more immediate concern here, Colorado has not promulgated a rule analogous to the 90-day rule, so the legality or advisability of such a rule is not at issue in this proceeding. The fact that the Fifth Circuit found the 90-day rule to be a reasonable requirement has no bearing on the question of whether the requirement in Rule 3902(c) that a QF win a competitive solicitation is reasonable, because the FERC has already found such a requirement to be an unreasonable obstacle to obtaining a legally enforceable obligation.
[35] See *Hydrodynamics*, 146 F.E.R.C. P61,193, and *Windham Solar,* 156 F.E.R.C. P61,042, as discussed throughout this brief.

## V. Colorado's Rule 3902(c) has stifled QF development in Colorado.

*A. The current language of Rule 3902(c) was added by the Commission with little discussion at the suggestion of Public Service.*

The Commission added the language that requires a QF to win a bid or auction in order to sell energy or capacity to a utility to Rule 3902(c) in a 2005 decision (Decision No. C05-1081) at the recommendation of Public Service.[36] In her Recommended Decision in that rulemaking proceeding (Proceeding No. 03R-519E), Administrative Law Judge (ALJ) Mana Jennings-Fader crafted a rule that would have required utilities to purchase energy and capacity from QFs at avoided cost, as required by PURPA, and use a bid or auction or combination procedure to establish avoided cost payment levels.[37] Presumably, since part (a) of the rule uses the phrase "shall pay," the avoided cost payment levels established by the bid or auction or combination procedure would have been available between solicitations when a QF offers to sell its output to the utility, as PURPA requires.

Public Service was the only party to file exceptions on the language recommended by the ALJ for Rule 3902(c). Public Service urged the Commission to clarify that a utility is obligated to purchase energy and capacity from a QF *only if* the QF is a winning bidder in the solicitation process.[38] The Commission adopted Public Service's recommended addition to Rule 3902(c), which, as discussed earlier, now reads: "The utility is obligated to purchase capacity or energy from a qualifying facility *only if* the qualifying facility is awarded a contract under the bid or auction or combination procedure."[39] Not only was the Commission's discussion of this added

---

[36] Decision No. C05-1081, ¶ 140, Proceeding No. 03R-519E, 04R-003EG, 04R-170EG, In the Matter of the Proposed Repeal and Re-Enactment of All Rules Regulating Electric and Steam Utilities, as Found in 4 CCR 723-3, 10, 19 and 32.
[37] Decision No. R05-0511, Proceeding No. 03R-519E, Appendix A, Rule 3902.
[38] Brief on Exceptions of Public Service Company of Colorado, Proceeding No. 03R-519E, page 21.
[39] Decision No. C05-1081, ¶ 140; Rule 3902(c) (emphasis supplied).

13

requirement sparse, but the Commission made the modification without even considering whether requiring a QF to win a bidding process would comply with PURPA's must-buy requirement.

> B. *As a result of Rule 3902(c), QFs have not been able to sell their output to Public Service except by winning a request for proposals (RFP).*

Pursuant to Rule 3615(a)(III), Public Service may acquire energy and/or capacity from non-utility generators no larger than 30 MW outside of an ERP process. According to discovery responses from Public Service received by sPower (attached as Attachment C), Public Service only purchases output from three renewable energy QFs that are larger than 30 MW in size, and these QFs were winners of a competitive solicitation process. Rule 3902(c) has stifled the development of larger QFs (i.e., 30-80 MW facilities) in Colorado, contrary to PURPA's express purpose of encouraging the development of QFs.[40] In other words, Colorado's implementation of PURPA and the FERC's regulations has been contrary to both the letter and spirit of PURPA.

