**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
10/13/17
**JEFFREY P. COLWELL, CLERK**

Civil Action No. 17-cv-00683-CMA-NYW

**sPower Development Company, LLC**, a Delaware limited liability company,

Plaintiff,

v.

**Colorado Public Utilities Commission**, a regulatory agency of the State of Colorado;
**Jeffrey P. Ackermann**, in his official capacity as Commissioner and Chairman of the Colorado Public Utilities Commission;
**Frances A. Koncilja**, in her official capacity as Commissioner of the Colorado Public Utilities Commission; and
**Wendy M. Moser**, in her official capacity as Commissioner of the Colorado Public Utilities Commission;

Defendants.

---

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

**Nature of the Case**

1.      Plaintiff sPower Development Company, LLC (sPower DevCo) brings this enforcement action seeking declaratory and injunctive relief pursuant to the Public Utility Regulatory Policies Act of 1978 (PURPA). PURPA provides a statutory cause of action for a party in sPower DevCo's position to seek judicial redress against state public utility regulators – like the Defendants here – whenever the Federal Energy Regulatory Commission (FERC) fails to take action to overturn a state regulation that violates federal law. Here, sPower DevCo asks this Court to overturn a state regulation adopted by Defendants that violates PURPA and unlawfully restricts the process by which

1

certain independent companies can supply electric energy and/or capacity to electric utilities.

2.      PURPA requires an electric utility to purchase energy and capacity offered to it by certain small electric generation facilities powered by renewable energy or co-generation, which are known as Qualifying Facilities (QFs). Under PURPA and the regulations promulgated by the FERC, a QF has the right to enter into a long-term contract or other legally enforceable obligation with a utility at the utility's "avoided cost" rate – defined by the costs that the utility will avoid incurring (either internally or through purchases from a non-QF third-party) by purchasing the QF's output. This obligation on the part of utilities is commonly referred to as PURPA's "must-buy" provision. Although state regulatory authorities have some latitude in setting avoided cost rates (and thus determining the price the utility pays when a QF exercises the "must-buy" provision), they must nevertheless comply with PURPA and the FERC's regulations implementing PURPA.

3.      Here, Plaintiff sPower DevCo challenges Rule 3902(c) of the Rules Regulating Electric Utilities promulgated by the Colorado Public Utilities Commission (CoPUC). Contrary to PURPA and the FERC's regulations implementing PURPA, Rule 3902(c) places unreasonable restrictions on the rights of QFs to enter into long-term obligations by requiring QFs, such as those owned by Plaintiff, to win a competitive solicitation process before they may enter into a contract or legally enforceable obligation with a regulated electric utility in Colorado.

4.      The FERC has twice found that similar rules in other states violate PURPA and the FERC's regulations implementing PURPA. sPower DevCo now asks this Court to follow this precedent and declare Rule 3902(c) unlawful as implemented by the CoPUC.

## Parties

5.      Plaintiff, sPower Development Company, LLC (sPower DevCo), is a limited liability company organized under the laws of the State of Delaware. sPower DevCo develops and builds electric generation facilities powered by renewable energy resources, such as solar and wind energy, including QFs. sPower DevCo is the owner of eleven QFs that are currently under development in Colorado. These QFs have been certified as QFs through the filing of the FERC's Form No. 556 with the FERC.[1]

6.      sPower DevCo is a "qualifying small power producer" as that term is used in Section 210(h)(2)(B) of PURPA through its certification of the above-mentioned QFs currently under development. 16 U.S.C. § 824a-3(h)(2)(B); 16 U.S.C. § 796(17)(D).

7.      Defendant CoPUC is an agency of the State of Colorado. Colo. Const. Art. XXV; C.R.S. 40-2-101(1). Defendants Chairman Jeffrey P. Ackermann, Commissioner Frances A. Koncilja, and Commissioner Wendy M. Moser are each named as defendants in their official capacities as CoPUC commissioners (collectively with the CoPUC referred to herein as the "Defendants"). All of the Defendants are residents of the State of Colorado.

---

[1] The relevant FERC docket numbers for these QF self-certifications are as follows: QF17-502-000, QF17-557-000, QF17-558-000, QF17-559-000, QF17-560-000, QF17-561-000, QF17-562-000, QF17-563-000, QF17-564-000, QF17-565- 000, and QF17-566-000.

