IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00683-CMA-NYW

SPOWER DEVELOPMENT COMPANY, LLC,

    Plaintiff,

v.

COLORADO PUBLIC UTILITIES COMMISSION, a regulatory agency of the State of Colorado;
JEFFREY P. ACKERMANN, in his official capacity as Commissioner and Chairman of the Colorado Public Utilities Commission;
FRANCES A. KONCILJA, in her official capacity as Commissioner of the Colorado Public Utilities Commission;
WENDY M. MOSER, in her official capacity as Commissioner of the Colorado Public Utilities Commission; and
BLACK HILLS/COLORADO ELECTRIC UTILITY COMPANY, LP,

    Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Magistrate Judge Nina Y. Wang

    This matter comes before the court on Defendants Colorado Public Utilities Commission, Jeffery P. Ackermann, Frances A. Koncilja, and Wendy M. Moser's (collectively, "Defendants") Motion to Dismiss First Amended Complaint Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ("Motion" or "Motion to Dismiss"), filed October 27, 2017. [#52]. The undersigned considers the Motion pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated May 1, 2017 [#32], and the memorandum dated October 31, 2017 [#53]. This court concludes that oral argument would not materially assist in the resolution of this matter. Accordingly, upon careful review of the Motion and associated briefing, the applicable law, and entire case file, I respectfully RECOMMEND that the Motion to Dismiss be DENIED.

**BACKGROUND**

Plaintiff sPower Development Company, LLC ("Plaintiff" or "sPower") initiated this action by filing its Complaint for declaratory and injunctive relief on March 16, 2017. [#1]. Defendants moved to dismiss Plaintiff's Complaint for lack of standing and failure to state a claim. *See* [#16]. The undersigned agreed that Plaintiff lacked standing, and recommended that Plaintiff's Complaint be dismissed for want of federal subject matter jurisdiction. *See* [#41]. sPower then moved to amend its Complaint to cure the perceived deficiencies; the presiding judge, the Honorable Christine M. Arguello, granted Plaintiff's Motion to Amend, *see* [#51], and Plaintiff's First Amended Complaint ("FAC") became the operative pleading in this matter, *see* [#62].[1] The following facts, drawn from the FAC, are relevant to the instant Motion to Dismiss.

Plaintiff, a Delaware limited liability company, develops and builds electric generation facilities powered by renewable energy resources. [#62 at ¶ 5]. It is currently developing eleven (11) electric generation facilities in Colorado—facilities the Federal Energy Regulatory Commission ("FERC") certified as Qualifying Facilities ("QFs") under the Public Utility Regulatory Policies Act of 1978 ("PURPA" or "Act"). [*Id.* at ¶¶ 5–6, 17–18]; *see also* 16 U.S.C. § 824a-3; 18 C.F.R. § 292.101(b)(1). Under the Act and FERC's implementing regulations, electric utilities are required to purchase a QF's offered energy and capacity at the utility's "avoided costs," *i.e.*, "the incremental costs to the utility" of capacity and energy that the utility would have produced or purchased elsewhere had it not purchased the energy/capacity from the

---

[1] In doing so, Judge Arguello denied as moot Defendants' Motion to Dismiss [#16] and rejected as moot the undersigned's Recommendation on the Motion to Dismiss [#41]. *See* [#51 at 2]. Contrary to sPower's assertions in its Response to the instant Motion, nothing in Judge Arguello's Order granting sPower leave to amend suggests (nor is this court inclined to infer as much) that Defendants were foreclosed from re-filing a Motion to Dismiss aimed at the operative pleading, as a superseding complaint moots any motion(s) directed at an earlier, inoperative complaint. *See Gotfredson v. Larsen LP*, 432 F. Supp. 2d 1163, 1172 (D. Colo. 2006). The instant Motion, therefore, is procedurally sound.

QF. [*Id.* at ¶¶ 2, 19–21]. This is commonly referred to as PURPA's "must-buy" provision. *See* [*id.* at ¶¶ 2, 19]; *see also* 16 U.S.C. § 824a-3(a); 18 C.F.R. § 292.303(a). QFs and utilities have the ability to enter into contracts or legally enforceable obligations under the "must-buy" provision. [*Id.* at ¶ 2].