## VI. The Commission must recognize and enforce the rights of QFs, as required by PURPA.

Colorado has been out of compliance with federal law since 2005 when Rule 3902(c) was approved by the Commission, and must take immediate steps to come into compliance. After Public Service completes Phase II of this proceeding, its capacity needs will be greatly diminished. sPower believes that an accurate avoided cost methodology accounts for a utility's actual capacity needs and energy costs. As a result, each time Public Service acquires capacity – whether through a competitive solicitation or pursuant to state law authorizing utility ownership of renewable resources[41] – it reduces Public Service's avoided capacity value and thereby prejudices QF developers like sPower, whose federal rights under PURPA have not been

---

[40] See 16 USCS § 824a-3(a)

recognized in Colorado for over a decade. It is crucial that Colorado come into compliance with PURPA's must-buy requirement immediately and before Public Service acquires additional capacity in Phase II of this proceeding. If Public Service once again meets its capacity needs through Phase II of the ERP (after also acquiring the 600 MW Rush Creek Wind Project outside of an ERP) rather than purchasing both energy and capacity from QFs as required by PURPA, sPower will be irreparably harmed and Colorado will continue to flout PURPA.

While there is currently reason for urgency and for waiving Rule 3902(c), in the long term, a rulemaking proceeding will be necessary to replace the current Rule 3902(c) with a PURPA-compliant rule.

   A. *Rule 3902(c) violates federal law and must be waived.*

Rule 1003(a) allows the Commission to waive tariff requirements and application of the Commission's rules "for good cause shown."[42] The Commission should find that a waiver of Rule 3902(c) and Sheet No. P2 of Public Service's tariff, which requires QFs larger than 100 kW to be successful bidders in the ERP's competitive solicitation process, is necessary to bring Colorado's QF procurement rules into compliance with PURPA and the FERC's regulations implementing PURPA.[43] Such waiver should be a full waiver that persists until the Commission approves a modified rule and a modified tariff that comply with PURPA and the FERC's regulations.

---

[41] See Proceeding No. 16A-0117E.
[42] 4 CCR 723-1-1003(a).
[43] Specifically, the entirety of Rule 3902(c) must be waived. The language of Public Service's tariff that must be waived appears on Sheet No. P2 and is as follows: "QFs with a design capacity greater than 100 kW must be successful bidders through the Company's Integrated Resource Planning process, as set forth in the Commission's Electric Integrated Resource Planning Rules, 4 CCR 723-21."

15

> B. *The Commission must allow QFs to obtain contracts or legally enforceable obligations with Public Service at Public Service's avoided cost without participating in Phase II of this ERP.*

Waiving Rule 3902(c) and the corresponding language in Sheet No. P2 of Public Service's tariff would result in a requirement that Public Service enter into long-term avoided cost contracts with QFs at the QF's option, as required by Rule 3902(a).[44]

To calculate accurate long-term avoided costs, the Commission should require Public Service to use what is known as the differential revenue requirements method. Under this methodology, the utility models two revenue requirements, the system revenue requirement with the QF and the system revenue requirement without the QF, setting the cost of the QF to zero for purposes of the analysis.[45] The difference between the two modeled revenue requirements is the utility's avoided cost and accounts for both avoided energy costs and avoided capacity costs simultaneously.[46] It is likely that Public Service's PLEXOS model can produce an accurate avoided cost rate using this methodology. Utah uses a similar methodology for its QF program.[47] Utah has also established a fair and equitable queuing process for QFs, which is described in Schedule 38 of Rocky Mountain Power's tariff.[48]

---

[44] The option for long-term contracting is required to comply with the FERC's requirement that a QF be allowed "to establish a *fixed* contract price for its energy and capacity at the outset of its obligation." The FERC recognized the importance of long-term, fixed price contracts because, "in order to be able to evaluate the financial feasibility of a [QF], an investor needs to be able to estimate, with reasonable certainty, the expected return on a potential investment before construction of a facility." See *JD Wind 1, LLC*, 130 F.E.R.C. P61,127, 61631, (F.E.R.C. 2010), (citing the FERC's Order 69, *Small Power Production and Cogeneration Facilities; Regulations Implementing Section 210 of the Public Utility Regulatory Policies Act of 1978* (emphasis supplied)); *see also* 18 CFR § 292.304(d).

[45] *See* "PURPA Title II Compliance Manual" by Robert E. Burns and Kenneth Rose, page 35, available at: https://www.publicpower.org/files/PDFs/PURPA%20Title%20II%20Manual%20Final_w-cover.pdf.

[46] *Id*.

[47] See the Utah Public Service Commission's "Order on Phase II Issues," Docket No. 12-035-100, issued August 16, 2013, available at: http://www.psc.utah.gov/utilities/electric/elecindx/2012/documents/24634012035100oopi.pdf.