8.      The Defendants comprise a "State regulatory authority" as that term is used in Section 210(h)(2)(B) of PURPA. 16 U.S.C. § 824a-3(h)(2)(B); 16 U.S.C. § 796(21).

## Jurisdiction

9.      sPower DevCo brings this lawsuit pursuant to Section 210(h)(2)(B) of PURPA. 16 U.S.C. § 824a-3(h)(2)(B).

10.     sPower DevCo seeks declaratory and injunctive relief arising from the CoPUC's failure to implement PURPA in a manner consistent with PURPA and regulations promulgated by the FERC, which together form a body of federal law with which state utility regulatory commissions must comply. 16 U.S.C. § 824a-3(f)(1).

11.     As described in more detail below, sPower DevCo has met all conditions precedent to bringing this action before this Court pursuant to Section 210(h)(2)(B) of PURPA.

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and is empowered to grant the relief requested herein pursuant to Section 210(h)(2)(B) of PURPA.

## Venue

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c). The Defendants are all residents of the District of Colorado. Moreover, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Colorado.

**General Allegations**

*Requirements of the Public Utility Regulatory Policies Act of 1978*

14.     Congress passed PURPA in 1978 for the purpose of reducing the nation's reliance on fossil fuels. *See FERC v. Mississippi*, 456 U.S. 742, 750 (U.S. 1982).

15.     Section 210 of PURPA "sought to accomplish that goal by encouraging the development of nontraditional electricity generating facilities, such as those that use renewable resources." *Allco Renewable Energy, Ltd. v. Mass. Elec. Co.*, 2016 U.S. Dist. LEXIS 130617, at *3 (D. Mass. Sept. 23, 2016).

16.     Recognizing that "traditional electricity utilities were reluctant to purchase power from … nontraditional facilities," PURPA directed the FERC to promulgate rules requiring electric utilities to purchase the electrical output of certain co-generation or small power production facilities. *FERC*, 456 U.S. at 750 (citing 16 U.S.C. § 824a-3(a)).

17.     Eligible co-generation and small power production facilities are collectively referred to as QFs in the FERC's regulations. 18 CFR 292.101(b)(1).

18.     A QF can be any electric generation facility with a power production capacity of 80 megawatts (MW) or less that is powered by solar, wind, waste, or geothermal energy, or a co-generation facility with a capacity of 80 MW or less that meets certain FERC-established production efficiency requirements. 16 U.S.C. § 796(17) & (18).

19.     PURPA and the FERC's regulations implementing PURPA place an obligation on utilities to purchase the output from QFs. 16 U.S.C. § 824a-3(a); 18 CFR 292.303(a). This obligation is generally referred to as PURPA's "must-buy" requirement.

The must-buy requirement allows a QF to force a utility to purchase its output of electricity if the QF meets the relevant statutory requirements to be certified as a QF. *N. Laramie Range All. v. FERC*, 733 F.3d 1030, 1033 (10th Cir. 2013).

20.     To protect utility ratepayers and to ensure that QFs are paid a fair rate, PURPA and the FERC's regulations require utilities to purchase a QF's output at a rate that is based on a utility's avoided costs. 16 U.S.C. § 824a-3(d); 18 CFR 292.303(a).

21.     The term "avoided costs" is defined as "the incremental costs to an electric utility of electric energy or capacity or both which, but for the purchase from the qualifying facility or qualifying facilities, such utility would generate itself or purchase from another source." 18 CFR § 292.101(b)(6).

22.     By definition, an avoided cost purchase rate ensures that the utility – and by extension, the utility's ratepayers – will be indifferent from a financial perspective to whether the utility purchases energy and capacity from a QF, provides that energy and capacity itself, or purchases that energy and capacity from a third-party.

23.     The FERC's regulations, with which state utility regulatory commissions must comply, implement PURPA's must-buy requirement. 16 U.S.C. § 824a-3(f)(1).