Plaintiff avers that, although state regulatory authorities have some latitude in setting avoided costs, they must still comply with the Act's "must-buy" provision and FERC's implementing regulations. [*Id.* at ¶¶ 2, 23–29]. Here, sPower levies a facial challenge to Defendants' Rule 3902(c) of the Rules Regulating Electric Utilities, which applies to QFs with a design capacity of greater than 100 kilowatts ("kWs"). [*Id.* at ¶¶ 3, 33–34]; *see also* 4 Colo. Code Regs. § 723-3:3902(c) (obligating utilities to purchase capacity from QFs "only if the [QF] is awarded a contract under the bid or auction or combination process."). sPower alleges that Rule 3902(c) "places an unlawful restriction on a QF's ability to enter a contract with a utility at an avoided cost rate, thereby violating PURPA's must-buy requirement[.]" [#62 at ¶ 38]. Specifically, FERC's regulations provide QFs with two mechanisms for selling their electrical output to a utility: (1) on an "as available" basis with avoided costs calculated at the time of delivery; or (2) through a contract or legally enforceable obligation with avoided costs calculated at the time of delivery or at the time the obligation is incurred. *See* [*id.* at ¶¶ 24, 40]; 18 C.F.R. § 292.304(d). sPower asserts, however, that Rule 3902(c) prevents QFs over 100 kWs from exercising these rights by requiring each to win "an infrequently-held [request for proposals]" before selling its output. [#62 at ¶ 41].

Plaintiff contends it has expended significant amounts of company resources and money readying its QFs for operation, but Public Service Company of Colorado ("Public Service") refused to enter into a long-term contract or other obligation with Plaintiff to purchase energy

and capacity because of Rule 3902(c). *See* [*id.* at ¶¶ 42–54]. sPower's attempts to petition the Colorado Public Utilities Commission ("COPUC") to waive the requirements of Rule 3902(c), which the COPUC does on occasion [*id.* at ¶ 39], and its challenge to the validity of Rule 3902(c) were unsuccessful. *See* [*id.* at ¶¶ 55–56]. sPower also challenged (unsuccessfully) Rule 3902(c)'s electronic resource planning ("ERP") bidding requirement with FERC, given that FERC had twice before rejected similar state rules. *See* [*id.* at ¶¶ 60–68]; 16 U.S.C. § 824a-3(h).

Plaintiff then filed the instant action pursuant to section 210(h)(2)(B) of the Act. [#62 at ¶ 68]; 16 U.S.C. § 824a-3(h)(2)(B). sPower requests that the court "overturn" Rule 3902(c) for violating both PURPA and FERC's implementing regulations. As Defendants, Plaintiff names the COPUC and its Commissioners Mr. Ackermann and Mses. Koncilja and Moser in their official capacities, *see* [#62]; Black Hills/Colorado Electric Utility Company, LP ("Black Hills") has since intervened as an additional Defendant, *see* [#60].

Defendants again move to dismiss the FAC because Plaintiff lacks standing to challenge Rule 3902(c), its challenge is unripe, and it fails to plead a plausible claim for relief. [#52]. In the alternative to dismissal, Defendants request the court stay this matter under the abstention doctrine of *Burford v. Sun Oil Company*, 319 U.S. 315 (1943). [*Id.*]. Plaintiff has filed its Response and Defendants their Reply. [#54; #55]. The Motion to Dismiss is now ripe for recommendation.

**LEGAL STANDARDS**

I.  **Rule 12(b)(1)**

Federal courts are courts of limited jurisdiction and, as such, "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *The Wilderness Soc. v. Kane Cty., Utah*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011)

4

(Gorsuch, J., concurring). Indeed, courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party. *1mage Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)).

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may bring either a facial or factual attack on subject matter jurisdiction, and a court must dismiss a complaint if it lacks subject matter jurisdiction. *See generally Pueblo of Jemez v. United States*, 790 F.3d 1143, 1147 n.4 (10th Cir. 2015). For a facial attack, the court takes the allegations in the Complaint as true, but when reviewing a factual attack the court may not presume the truthfulness of the Complaint's factual allegations and may consider affidavits or other documents to resolve jurisdictional facts. *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995). The burden of establishing jurisdiction rests with the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

## II. Rule 12(b)(6)

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). In some instances, the court may consider materials outside the complaint without converting a motion to dismiss to one for summary judgment if the documents are central to the plaintiff's claims, referred to in the complaint, and the parties do not dispute their authenticity. *See Cty. of Santa Fe, N.M. v. Public Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002). Additionally,

the court may take judicial notice of undisputed court documents and matters of public record. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006).