[48] Schedule 38 can be accessed at: https://www.rockymountainpower.net/content/dam/rocky_mountain_power/doc/About_Us/Rates_and_Regulation/Utah/Approved_Tariffs/Rate_Schedules/Qualifying_Facility_Procedures.pdf.

sPower acknowledges that actually determining an accurate avoided cost will require an evidentiary record. To that end, sPower plans to provide additional substantive recommendations through Answer Testimony in Phase I of this proceeding for how the Commission should establish an interim avoided cost methodology during the time that Rule 3902(a) has been waived.

By definition, when a utility purchases a QF's output at the utility's avoided cost – as it is required to do under PURPA – both the utility and its ratepayers are left indifferent from a cost perspective.[49] Complying with PURPA's must-buy requirement will promote Colorado's policy to "utilize renewable energy resources to the maximum practicable extent"[50] without imposing additional cost burdens on ratepayers. Adding additional renewable resources to Colorado's energy supply in the form of QFs will also help Colorado achieve compliance with the federal Clean Power Plan.

Colorado has long recognized the significant benefits of renewable energy, including avoided emission benefits, reduced water consumption, economic development and jobs, hedging against spikes in fuel costs, and a diversified energy supply.[51] The State and this Commission have done an admirable job in bringing the benefits of renewable energy to Colorado citizens. Waiving Rule 3902(c) and Public Service's tariff Sheet No. P2 in the near term and developing a PURPA-compliant QF program over the long term will continue this strong legacy and bring Colorado into compliance with federal law.

---

[49] 18 CFR § 292.101(b)(6) ("Avoided costs means the incremental costs to an electric utility of electric energy or capacity or both which, but for the purchase from the qualifying facility or qualifying facilities, such utility would generate itself or purchase from another source.").
[50] Amendment 37, Legislative Declaration of Intent.
[51] See *id.*

**VII.   Conclusion and Recommendations**

For all of the reasons stated herein, sPower respectfully recommends that the Commission make the following determinations:

- Rule 3902(c) of the Commission's rules and Sheet No. P2 of Public Service's Colorado electric tariff do not comply with PURPA or the FERC's regulations implementing PURPA;

- Colorado's implementation of PURPA must comply with PURPA's requirements and the FERC's regulations;

- Colorado must come into compliance with PURPA by waiving Rule 3902(c) and Sheet No. P2 of Public Service's tariff, and by requiring Public Service to purchase energy and capacity at its avoided costs from QFs prior to the beginning of a competitive solicitation process in Phase II of this proceeding;

- Public Service should use the differential revenue requirement methodology to calculate its avoided cost, which will produce an accurate avoided cost rate that will leave ratepayers indifferent to Public Service's purchases of QF energy and capacity (sPower will provide additional substantive recommendations on how to establish this methodology through a witness in this proceeding);

- In the long term, the Commission must initiate a rulemaking proceeding to develop a new rule to replace Rule 3902(c) with a rule that complies with PURPA and the FERC's regulations.

Finally, sPower respectfully requests that the Commission rule on this Motion as soon as practicable after responses are filed, and prior to the start of the Phase I evidentiary hearing, currently scheduled to begin on February 1, 2017.

Respectfully submitted on October 14, 2016.

BY: */s/ Scott F. Dunbar*
Kevin T. Fox (16PPA0084)
Scott F. Dunbar (44521)
Keyes & Fox LLP
1580 Lincoln St., Suite 880
Denver, CO 80203
Phone: (510) 314-8201 (Fox)
Phone: (720) 216-1184 (Dunbar)
kfox@kfwlaw.com
sdunbar@kfwlaw.com

*Counsel to Sustainable Power Group, LLC (sPower)*

## CERTIFICATE OF SERVICE

I hereby certify that I have on October 14, 2016, I have duly served a true and correct copy of the foregoing **QF BRIEF OF SUSTAINABLE POWER GROUP, LLC (sPOWER)** upon all parties via the Public Utilities Commission's E-Filing system and thereby to be served electronically and automatically on any persons for whom such automatic electronic filing is provided by the Commission's e-filing system in this docket on this date.

*/s/ Scott Dunbar*
Scott Dunbar