24.     The FERC's regulations at 18 CFR 292.304(d) provide each QF with two options for how to sell its electrical output to a utility:

Each qualifying facility *shall have* the option either:

(1) To provide energy as the qualifying facility determines such energy to be available for such purchases, in which case the rates for such purchases shall be based on the purchasing utility's avoided costs calculated at the time of delivery; or

(2) To provide energy or capacity pursuant to a legally enforceable obligation for the delivery of energy or capacity over a specified term, in which case the rates for such purchases shall, at the option of the qualifying facility exercised prior to the beginning of the specified term, be based on either:

      (i) The avoided costs calculated at the time of delivery; or
      (ii) The avoided costs calculated at the time the obligation is incurred.

(Emphasis supplied).

### Colorado's Unlawful Implementation of PURPA's Must-Buy Requirement

25.    PURPA directs state utility regulatory commissions, such as the CoPUC, to implement the FERC's regulations. 16 U.S.C. § 824a-3(f)(1).

26.    State regulatory commissions have some latitude in how to implement PURPA and the FERC's regulations so long as such implementation is consistent with PURPA and FERC's regulations implementing PURPA.

27.    State regulatory commissions "may comply with the statutory requirements by issuing regulations, by resolving disputes on a case-by-case basis, or by taking any other action reasonably designed to give effect to FERC's rules." *FERC*, 456 U.S. at 751 (U.S. 1982).

28.    Of particular importance here, "the states play the primary role in calculating avoided costs and in overseeing the contractual relationship between QFs and utilities operating under the regulations promulgated by [the FERC]." *Independent*

*Energy Producers Ass'n v. California Public Utilities Commission*, 36 F.3d 848, 856 (9th Cir. 1994).

29.     Notwithstanding states' significant role in PURPA implementation, "a state may take action under PURPA only to the extent that that action is in accordance with the [FERC's] rules." *JD Wind 1, LLC*, 129 F.E.R.C. P61,148, 61632 (F.E.R.C. 2009).

30.     Colorado has implemented PURPA and the FERC's regulations through Rules 3900 through 3953 of the CoPUC's Rules Regulating Electric Utilities. 4 Code of Colorado Regulations (CCR) 723-3-3900 – 3953 (attached hereto as Exhibit 1).

31.     Relevant here, Rule 3902 addresses the determination of avoided costs and the circumstances under which a QF may obtain a contract or legally enforceable obligation. 4 CCR 723-3-3902 (hereinafter "Rule 3902").

32.     Rule 3902(a) states: "Each utility shall pay qualifying facilities a rate for energy and capacity purchases based on the utility's avoided costs." 4 CCR 723-3-3902(a).

33.     To determine an avoided cost rate to be paid to a QF, Rule 3902(c) states: "A utility shall use a bid or an auction or a combination procedure to establish its avoided costs for facilities with a design capacity of greater than 100 kW [kilowatts]." 4 CCR 723-3-3902(c).

34.     However, Rule 3902(c) goes on to state: "The utility is obligated to purchase capacity or energy from a qualifying facility *only if* the qualifying facility is awarded a contract under the bid or auction or combination process." 4 CCR 723-3-3902(c) (emphasis supplied).

35.     The "bid or auction or combination process" referred to in Rule 3902(c) is the electric resource planning (ERP) process, which occurs for each regulated utility only once every four years. CoPUC Decision No. C16-1156-I, ¶ 4, CoPUC Proceeding No. 16A-0396E ("Except for QFs with a design capacity of 100 KWs [sic] or less, the [CoPUC] determines avoided costs through an ERP's competitive bidding process. QFs may participate in the [CoPUC's] ERP process. Through [CoPUC] Rule 3902(c), QFs are awarded a contract 'only' if they win a competitive bid" (internal citations omitted)).

36.     Every four years, each electric utility that is regulated by the CoPUC holds a competitive solicitation, or request for proposals (RFP), process as a part of its ERP. 4 CCR 723-3-3603(a); 4 CCR 723-3-3611(a); 723 CCR 723-3-3616(a).

37.     The purpose of this RFP process is for the utility "to acquire new utility resources" needed to serve its customers. 4 CCR 723-3611(a).

38.     By requiring any QF that is larger than 100 kW in size to win a quadrennial RFP process in order to sell its output to a regulated utility, CoPUC Rule 3902(c) places an unlawful restriction on a QF's ability to enter a contract with a utility at an avoided cost rate, thereby violating PURPA's must-buy requirement, as set forth in PURPA and the FERC's regulations. 16 U.S.C. § 824a-3(a); 18 CFR 292.304(d).