In any case, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible."). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

### I. Dismissal Pursuant To Rule 12(b)(1)

Defendants first move for dismissal under Rule 12(b)(1), arguing that the court lacks subject matter jurisdiction over Plaintiff's claim because sPower lacks standing and its claim is unripe. For the following reasons, this court concludes that sPower has standing and that its claim is ripe for adjudication, and, therefore, respectfully RECOMMENDS that the Motion to Dismiss be DENIED on these grounds.

#### A. Standing

The party seeking to invoke federal court jurisdiction bears the burden of satisfying the elements of standing. *See Wyoming Sawmills Inc. v. U.S. Forest Serv.*, 383 F.3d 1241, 1246 (10th Cir. 2004) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). To satisfy

Article III's case or controversy requirement, sPower must establish: (1) an injury in fact; (2) a sufficient causal connection between the injury and the conduct complained of; and (3) a likelihood of redressability by a favorable decision. *New Mexico v. Dep't of Interior*, 854 F.3d 1207, 1214-15 (10th Cir. 2017) (citations and quotation marks omitted). Defendants assert that sPower fails to allege a concrete and particularized injury that is fairly traceable to Rule 3902(c) or Defendants. *See* [#52 at 5–7; #55 at 3–5]. That is, Plaintiff still has opportunities to procure contracts with Colorado utilities through Rule 3902(c)'s ERP process, there is no allegation that sPower has been precluded from utilizing the ERP process aside from its own assertions that it has not done so, any claimed injury is conjectural and hypothetical such that sPower assumes the outcomes of future events, and nothing links its financial injuries to Defendants themselves. [#52 at 6–7; #55 at 4–5]. For the following reasons, I respectfully disagree and conclude sPower has standing to challenge Rule 3902(c).

"Injury in fact involves invasion of a legally protected interest that is concrete, particularized, and actual or imminent." *Citizen Ctr. v. Gessler*, 770 F.3d 900, 910 (10th Cir. 2014). Conjectural or hypothetical injuries or future injuries that are not certainly impending are insufficient. *See Brown v. Buhman*, 822 F.3d 1151, 1165 (10th Cir. 2016); *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 544 (10th Cir. 2016) ("[A] plaintiff must offer something more than the hypothetical possibility of injury. . . . the alleged injury [cannot be] too speculative"). And, while general factual allegations of injury may suffice, conclusory allegations are insufficient; sPower "must adequately allege a plausible claim of injury." *COPE v. Kan. State Bd. of Educ.*, 821 F.3d 1215, 1221 (10th Cir. 2016).

In its prior Recommendation, this court concluded that sPower failed to plead an injury-in-fact sufficient to confer standing. *See* [#41 at 9–12]. The Recommendation highlighted the

7

absence of factual allegations regarding sPower's actual inability to enter into long-term contracts or other legally enforceable obligations with Colorado utilities, or that Rule 3902(c) prohibited utilities from contracting with Plaintiff's QFs. *See* [*id.* at 11]. The FAC, however, cures these deficiencies.

Now, Plaintiff directs the court to the resource and monetary expenditures associated with readying its QFs for operation, including the development of engineering designs, the identification of appropriate lands and leases, the construction of the QFs, the evaluation of weather patterns and topography, and the completion of the application and permitting processes for interconnection with utility grids. *See* [#62 at ¶¶ 42–49]. The FAC continues with details regarding Plaintiff's attempts to enforce its contracting rights under PURPA on Public Service. *See* [*id.* at ¶¶ 50–54; #46-5; #46-6]. Plaintiff alleges it contacted Public Service in May 2016, to inquire into pricing for proposed QF renewable power generation projects, but Public Service informed sPower that QFs with greater than 100 kWs capacity must be successful bidders through Public Service's ERP process. *See* [#62 at ¶¶ 51–52]. Plaintiff then informed Public Service of its belief that Rule 3902(c) violated PURPA's must-buy provision, and again sought to negotiate "long-term avoided cost contracts for the purchase of the QFs' energy and capacity." [*Id.* at ¶ 53; #46-5]. In response, Public Service stated it could not accommodate sPower's request, as Rule 3902(c) required Plaintiff to participate in the ERP process, which was ongoing; Public Service also disagreed with sPower's position that Rule 3902(c) violated PURPA's must-buy provision. *See* [#62 at ¶ 54; #46-6]. sPower eventually sought a waiver of Rule 3902(c)'s bidding requirements from the COPUC, but the COPUC denied the request as procedurally improper and alluded to its belief that Rule 3902(c) complied with federal law. *See* [#62 at ¶¶ 55–56; #46-7; #46-8].