39.     Although QFs larger than 100 kW must participate in and win a competitive solicitation to obtain a contract to sell energy and capacity to a utility pursuant to PURPA under CoPUC Rule 3902(c), the CoPUC regularly approves contracts for the acquisition of resources outside of the ERP process. For example, the CoPUC recently approved nearly a gigawatt of new generation capacity for Public

Service Company of Colorado (Public Service) in the form of a large utility-owned wind farm and renewable distributed generation resources, such as small solar facilities located at customers' premises. CoPUC Decision No. C16-1075, ¶ 126, CoPUC Proceeding Nos. 16AL-0048E, 16A-0055E, and 16A-0139E.

40.     As set forth above, the FERC's regulations provide each QF with the right to sell its energy and capacity in a manner of its choosing, either on an "as available" basis or pursuant to a contract or legally enforceable obligation over a specified term. 18 CFR 292.304(d).

41.     Rule 3902(c) prevents a QF from exercising this right, which arises under federal law, by requiring the QF win an infrequently-held RFP before it may sell its output to a utility under a contract or legally enforceable obligation.

<em>Injuries to sPower DevCo</em>

42.     sPower DevCo has expended significant money and company resources to develop engineering designs for its eleven planned QFs.

43.     sPower DevCo has expended significant money and company resources to identify appropriate land and enter into lease options for its eleven planned QFs.

44.     sPower DevCo has expended significant money and company resources to plan construction of its eleven planned QFs.

45.     sPower DevCo has expended significant money and company resources evaluating the solar resource for its eleven planned QFs, including evaluation of weather patterns and topography.

46.     sPower DevCo has expended significant money and company resources to prepare permit applications with supporting materials and to file for relevant permits for its planned QFs.

47.     sPower DevCo has expended significant money and company resources to interconnect its eleven planned QFs to Public Service's electric grid, including paying application fees and paying for the interconnection studies necessary to determine the ultimate cost that sPower will need to pay to safely connect its QFs to the grid.

48.     As of March 16, 2017, sPower DevCo has expended more than $500,000 on the development activities described above in paragraphs 42-47 for its eleven QF projects in Colorado.

49.     sPower DevCo owns eleven certified QF projects for which it is ready to enter into contracts or other legally enforceable obligations with Public Service Company of Colorado to sell energy and capacity.

50.     Rule 3902(c) has prevented sPower DevCo from exercising its federal statutory right to force Public Service to purchase its energy and capacity from its eleven QFs, in contravention of Section 210(a) and (f) of PURPA and 18 CFR 292.304(d).

51.     Specifically, and as explained in Exhibit 2 to this Complaint, on April 7, 2016, via telephone, and again on May 2, 2016, via email, sPower contacted Public Service regarding proposed renewable power generation projects and requested information from Public Service regarding QF pricing for these projects.

52.    On May 10, 2016, sPower DevCo received an email response from Public Service stating that QFs with a design capacity of greater than 100 kW must be successful bidders through the Company's ERP process.

53.    On July 18, 2016, counsel for sPower DevCo sent a letter to counsel for Public Service, stating that sPower DevCo intends to avail itself of its federal legal right under PURPA to make energy and capacity available to Public Service from several QFs. Exhibit 3. Citing PURPA's must-buy requirement, the letter requested long-term avoided cost contracts for the purchase of the QFs' energy and capacity.

54.    On August 8, 2016, counsel for Public Service sent a reply to sPower DevCo's letter. Exhibit 4. Counsel for Public Service stated that Public Service could not enter into a long-term contract or other obligation with sPower to purchase energy and capacity from the QFs that sPower DevCo listed in its July 18, 2016 letter. *Public Service's August 8, 2016 rejection letter pointed specifically to CPUC Rule 3902(c) as the cause of the rejection and stated that sPower DevCo's QFs must participate in the competitive solicitation phase of the 2016 ERP proceeding to sell QF power*.