The above allegations adequately establish a concrete and particularized injury for standing purposes. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). It is important to note that sPower challenges Rule 3902(c), as written, as violative of and preempted by PURPA, not that it is precluded from participating in the ERP process. *Cf. Wyoming Sawmills Inc.*, 383 F.3d at 1248–49 (holding a loss of opportunity to bid on logging projects was not an injury sufficient to confer standing); *Allco Fin. Ltd. v. Klee*, No. 3:15-CV-608 (CSH), 2016 WL 4414774, at *15 (D. Conn. Aug. 18, 2016) (holding that the plaintiff's alleged injury—"not being able to get a contract" under a Connecticut regulation implementing the PURPA—"can only be characterized as 'conjectural or hypothetical.'"). Plaintiff asserts Rule 3902(c) improperly prevents its QFs from enforcing PURPA's "must-buy" provision vis-à-vis Public Service; thus, it is immaterial whether sPower can participate in an ERP process or whether sPower would be successful in doing so. sPower's claim remains a facial challenge to Rule 3902(c), but as distinguished from the original Complaint, sPower now ties this facial challenge to a specific, articulated injury.

Further, these allegations demonstrate that sPower's injury is fairly traceable to Defendants and that a favorable decision by the court will redress said injury. Despite Defendants' contention to the contrary, the basis for Public Service's rejection of Plaintiff's contracting negotiations was Rule 3902(c)'s ERP bidding requirement, a requirement implemented by Defendants. sPower therefore alleges that Defendants are "responsible for the injury, rather than some other party not before the court." *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013). Additionally, a favorable ruling by the court—that Rule 3902(c) violates PURPA—will redress Plaintiff's injury, such that sPower, and all similarly situated QFs, can force Public Service and other Colorado utilities into contracting for their QFs'

energy and capacity without winning an ERP bid. *See Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1159 (10th Cir. 2005) (explaining that redressability "must be the effect of the court's judgment on the defendant that redresses the plaintiff's injury, whether directly or indirectly"). Accordingly, this court concludes sPower has standing to proceed with its facial challenge to Rule 3902(c). *See The Wilderness Soc. v. Kane Cty., Utah*, 632 F.3d 1162, 1168 & n.1 (10th Cir. 2011).

### B. Ripeness

The question of ripeness, like other challenges to a court's subject matter jurisdiction, is treated as a motion under Rule 12(b)(1). *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995). The ripeness doctrine reflects an important prudential limitation on the court's exercise of jurisdiction—the inquiry focuses on whether the alleged harm has matured sufficiently to warrant judicial intervention. *See Morgan v. McCotter*, 365 F.3d 882, 890 (10th Cir. 2004) ("Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." (citations and internal quotation marks omitted)). "When assessing ripeness, we must 'evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Utah v. U.S. Dep't of the Interior*, 210 F.3d 1193, 1196 (10th Cir. 2000) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967)).

Defendants move to dismiss the FAC because sPower's claim is not ripe for adjudication. First, Defendants aver that sPower cannot demonstrate that Rule 3902(c) prohibited it from securing energy and capacity contracts since it is an intervenor in Public Service's ongoing ERP process. *See* [#52 at 8; #55 at 5]. That is, Plaintiff cannot claim any injury until the conclusion of this process. *See* [#52 at 8; #55 at 5–6]. Second, because the COPUC has initiated

proceedings to receive comments and input on its rules, including Rule 3902(c), sPower's challenge to Rule 3902(c) is not ripe unless and until a final agency action on the matter occurs. [#52 at 8–9].