55.    On October 14, 2016, sPower DevCo filed a motion with the CoPUC asking the CoPUC to waive Rule 3902(c) and require Public Service to purchase energy and capacity from sPower's QFs at Public Service's avoided cost. Exhibit 5. Therein, sPower DevCo explained that Rule 3902(c) does not comply with PURPA or the FERC's regulations. *Id*.

56.    On December 14, 2016, the CoPUC denied sPower DevCo's motion to waive Rule 3902(c), incorrectly finding that Rule 3902(c) complies with PURPA and

denying the relief that sPower DevCo had sought in its October 14, 2016 motion. Exhibit 6.

57.     sPower DevCo's inability to exercise its federal statutory right to force Public Service to purchase its energy and capacity due to Rule 3902(c), and the CoPUC's and Public Service's reliance on Rule 3902(c), has resulted in ongoing financial injury to sPower DevCo because it has prevented sPower DevCo from entering into a contract or legally enforceable obligation under PURPA that would allow sPower to complete the development of its QFs in Colorado, and it has caused competitive injury to sPower DevCo by denying sPower DevCo its right to sell energy and capacity to a utility outside the ERP while the CoPUC has approved new utility-owned generation and other competing generation resources outside the ERP.

58.     sPower DevCo's inability to exercise its federal statutory right to force Public Service to purchase its energy and capacity due to Rule 3902(c), and the CoPUC's and Public Service's reliance on Rule 3902(c), has resulted in ongoing injury to sPower DevCo because it has denied sPower DevCo of its federal legal rights under PURPA.

59.     Neither PURPA nor the FERC's regulations implementing PURPA allow a state regulatory commission like the CoPUC to impose a condition on a QF's ability to sell its energy and capacity in this manner. *See Hydrodynamics, Inc.*, 146 FERC P61,193, 61840 (FERC 2014) (finding that "requiring a QF to win a competitive solicitation as a condition to obtaining a long-term contract imposes an unreasonable obstacle to obtaining a legally enforceable obligation particularly where … such

competitive solicitations are not regularly held" and that "[t]he Montana Rule [requiring QFs to win a competitive solicitation] is therefore inconsistent with PURPA and the [FERC's] regulations implementing PURPA to the extent that it offers the competitive solicitation process as the only means by which a QF greater than 10 MW can obtain long-term avoided cost rates."); *see also Windham Solar, LLC*, 156 FERC P61,042, 61232 (FERC 2016) ("Regardless of whether a QF has participated in a request for proposal, that QF has the right to obtain a legally enforceable obligation.")

### *sPower DevCo Filed a Petition with the FERC to Resolve These Issues, But the FERC is Presently Without a Quorum and Failed to Timely Act*

60.     On December 30, 2016, Plaintiff filed a Petition for Enforcement Pursuant to Section 210(h) of the Public Utility Regulatory Policies Act of 1978 (Petition for Enforcement) with the FERC (attached hereto as Exhibit 2). The FERC docket number that was assigned to the Petition for Enforcement was Docket No. EL17-35-000.

61.     Pursuant to Section 210(h)(2)(B) of PURPA, Plaintiff requested that the FERC initiate an enforcement action in federal district court against the CoPUC within 60 days. *Id*.

62.     Specifically, Plaintiff requested that the FERC seek to invalidate the unlawful requirement found in the CoPUC's Rule 3902(c) that a QF must win an RFP process as a precondition to obtaining a long-term contract or legally enforceable obligation with a regulated utility in Colorado, and to provide any other relief that the FERC deemed appropriate. *Id*. at 16.

63.     If the FERC does not initiate an enforcement action within 60 days following the filing of a petition for enforcement pursuant to Section 210(h)(2)(B) of PURPA, "the petitioner may bring an action in the appropriate United States district court to require such State regulatory authority … to comply with such requirements, and such court may issue such injunctive or other relief as may be appropriate." 16 U.S.C. § 824a-3(h)(2)(B). The 60-day deadline following the date of Plaintiff's Petition for Enforcement was February 28, 2017.

64.     A quorum is required for the FERC to act on sPower DevCo's Petition for Enforcement. 42 U.S.C. § 7171(e).

65.     The FERC has been without a quorum since February 3, 2017.

66.     The FERC did not initiate an enforcement action based on sPower DevCo's Petition on or before February 28, 2017.

67.     As of the date of this Complaint, the FERC still has not initiated an enforcement action based on sPower DevCo's Petition.