Plaintiff responds, and this court agrees, that its claim is ripe for adjudication. [#54 at 5–7]. This is because sPower challenges Rule 3902(c) in its current form and as-implemented in Colorado, which, according to sPower, violates PURPA and FERC regulations. *See* [*id.* at 6–7]. And, again, it is the requirement that all QFs over 100 kWs participate in the ERP process that is the basis for sPower's articulated injury, not the outcome of that process, meaning the outcome of the ongoing Public Service ERP process does not dictate whether its claim is ripe. Moreover, it is unclear whether the COPUC's recent proceedings will yield a formal rulemaking procedure regarding amendments to or the re-writing of Rule 3902(c). Indeed, a review of the COPUC order initiating these proceedings reveals an intent to gather preliminary data and opinions that *may* lead to future rulemaking proceedings. [#52-2]. Therefore, Plaintiff's challenge to Rule 3902(c) is ripe for adjudication.

## II.     Dismissal Pursuant To Rule 12(b)(6)

Defendants also move to dismiss the FAC under Rule 12(b)(6) because sPower fails to state a claim for relief that is plausible on its face. Defendants argue the FAC "contains insufficient facts to support the claim alleging Rule 3902(c) is incompliant with PURPA[,]" and sPower's reliance on two non-binding FERC Declaratory Orders is insufficient. [#52 at 10]; *see also* [#55 at 6–7]. Respectfully, I disagree, and RECOMMEND that the Motion to Dismiss also be DENIED on these grounds.

A.  **PURPA and Rule 3902(c)**

Through PURPA, Congress sought to encourage production of alternative sources of energy, and "attempted to promote renewable energy sources by requiring utilities to buy power from small facilities that met criteria established by the statute and FERC." *N. Laramie Range All. v. F.E.R.C.*, 733 F.3d 1030, 1032 (10th Cir. 2013); *see also* 16 U.S.C. § 824a-3 (encouraging the development of cogeneration and small power production facilities to alleviate demand on traditional fossil fuels). Relevant here, section 210(a), 16 U.S.C. § 824a-3(a), requires FERC to promulgate regulations governing transactions between utilities and QFs in connection with the purchase and sale of energy and capacity at the utility's avoided costs. *See Niagara Mohawk Power Corp. v. Fed. Energy Regulatory Comm'n*, 306 F.3d 1264, 1266 (2d Cir. 2002); *see also* 18 C.F.R. §§ 292.303 (governing purchase and sale of energy and capacity), 292.304 (establishing rates for such sales). Section 210(f)(1) obligates state regulatory authorities, such as the COPUC, to implement FERC's rules "for each electric utility for which it has ratemaking authority." 16 U.S.C. § 824a-3(f)(1). Should a state regulatory authority fail to "implement" FERC's rules, section 210(h)(2), 16 U.S.C. § 824-3(h)(2), allows FERC or private persons (subject to two conditions) to sue the state regulatory authority in federal district court to enforce FERC's rules. *See Portland Gen. Elec. Co. v. Fed. Energy Regulatory Comm'n*, 854 F,3d 692, 700 (D.C. Cir. 2017).

In accordance with section 210(f)(1), the COPUC promulgated Rule 3902(c). *See* 4 Colo. Code Regs. § 723-3:3902(c). For QFs with a design capacity over 100 kWs, Rule 3902(c) requires utilities to "use a bid or an auction or a combination procedure to establish its avoided costs . . . [and] [t]he utility is obligated to purchase capacity or energy from a [QF] *only if* the [QF] is awarded a contract under the bid or auction or combination process." *Id.* (emphasis

added). Thus, a QF must be a successful ERP bidder before it can contract with a utility for the purchase and sale of its energy and capacity.

B.   sPower's Challenge

As discussed, sPower's challenge to Rule 3902(c) focuses on the Rule's use of an ERP bidding process as a condition precedent to QFs over 100 kWs contracting with utilities. sPower alleges that this requirement violates QFs' rights under PURPA and FERC regulations to force utilities into contracts or legally enforceable obligations for energy and capacity. *See generally* [#62]. Plaintiff alleges that FERC has twice opined that similar state rules run afoul of PURPA, and argues that the same is true of Rule 3902(c).