68.     Because the FERC did not initiate an enforcement action against the CoPUC within 60 days of the filing of Plaintiff's Petition for Enforcement, Plaintiff has a statutory right under Section 210(h)(2)(B) of PURPA to bring this action against the CoPUC in this Court. 16 U.S.C. § 824a-3(h)(2)(B).

**First Claim for Relief**
**(Declaratory Relief)**

69.     sPower DevCo realleges and incorporates all of the foregoing allegations as if set forth herein. sPower DevCo also incorporates by reference all allegations made in Exhibits 1-6 attached hereto.

70.     Section 210(h)(2)(B) of PURPA provides that a qualifying small power producer is entitled to injunctive and declaratory relief in an appropriate United States district court whenever: (1) a state regulatory authority has implemented a state rule that does not comply with Section 210(f) of PURPA; and (2) the FERC has failed to initiate an enforcement action under Section 210(h)(2)(A) of PURPA within 60 days of receiving an enforcement petition.

71.     sPower DevCo is a qualifying small power producer under PURPA.

72.     The CoPUC is a state regulatory authority under PURPA.

73.     The CoPUC adopted Rule 3902(c) purportedly pursuant to the authority delegated to state regulatory authorities by Section 210(f) of PURPA.

74.     The second sentence of Rule 3902(c) violates Section 210(f) of PURPA by improperly mandating that a QF larger than 100 kW must win a competitive solicitation or RFP process as an essential precondition to selling its energy and capacity pursuant to a long-term contract or legally enforceable obligation.

75.     Rule 3902(c) has prevented sPower DevCo from entering into contracts or other legally enforceable obligations to sell energy and capacity from its eleven planned QFs to Public Service, a public utility in Colorado, in contravention of Section 210(a) and (f) of PURPA and 18 CFR 292.304(d).

76.     sPower DevCo's inability to exercise its federal statutory right to force Public Service to purchase its energy and capacity due to Rule 3902(c), and the CoPUC's and Public Service's reliance on Rule 3902(c), has resulted in ongoing injury to sPower DevCo because it has denied sPower DevCo of its federal legal rights under PURPA, prevented sPower DevCo from entering into a contract or legally enforceable obligation under PURPA that would allow sPower DevCo to complete the development of its QFs in Colorado, and caused sPower DevCo competitive injury denying sPower DevCo its right to sell energy and capacity to a utility outside the ERP while the CoPUC has approved new utility-owned generation and other competing generation resources outside the ERP.

77.     sPower DevCo filed its Petition for Enforcement with the FERC on December 30, 2016.

78.     As of the filing of this Complaint, more than 60 days have elapsed since sPower DevCo filed its Petition for Enforcement with the FERC.

79.     To date, the FERC has not initiated an enforcement action with respect to sPower DevCo's Petition for Enforcement.

80.     sPower DevCo is entitled to declaratory and injunctive relief from this Court pursuant to Section 210(h)(2)(B) of PURPA declaring that the second sentence of Rule 3902(c) is unlawful and was implemented by the CoPUC in violation of PURPA and the FERC's regulations interpreting PURPA.

**Prayer for Relief**

WHEREFORE, sPower DevCo respectfully requests that the Court:

A.      Enter judgment declaring that the second sentence of CoPUC Rule 3902(c) is inconsistent with and does not comply with the requirements of PURPA or the FERC's regulations implementing PURPA;

B.      Enjoining the CoPUC from enforcing the second sentence of Rule 3902(c) or otherwise taking any action inconsistent with Section 210(f) of PURPA; and

C.      For such other and further relief as the Court deems just and proper.

DATED:       June 27, 2017

KEYES & FOX LLP and

By: */s/ Scott F. Dunbar*
Kevin T. Fox, California No. 256609
            Oregon No. 052551
            Colorado No. 50835
Scott F. Dunbar, Colorado No. 44521
1580 Lincoln St., Suite 880
Denver, CO 80203
Telephone: (510) 314-8201 (Fox)
Telephone: (720) 216-1184 (Dunbar)
sdunbar@kfwlaw.com
kfox@kfwlaw.com