Defendants contend that sPower's reliance on the two FERC Declaratory Orders concerning similar state rules is misplaced. According to Defendants, these Declaratory Orders are non-binding as they are akin to informal agency guidance and, thus, should not be followed by this court. [#52 at 10–12; #55 at 7]. Defendants further argue that these two Declaratory Orders are factually inapposite to sPower's claim and Rule 3902(c), an additional reason for finding that the FAC fails to state a claim for relief that is plausible on its face. [#52 at 10–12; #55 at 7]. Plaintiff responds that the FERC Declaratory Orders are entitled to "great deference" and the court should consider them "persuasive precedent" at later stages of this action, because it is sufficient at this juncture that the FAC pleads that Rule 3902(c) violates the plain language of PURPA and FERC regulations. [#54 at 8].[2] I consider the Parties' arguments in turn.

Regarding the two FERC Declaratory Orders relied on by sPower, this court notes that, "[w]hile this FERC-issued document is rather impressively called a Declaratory Order, it is

---

[2] sPower also argues the COPUC is considering an additional proposal that would further "undermine [its] rights and remedies." [#54 at 9]. This proposal, which appears to be a Stipulation concerning Public Service's retirement of existing coal-fired generation resources, is not pleaded in the FAC and is not properly before this court on the instant Motion. Thus, I do not consider sPower's arguments on this point.

13

actually akin to an informal guidance letter." *Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380, 391 (5th Cir. 2014). As such, it is not entitled to "*Chevron*-style deference." *See Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000). Rather, "this kind of informal agency position warrants deference only to the extent that it is thoroughly considered and well-reasoned, or otherwise manifests certain qualities that gives it the 'power to persuade[.]'" *United States v. Osage Wind, LLC*, 871 F.3d 1078, 1088 (10th Cir. 2017) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)); *accord Xcel Energy Servs. v. F.E.R.C.*, 407 F.3d 1242, 1244 (D.C. Cir. 2005) ("An order that does no more than announce the Commission's interpretation of the PURPA or one of the agency's implementing regulations is of no legal moment unless and until a district court adopts that interpretation when called upon to enforce the PURPA." (citation and internal quotation marks omitted)).

In both *Hydrodynamics Inc. et al.*, 146 FERC ¶ 61193 (F.E.R.C. 2014) [hereinafter "*Hydrodynamics*"] and *Windham Solar LLC et al.*, 156 FERC ¶ 61042 (F.E.R.C. 2016) [hereinafter "*Windham*"], FERC declined to initiate enforcement proceedings against state regulatory authorities, but issued Declaratory Orders regarding Hydrodynamics's and Windham's challenges to state rules. In *Hydrodynamics*, FERC considered a challenge to a Montana Public Service Commission rule that required QFs larger than 10 megawatts ("MW") to win a competitive solicitation before entering into long-term contracts for energy and capacity. *Hydrodynamics*, 156 FERC ¶ 61193, 61844. FERC stated that "a QF has the unconditional right" to choose to sell its output to an electric utility and, in exercising its right, may contract with the utility or force the utility to accept its output through a legally enforceable obligation approved by state authorities. *Id.* FERC concluded that the Montana rule was inconsistent with PURPA and FERC regulations, because it offered the competitive solicitation process "as the

14

only means by which a QF greater than 10 MW can obtain long-term avoided cost rates[,]" and the infrequency of such competitive solicitation processes posed an obstacle to entering legally enforceable obligations and disincentivized contract formation. *Id.* at ¶ 61193, 61845. In *Windham*, FERC reiterated its position from *Hydrodynamics* when considering a Connecticut Public Utilities Regulatory Authority rule requiring QFs to participate in a bidding process as a condition to entering into legally enforceable obligations, and noted that the Connecticut rule was inconsistent with PURPA and FERC regulations. *Windham*, 156 FERC ¶ 61042 (proclaiming, "regardless of whether a QF has participated in a request for proposal, that QF has the right to obtain a legally enforceable obligation.").

Defendants are correct that *Hydrodynamics* and *Windham* are not factually identical to sPower's case. For instance, the competitive solicitation process in *Hydrodynamics* occurred infrequently and the rule applied only to long-term contracts; the bidding process in *Windham* applied only to legally enforceable obligations—there was no indication it applied to contracts. But, contrary to Defendants' arguments, such factual variances do not necessarily rob these FERC Declaratory Orders of their persuasive value. Indeed, in each case the bidding process applied only under certain circumstances. Here, however, sPower alleges that all QFs with a design capacity greater than 100 kWs *must* win a quadrennial ERP bid to contract or enter into legally enforceable obligations with Colorado utilities, subject to possible exceptions. *See* [#62 at ¶¶ 3, 34, 36, 41, 51–56, 74–76]. sPower continues that this violates PURPA and FERC regulations, as articulated in *Hydrodynamics* and *Windham*. Thus, it appears that FERC's conclusions in *Hydrodynamics* and *Windham* are, at the least, relevant to sPower's claim. And, while sPower may ultimately fail to prevail on its theory, I conclude the FAC pleads a plausible claim at this juncture that Rule 3902(c) violates PURPA and FERC regulations by requiring QFs

15

over 100 kWs to participate in and win an ERP bid before contracting or entering into legally enforceable obligations with Colorado utilities.

## III. Alternative Relief—*Burford* Abstention

"*Burford* abstention arises when a federal district court faces issues that involve complicated state regulatory schemes." *Lehman v. City of Louisville*, 967 F.2d 1474, 1478 (10th Cir. 1992). In such instances, "federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." *Burford v. Sun Oil Co.*, 319 U.S. 315, 318 (1943) (footnote and internal quotation marks omitted); *but see Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) ("*Burford* represents an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." (internal quotation marks omitted)). But "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule, and should not be invoked lightly." *ANR Pipeline Co. v. Corp. Comm'n of State of Okla.*, 860 F.2d 1571, 1579 (10th Cir. 1988). For the following reasons, this court concludes that *Burford* abstention is unwarranted under the circumstances.

First, I note that, although the COPUC has initiated proceedings that may ultimately lead to a formal rulemaking that amends and/or alters Rule 3902(c), such proceedings are in their incipiency. *Cf. Adrian Energy Assocs. v. Mich. Pub. Serv. Comm'n*, 481 F.3d 414, 424 (3d Cir. 2007) (holding *Burford* abstention warranted when the Michigan Public Service Commission *and* the state courts were reviewing issues of reasonable consumer rates under power purchase agreements between QFs and utilities—the subject of the federal lawsuit). It therefore cannot be said at this juncture that this matter would have disruptive effects on "state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River Water*

*Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976); *cf. Grimes v. Crown Life Ins. Co.*, 857 F.2d 699, 704–05 (10th Cir. 1988) (articulating several factors that counsel against abstention, "even when states formulate comprehensive [regulatory] schemes").

Second, and importantly, sPower asserts its claim pursuant to section 210(h) of PURPA, which mandates that such actions are to be brought in *federal* court. *See* 16 U.S.C. § 824a-3(h)(2)(B) (providing that a QF may initiate a lawsuit in federal court to require a state regulatory authority to comply with PURPA if FERC declines to do so); *Occidental Chem. Corp. v. La. Pub. Serv. Comm'n*, 494 F. Supp. 2d 401, 414 (M.D. La. 2007) (holding *Burford* abstention unwarranted where the court had jurisdiction over the plaintiffs' section 210(h) and preemption claims). Moreover, a component of sPower's claim is that PURPA preempts Rule 3902(c). "Federal courts have recognized that *Burford* abstention is inappropriate where a preemption claim is well-founded. . . . In such cases, the basic premise of abstention—avoiding needless federal court intervention into important matters within the state's jurisdiction to regulate—obviously is lacking." *Am. Petrofina Co. of Tex. v. Nance*, 859 F.2d 840, 842 (10th Cir. 1988) (citations and internal quotation marks omitted). Respectfully, this court concludes that *Burford* abstention is unwarranted, and RECOMMENDS that Defendants' Motion to Dismiss also be DENIED on this ground.

## CONCLUSION

For the reasons stated herein, I respectfully **RECOMMEND** that:

(1) Defendants' Motion to Dismiss First Amended Complaint Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [#52] be **DENIED**.[3]

---

[3] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that

**IT IS FURTHER ORDERED** that:

(1) The Parties shall jointly contact the Chambers of Magistrate Judge Nina Y. Wang at (303) 335-2600 within three (3) business days of Judge Arguello's disposition of this Recommendation to set a Scheduling Conference in this matter, if necessary.

DATED: February 22, 2018

BY THE COURT:

s/Nina Y. Wang_____
Nina Y. Wang
United States Magistrate Judge

---

does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).