**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 17-cv-00683-CMA-NYW

sPOWER DEVELOPMENT COMPANY, LLC, a Delaware limited liability company,

      Plaintiff,

v.

COLORADO PUBLIC UTILITIES COMMISSION, an agency of the State of Colorado,
JEFFREY P. ACKERMANN, in his official capacity as Commissioner and Chairman of
the Colorado Public Utilities Commission,
FRANCES A. KONCILJA, in her official capacity as Commission of the Colorado Public
Utilities Commission,
WENDY M. MOSER, in her official capacity as Commissioner of the Colorado Public
Utilities Commission,
PUBLIC SERVICE COMPANY OF COLORADO, and
BLACK HILLS/COLORADO ELECTRIC UTILITY COMPANY, PC,

      Defendants.

---

**ORDER ADOPTING THE FEBRUARY 22, 2018 RECOMMENDATION OF UNITED
STATES MAGISTRATE JUDGE**

---

This matter is before the Court upon the February 22, 2018, Recommendation by

United States Magistrate Judge Nina Y. Wang that Defendant Colorado Public Utilities

Commission's ("PUC") Motion to Dismiss be denied.  (Doc. # 63.)  The PUC and

Intervenor Public Service Company of Colorado ("Public Service") objected to

Magistrate Judge Wang's Recommendation.  (Doc. ## 66, 67.)  For the reasons

described herein, PUC's and Public Service's objections are overruled.  The Court

affirms and adopts the Recommendation.

## I.   **BACKGROUND**

### A.   **RELEVANT LAWS AND REGULATIONS**

The Public Utility Regulatory Policies Act of 1978 ("PURPA"), Pub. L. No. 95-617,

92 Stat. 3117 (1978), was enacted by Congress in 1978 as part of a package of

legislation designed to combat the nationwide energy crisis.  *F.E.R.C. v. Mississippi*,

456 U.S. 742, 745 (1982).  At issue in this case is Section 210 of Title II of PURPA, 16

U.S.C. § 824a-3, which promotes the development of cogeneration[1] and small power

production[2] facilities.  *See id*. at 750.  The Supreme Court explained that "Congress

believed that increased use of these sources of energy would reduce the demand for

traditional fossil fuels" but that "traditional electricity utilities were reluctant to purchase

power from, and to sell power to, the nontraditional facilities."  *Id.*; *Am. Paper Inst., Inc.*

*v. Am. Elec. Power Service Corp.*, 461 U.S. 402, 405 (1983).

In Section 210 of PURPA, Congress accordingly directed the Federal Energy

Regulatory Commission ("FERC") to prescribe rules requiring electric utilities to sell

electricity to, and purchase electricity from, qualifying facilities ("QFs").  16 U.S.C.

§ 824a-3(a); *F.E.R.C. v. Mississippi*, 456 U.S. at 751.  PURPA also requires each state

---

[1] A "cogeneration facility" is one that produces electric energy, and steam or forms of useful energy (such as heat) which are used for industrial, commercial, heating, or cooling purposes." 16 U.S.C. § 796 (18)(A).

[2] A "small power production facility" is a facility "which is an eligible solar, wind, waste, or geothermal facility" or a facility which "produces electric energy solely by the use of, as a primary energy source, of biomass, waste, renewable resources, geothermal resources, or any combination thereof" and has a production capacity of not greater than 80 megawatts.  16 U.S.C. § 796 (17)(A).

regulatory authority to implement FERC's regulations; authorizes FERC to enforce that requirement in federal court against any non-compliant state authority; and authorizes any qualifying utility to bring suit if FERC fails to act after request.  16 U.S.C. §§ 824a-3(f), (h).  With respect to the purchase of electricity from QFs, PURPA provides that the rate, to be set by FERC, "shall be just and reasonable to the electric consumers of the electric utility and in the public interest."  16 U.S.C. § 824a-3(b).  The rate may not "provide for a rate which exceeds the incremental cost to the electric utility of alternative electric energy."  *Id*.  This limitation is known as the "avoided cost" standard[3] and is at issue in the instant litigation.  *Am. Paper Inst., Inc.*, 461 U.S. at 406.  Section 210 as a whole is sometimes referred to as PURPA's "must-buy" provision.  *See, e.g.*, *Allco Renewable Energy Ltd., v. Mass. Elec. Co.*, 875 F.3d 64, 73 (1st Cir. 2017).

Pursuant to this statutory authorization, FERC adopted regulations relating to purchases and sales of electricity to and from QFs in 1980.  *See* 18 C.F.R. §§ 292.101– 602.  Relevant here is FERC's rule that provides QFs with two mechanisms to sell their electrical output to a utility: (1) on an "as available" basis, with the purchasing utility's avoided costs calculated at the time of delivery; or (2) pursuant to a contract or "legally enforceable obligation" for a specified term, with the purchasing utility's avoided costs calculated at the time of delivery or at the time the obligation is incurred.  18 C.F.R. § 292.304(d).

---

[3] The Supreme Court explained, "The utility's full avoided cost is 'the cost to the electric utility of the electric energy which, but for the purchase from such cogenerator or small power producer, such utility would generate or purchase from another source.'"  *Am. Paper Inst., Inc.*, 461 U.S. at 406 (quoting 16 U.S.C. § 824a-3(d)).

State regulatory agencies are required by PURPA to implement FERC's regulations, as stated above.  16 U.S.C. § 824a-3(f).  States have "broad authority" in how they implement PURPA and FERC's corresponding rules, and at least one federal circuit court has recognized that "the states play the primary role in calculating avoided costs and in overseeing the contractual relationship between QFs and utilities operating under the regulations promulgated by [FERC]."  *Indep. Energy Producers Ass'n, Inc. v. Cal. Pub. Util. Comm'n*, 36 F.3d 848, 856 (9th Cir. 1994).

Defendant PUC is the responsible state agency for Colorado.  Since 1988, it has instituted "the use of competitive bidding in an electric utility resource acquisition process to establish the avoided cost for capacity purchased from [QFs]."  *In the Matter of the Application of Pub. Serv. Co. of Colo. for Approval of Its 2016 Elec. Res. Plan.*, 16A-0396E, 2016 WL 7430542, at *1 n.4 (Dec. 19, 2016) (collecting PUC decisions).  Relevant to this dispute is Rule 3902 of PUC's Rules Regulating Electric Utilities, its rule on avoided costs enacted in 2005.  Rule 3902(c) provides:

> A utility shall use **a bid or an auction** or a combination procedure to establish its avoided costs for facilities with a design capacity of greater than 100 KW.  The **utility is obligated to purchase** capacity or energy from a qualifying facility **only if the qualifying facility is awarded a contract under the bid or auction or combination process**.

4 C.C.R. § 723-3:3902(c) (emphasis added).  The bid, auction, or combination procedure—in other words, a competitive solicitation or a request for proposals—referred to in Rule 3902 is a component of the electric resource planning ("ERP") process, which each regulated utility undergoes every four years.  4 C.C.R. § 723-3:3603(a); 4 C.C.R. § 723-3:3611.  Importantly, "[t]hrough [PUC] Rule 3902(c), QFs are

awarded a contract **"only" if they win a competitive bid**." *In the Matter of the Application of Pub. Serv. Co. of Colo. for Approval of Its 2016 Elec. Res. Plan.*, 2016 WL 7430542 at *2 (emphasis added); *see also* 4 C.C.R. § 723-3:3611(a) ("It is the Commission's policy that a competitive acquisition process will normally be used to acquire new utility resources.").

## B.   FACTUAL BACKGROUND

Plaintiff sPower Development Company, LLC ("sPower"), a limited liability company incorporated in Delaware, develops and builds electric generation facilities powered by renewable energy resources—including QFs.  (Doc. # 62 at 3.)   sPower is a certified "qualifying small power producer" and currently owns and is developing eleven QFs in Colorado.  (*Id.*)   It contends that as of March 16, 2017, it had expended more than $500,000 on developing these eleven QFs.  (*Id.* at 10–11.)

sPower states that it contacted Intervenor Public Service in April and May 2016 "regarding proposed renewable power generation projects and requested information from Public Service regarding QF pricing for these projects." (*Id.* at 11.)  On May 10, 2016, Public Service responded that QFs with a design capacity of greater than 100 kW must be successful bidders through Public Service's ERP process.  (*Id.* at 12; Doc. # 46-4 at 8.)  On June 23, 2016, sPower asked via email if there were any other avenues, other than the all-source, competitive bid solicitation, for sPower to sell QF power to Public Service.  *See* (Doc. # 46-5 at 2.)

On July 18, 2016, sPower sent a letter to Public Service to notify Public Service that sPower "plan[ned] to make energy and capacity available to Public Service from

QFs" that it was developing.  (*Id.*)  sPower stated that intended to "avail itself of its federal legal right under PURPA" to do so.  (Doc. # 62 at 12.)  Citing PURPA's must-buy provision, sPower "request[ed] long-term contracts from Public Service for the purchase of energy and capacity from [sPower's] QFs," (Doc. # 46-5 at 2), over a term of twenty years and at an avoided cost rate to be determined at the time Public Service's obligation was incurred, *see* (Doc. # 46-6 at 2).

On August 8, 2016, Public Service informed sPower that Public Service could not enter into a long-term contract or obligation to purchase energy and capacity from sPower's QFs.  (*Id.*)  Public Service explained that it was bound by Rule 3902(c):

> [PUC] rules implementing PURPA generally require the use of competitive bidding for the establishment of avoided cost rates for both capacity and energy purchases.  *See* [PUC] Rule 3902(c).  While you point out that [FERC] has questioned whether the use of competitive bidding to satisfy a utility's purchase obligation is consistent with PURPA, and therefore you question whether the [PUC] rule complies with the requirements of PURPA, Public Service is nonetheless required to adhere to the [PUC] rules in their present form.

(*Id.*)  Public Service instructed sPower that it could participate in Public Service's pending all-source, competitive solicitation phase of its 2016 ERP.  (*Id.* at 3.)

sPower subsequently filed a motion with PUC, requesting that it "find that Rule 3902(c) . . . does not comply with the requirements of PURPA," that it waive Rule 3902(c), and that it "require [Public Service] to purchase [QF] energy and capacity at Public Service's avoided cost, as calculated using the differential revenue requirement methodology."  (Doc. # 46-7.)  PUC denied sPower's motion as "procedurally improper and beyond the limited scope of [the] Proceeding" on December 14, 2016.  *In the Matter of the Application of Pub. Serv. Co. of Colo. for Approval of Its 2016 Elec. Res. Plan.*,

2016 WL 7430542 at *3.  It concluded that "[u]se of competitive bidding is an appropriate means by which [PUC] establishes avoided costs for purchases from QFs" and rejected two recent FERC declaratory orders sPower had relief on as "limited to the specific facts presented and . . . not binding precedent in Colorado." *Id*.  As to sPower's request that it use alternative means of determining avoided costs, PUC stated that sPower was "not precluded from raising substantive arguments regarding alternative QF methodologies and requesting revision of [PUC] rules through appropriate filings and proceedings," consistent with Colorado's Administrative Procedure Act.  *Id*. at *4.

sPower then petitioned FERC to initiate "an enforcement action against [PUC] for its failure to implement PURPA consistent with federal law and [FERC's] regulations." (Doc. # 46-4.)  sPower reprised the same arguments it had made to PUC, mainly that Rule 3902(c) is inconsistent with PURPA and FERC's regulations "to the extent it requires QFs larger than 100 kW to win an infrequently held, all-source solicitation as a precondition to obtaining a long-term contract or legally enforceable obligation." (*Id.* at 3.)  FERC has not taken any action on sPower's petition for enforcement since it was filed on December 30, 2016, and it currently lacks the quorum necessary to act.  (Doc. # 62 at 15.)

Separately, PUC reports that it is presently pursuing efforts to review "the very issues raised by [sPower] regarding Rule 3902(c)," as well as numerous other areas of its rules.  (Doc. # 52 at 8–9.)  PUC announced these efforts in a decision on March 23, 2017, *In the Matter of the Application of Pub. Serv. Co. of Colorado for Approval of Its 2016 Elec. Res. Plan.*, 16A-0396E, 2017 WL 1880757, *33–34 (April 28, 2017),

7

and again in another decision on October 25, 2017, *In the Matter of the Commissions Review of Its Rules Governing Elec. Res. Planning, Implementing Colorado's Renewable Energy Standard, & Enabling New Tech. Integration.*, 17M-0694E, 2017 WL 4923981, *5 (Oct. 26, 2017).  Neither of these decisions specified the procedures through which PUC would review its rules, but PUC now states that it is undertaking its review consistent with its decisions and with the Colorado Administrative Procedure Act.  (Doc. # 52 at 9.)  Public Service notes in its Objection that PUC has "scheduled workshops to continue moving forward with it's the [sic] rulemaking process."  (Doc. # 67 at 6.)

## C.    PROCEDURAL HISTORY

sPower filed the instant action against PUC and its commissioners[4] pursuant to Section 210(h)(2)(B) of PURPA[5] on March 16, 2017, after PUC had denied its motion and FERC had not acted on its petition.  (Doc. # 1.)  sPower seeks declaratory and injunctive relief from the Court, in the form of a pronouncement that the second

---

[4] Public Service intervened in the case on November 15, 2017.  (Doc. # 58.)  Black Hills/Colorado Electric Utility Company, LP ("Black Hills"), also an electric utility regulated by PUC, intervened on December 5, 2017.  (Doc. ## 59, 60.)

[5] Section 210(h)(2)(B) of PURPA provides:

> Any electric utility, qualifying cogenerator, or qualifying small power producer may petition the Commission to enforce the requirements of subsection (f) as provided in subparagraph (A) of this paragraph. If the Commission does not initiate an enforcement action under subparagraph (A) against a State regulatory authority or nonregulated electric utility within 60 days following the date on which a petition is filed under this subparagraph with respect to such authority, **the petitioner may bring an action in the appropriate United States district court to require such State regulatory authority or nonregulated electric utility to comply with such requirements, and such court may issue such injunctive or other relief as may be appropriate**. The Commission may intervene as a matter of right in any such action.

16 U.S.C. § 824a-3(h)(2)(B) (emphasis added).

sentence of Rule 3902(c)—"The utility is obligated to purchase capacity or energy from a qualifying facility only if the qualifying facility is awarded a contract under the bid or auction or combination process," 7 C.C.R. § 723-3:3902(c)—"is unlawful and was implemented by [PUC] in violation of PURPA and FERC's regulations."  (Doc. # 62 at 17.)

PUC filed the Motion to Dismiss now before the Court on October 27, 2017. (Doc. # 52.)  PUC argues that dismissal is required under Federal Rule of Civil Procedure 12(b)(1) because sPower lacks standing and its claim is not ripe, and that dismissal is also required under Rule 12(b)(6) because sPower does not plead sufficient facts to support a cognizable legal claim.  (*Id.* at 4–5.)  Alternatively, PUC asks this Court to abstain under the *Burford* doctrine.  (*Id*. at 5.)  sPower responded to PUC's Motion to Dismiss on November 3, 2017 (Doc. # 54), and PUC replied in support of its Motion on November 9, 2017 (Doc. # 55).

Magistrate Judge Wang issued her Recommendation that the Court deny PUC's Motion to Dismiss on February 22, 2018.  (Doc. # 63.)  PUC and Public Service both filed Objections to the Recommendation on March 15, 2018.  (Doc. ## 66, 67.)  sPower responded to their Objections on March 29, 2018.  (Doc. # 68.)

## II.   <u>LEGAL STANDARD</u>

When a magistrate judge issues a recommendation on a dispositive matter, Fed. R. Civ. P. 72(b)(3) requires that the district judge "determine de novo any part of the magistrate judge's [recommended] disposition that has been properly objected to."  An objection is properly made if it is both timely and specific.  *United States v. One Parcel*

*of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir.1996). In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

## III.   DISCUSSION

## A.   DISMISSAL PURSUANT TO RULE 12(B)(1)

PUC first argues that sPower's Complaint should be dismissed pursuant to Rule 12(b)(1) because "fatal defects" deprive the Court of subject matter jurisdiction.  (Doc. # 52 at 5–7.)

Dismissal pursuant to Rule 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in the complaint.  "The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction."  *Port City Props. v. Union Pac. R.R. Co.*24, 518 F.3d 1186, 1189 (10th Cir. 2008).  Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests."  *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)); *see Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).  When reviewing a facial attack, a court takes the allegations in the complaint as true, but when in reviewing a factual attack, the court does not presume the truthfulness of the complaint's factual allegations

and may consider affidavits or other documents to resolve jurisdictional facts. *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995). PUC's Motion to Dismiss launches a factual attack on this Court's subject matter jurisdiction.

### 1.   **Standing**

The Court affirms the Magistrate Judge's conclusion that sPower has standing to assert its challenge against PUC. *See* (Doc. # 63 at 6.)

Article III of the United States Constitution restricts the federal courts to the adjudication of "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1; *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). The standing inquiry ensures that a plaintiff has a sufficient personal stake in the dispute to ensure the existence of a live case or controversy that renders judicial resolution appropriate. *See Allen v. Wright*, 468 U.S. 737, 750–51 (1984).

To establish Article III standing, a plaintiff must show that: (1) he has suffered an "injury in fact"; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180 (2000). For the purposes of this Motion to Dismiss, PUC contends only that Plaintiff cannot satisfy the first element of standing—injury in fact. *See* (Doc. # 52 at 5–7.)

To establish the "injury in fact" element, a plaintiff seeking prospective relief (as opposed to retrospective relief) is required to show an injury that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Tandy v. City*

*of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004).  The plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 107 n.8.  A threatened injury must be "certainly impending" or "likely"—not merely speculative.  *See Tandy*, 380 F.3d at 1283; *see also Clinton v. City of New York*, 524 U.S. 417, 433 (1998).  While general factual allegations of injury may suffice, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), conclusory allegations are insufficient; the plaintiff "must adequately allege a plausible claim of injury." *COPE v. Kan. State Bd. of Educ.*, 821 F.3d 1215, 1221 (10th Cir. April 18, 2016).

sPower claims that its injuries resulting from Rule 3902(c) are economic in nature:

> [PUC's] and Public Service's reliance on Rule 3902(c) has resulted in ongoing financial injury to sPower DevCo because it has prevented sPower DevCo from entering into a contract or legally enforceable obligation under PURPA that would allow sPower to complete the development of its QFs in Colorado, and it has caused competitive injury to sPower DevCo by denying sPower DevCo its right to sell energy and capacity to a utility outside the ERP while the CoPUC has approved new utility-owned generation and other competing generation resources outside the ERP.

(Doc. # 62 at 13.)  As to the development of its QFs, it alleges that by March 16, 2017, it had already expended more than $500,000.  (*Id.* at 11.)  sPower also contends that its "inability to exercise its federal statutory right to force Public Service to purchase its energy and capacity due to Rule 3902(c)" has resulted in "ongoing injury" because "it has denied sPower DevCo of its federal legal rights under PURPA."  (*Id.* at 13.)

The Magistrate Judge concluded that sPower's allegations "establish a concrete and particularized injury for standing purposes." (Doc. # 63 at 9.) She rejected PUC's primary argument that because sPower can still avail itself of "multiple, current opportunities . . . to seek contracts . . . with utilities," sPower's alleged injury "assumes the outcomes of the current [ERP] proceedings, rulemaking, and state agency adjudications" and is therefore too speculative to amount to an injury in fact, (Doc. # 52 at 6–7). (Doc. # 63 at 9.) The Magistrate Judge explained that "it is immaterial whether sPower can participate in an ERP process or whether sPower would be successful in doing so" because sPower is actually "challeng[ing] Rule 3902(c), as written, as violative of . . . PURPA, not that it is precluded from participating in the ERP process." (*Id.*) Magistrate Judge Wang concluded her standing analysis by briefly describing that "sPower's injury is fairly traceable to [PUC] and that a favorable decision by the [C]ourt will redress said injury." Having analyzed each of the three elements of Article III standing, *see Friends of the Earth, Inc.*, 528 U.S. at 180, the Magistrate Judge determined that sPower has standing to proceed with its facial challenge to Rule 3902(c). (Doc. # 63 at 10.)

The Court is satisfied with the Magistrate Judge's analysis of standing. PUC's first objection to the Magistrate Judge's Recommendation is merely a restatement of the argument it raised in its Motion to Dismiss: "that [sPower] cannot tie its alleged harm to the [PUC] rule." (Doc. # 66 at 4–5.) PUC again mischaracterizes sPower's claim as being that "Rule 3902(c) prevents [sPower], and other any [QF], from procuring legally enforceable obligations or contracts with utilities, in contravention of PURPA," and again

asserts that sPower has not and cannot be injured because sPower may still procure such a contract by submitting a bid in the ERP process.  (*Id.*)  For the reasons Magistrate Judge Wang adeptly explained, whether sPower can participate in an ERP process or would be successful at doing so is immaterial.  *See* (Doc. # 63 at 9.) sPower's claim is actually that it "has suffered a concrete injury as a result of its inability to force Public Service to purchase energy and capacity from its QFs, as it is sPower's statutory right to do so under PURPA and [FERC's] regulations."  (Doc. # 68 at 3.)  PUC is therefore mistaken in assuming that an infrequent (once every four years) opportunity to bid in the ERP is equally as valuable as securing a contractual obligation at sPower's option.  *See* (*id.*)

PUC's second objection to the Magistrate Judge's recommendation as to standing also fails to persuade the Court.  PUC argues that Magistrate Judge Wang was mistaken: "[a] ruling from this Court will not redress sPower's alleged injury."  (Doc. # 66 at 5–7.)  It reasons that even if the Court rules that Rule 3902(c) does not comply with PURPA and with FERC's regulations, formal rulemaking by PUC "would be required to strike 'only' from Rule 3902(c) and revise any related rules."  (*Id*. at 6.)  The Court agrees with sPower that this objection amounts to a threat by PUC that it "may drag [its] feet in implementing an order from this Court."  (Doc. # 68 at 6.)  The Court does not look kindly upon any effort to frustrate its directives.  Moreover, PUC's argument that rulemaking would be necessary to effectuate change to Rule 3902(c) is incorrect.  PUC "may comply with [PURPA's] statutory requirements by issuing regulations, by resolving disputes on a case-by-case basis, or by taking any other action

14

reasonably designed to give effect to FERC's rules." *F.E.R.C. v. Mississippi*, 456 U.S. at 751.  PUC has alternatives to rulemaking should the Court rule in favor of sPower.

For these reasons, PUC's two objections to the Magistrate Judge's standing analysis are unconvincing.[6]  The Court agrees with Magistrate Judge Wang that sPower has standing and will not dismiss its action against PUC for lack thereof.

### 2.  Ripeness

The Court also agrees with the Magistrate Judge's conclusion that sPower's claim is ripe for adjudication.  *See* (Doc. # 63 at 10–11.)

The ripeness doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."  *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 58 n.18 (1993).  The doctrine's basic rationale is to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1997).  Ripeness is a question of law.  *U.S. West, Inc. v. Tristani*, 182 F.3d 1202, 1208 (10th Cir. 1999).  When assessing ripeness, a court "evaluate[s] both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."  *Id.* at 149.  A claim is not ripe if it "involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."  *New*

---

[6] Public Service does not address standing in its Objection.  *See generally* (Doc. # 67.)

*Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995); *Texas v. United States*, 523 U.S. 296, 300 (1998).  The burden is on the plaintiff to provide evidence to establish that the issues are ripe.  *Park Lake Res. v. U.S. Dep't of Agric.*, 197 F.3d 448, 450 (10th Cir. 1999).

Magistrate Judge Wang rejected PUC's ripeness argument—that sPower's action is not ripe for adjudication because sPower has current opportunities to seek competitive contracts in ongoing ERP proceedings and because any alleged injury is contingent on future rule-making by PUC, (Doc. # 52 at 7–9).  (Doc. # 63 at 10–11.)  The former, Magistrate Judge Wang explained, is immaterial.  (*Id.* at 11.)  She reiterated that sPower is challenging Rule 3902(c) as running afoul of PURPA and FERC regulations: "it is the requirement that all QFs . . . participate in the ERP process that is the basis for aPower's articulated injury."  (*Id.*)  The "outcome of that process"—"the outcome of the ongoing Public Service ERP process"—does "not dictate whether [sPower's] claim is ripe."  (*Id.*)  As to PUC's ongoing assessment of its rules, the Magistrate Judge concluded that "it is unclear whether the . . . recent proceedings will yield a formal rulemaking procedure regarding amendments to or the re-writing of Rule 3902(c)."  (*Id.*)  PUC's orders initiating these proceedings reveal "an intent to gather preliminary data and opinions that **may** lead to future rulemaking procedures."  (*Id.*) (emphasis added.)

The Court is not moved by PUC's argument that sPower's claim is unripe because "existing [PUC] rules allow for multiple, current opportunities for [QFs] to procure contracts within and outside of the ERP process."  *See* (Doc. # 66 at 8–10.)

PUC first cites as an example Rule 3656(e), which it describes as providing "for processes enabling a utility energy supply contract" for facilities of "30 MW or less." (*Id.* at 9 (citing 4 C.C.R. § 723-3:3656(e)).)  This example is inconsequential, as Rule 3656(e) contemplates that a retail utility—not a QF—may seek PUC's approval of a renewable energy supply contract.  Rule 3656(e) provides no relief to sPower.  *See* (Doc. # 68 at 8.)  PUC then states that under its rules, any party "may file an application, petition, or complaint against a utility if there is a legal obligation under the [PUC] jurisdiction it seeks to enforce."  (Doc. # 66 at 9.)  This, however, is not the same as Rule 3902(c).  Rule 3902(c) provides that a utility is **obligated** to purchase energy and capacity from a QF **only if** the QF succeeded in the competitive bidding process. Unless and until Public Service waives Rule 3902(c), Rule 3902(c) is sPower's only mechanism for enforcing PURPA's must-buy provision against Public Service

Intervenor Public Service objects that sPower's claim is prudentially unripe and thus not fit for review, as "judicial intervention would inappropriately interfere with [PUC's] administrative processes."  (Doc. # 67 at 13–14.)  The Court rejects Public Service's objection.  Public Service's reliance on *Wyoming v. Zinke*, 871, F.3d 1133, 1141–42 (10th Cir. 2017), is unavailing.  *See* (Doc. # 67 at 13–14.)  The Tenth Circuit held in that case that reviewing a regulation was "a very wasteful use of limited judicial resources" where the regulating agency had already "clearly expressed its intent to rescind" the regulation and had issued notice of its proposed rule rescinding it in full.  *Id*. at 1142.  The Tenth Circuit concluded that this was an "unusual circumstance" that required it to hold that the appeal was unfit for review and prudentially unripe.  *Id*.

*Wyoming v. Zinke* is easily distinguished from the case presently before this Court. Unlike the regulating agency at issue in *Wyoming v. Zinke*, here, the PUC has not committed to revising or rescinding Rule 3902(c).  PUC merely stated that "a **potential** rulemaking **may** serve as an opportunity to reexamine policies and practices regarding small power producers and cogenerators that seek to sell power as QFs."   *In the Matter of the Commissions Review of Its Rules Governing Elec. Res. Planning, Implementing Colorado's Renewable Energy Standard, & Enabling New Tech. Integration.*, 2017 WL 4923981 at *5 (emphasis added).  The Court agrees with the Magistrate Judge's determination that it is "unclear" whether PUC's "recent proceedings will yield a formal rulemaking procedure regarding amendments to or the re-writing of Rule 3902(c).  (Doc. # 63 at 11.)

Public Service also objects that the Court must also consider the hardship to parties of withholding consideration of Rule 3902(c).  (Doc. # 67 at 14–15 (citing *Wyoming v. Zinke*, 871 F.3d at 1141–43).)  Public Service argues that sPower will not suffer any "discernable hardship" from further delay of review of Rule 3902(c).  (*Id.*)  The Court is not persuaded.  At this juncture, the Court credits sPower's allegations that it has "expended money and company resources to ready its QFs for operation in reliance on its rights under PURPA to force a sale of energy and capacity on Public Service," and that it is currently foregoing sales because PUC "refuses to enforce a contract" between sPower and Public Service.  (Doc. # 68 at 10–11.)

The Court therefore dismisses PUC's and Public Service's objections to Magistrate Judge Wang's conclusion that sPower's challenge to Rule 3902(c) is ripe for

adjudication.  The Court affirms the Magistrate Judge's analysis of ripeness.  *See* (Doc. # 63 at 10–11.)

**B.      DISMISSAL PURSUANT TO RULE 12(B)(6)**

PUC then argues that sPower's Complaint should dismissed pursuant to Rule 12(b)(6).  PUC faults for sPower for citing two FERC decisions, *Hydrodynamics Inc.*, 146 FERC ¶ 61193, 61845, 2014 WL 10974009, *9 (Mar. 20, 2014), and *Windham Solar LLC*, 156 FERC ¶ 61042, 2016 WL 3960135, *2 (July 21, 2016), in its Complaint, *see* (Doc. # 62 at 13–14), because it claims these decisions "have no precedential value in Colorado."  (Doc. # 52 at 9–12.)  PUC also asserts that sPower "fails to plead sufficient facts to state a claim that applies these orders here."  (*Id.*)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The scope of the allegations may not be "so general that they encompass a wide swath of conduct, much of it innocent" or else the plaintiff has 'not nudged [his] claims across the line from conceivable to plausible.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  The ultimate duty of the court is to "determine whether the

complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Magistrate Judge Wang concluded that sPower "pleads a plausible claim at this juncture." (Doc. # 63 at 15–16.)  Before analyzing PUC's argument about Rule 12(b)(6), she noted that sPower "alleges that FERC has twice opined that similar state rules run afoul of PURPA and argues that the same is true of Rule 3902(c)." (*Id.* at 13.)  As to Public Service's argument about the value of these two FERC decisions, *Hydrodynamics Inc.* and *Windham Solar LLC*, Magistrate Judge Wang reviewed the case law on FERC Declaratory Orders and similar agency decisions. (*Id.* at 13–14.)  Such an order is "actually akin to an informal guidance letter" and is not entitled to "*Chevron*-style deference," she explained. (*Id.* (quoting *Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380, 391 (5th Cir. 2014); *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000)).)  The Magistrate Judge quoted the Tenth Circuit's description in *United States v. Osage Wind*, 871 F.3d 1078, 1088 (10th Cir. 2017): "this kind of informal agency position warrants deference only to the extent that it is thoroughly considered and well-reasoned, or otherwise manifests certain qualities that gives it the 'power to persuade.'" (Doc. # 63 at 14.)  Magistrate Judge Wang agreed with PUC that *Hydrodynamics Inc.* and *Windham Solar LLC* "are not factually identical" to sPower's case but stated that "such factual variances do not necessarily rob these FERC Declaratory Orders of their persuasive value." (*Id.* at 15.)  She concluded that those

decisions were, "at the least, relevant to sPower's claims." (*Id.*)  The Magistrate Judge therefore rejected sPower's argument.

The Court is not moved by PUC's objection.  *See* (Doc. # 66 at 10–11.)  PUC reprises the same argument it makes in its Motion to Dismiss, that "[r]eliance solely on two factually-deficient and state-specific FERC rulings is an insufficient basis to bring a claim in Colorado." (*Id.* at 11.)  PUC does not dispute the Magistrate Judge's summary of guiding legal principles on informal agency position, nor does it identify why *Hydrodynamics Inc.* and *Windham Solar LLC* are not "thoroughly considered and well-reasoned," s*ee Osage Wind*, 871 F.3d at 1088.  The Court agrees with Magistrate Judge Wang's determination that decisions are relevant and may have some persuasive value.  And as sPower states in its Response, the persuasive value of the decision "is a question for the merits of this case." (Doc. # 68 at 12.)

For this reason, the Court rejects PUC's request that the Court dismiss sPower's claim for failure to state a claim.[7]

## C.   *BURFORD* ABSTENTION DOCTRINE

PUC's final, alternate argument in its Motion to Dismiss is that should the Court decide against dismissing sPower's Complaint, it should abstain under the *Burford* doctrine because "federal review unnecessarily disrupts [PUC] efforts to establish state-wide electric resource planning and related policies interrelated with state law." (Doc. # 52 at 12–13.)

---

[7] Public Service does not address Rule 12(b)(6) in its Objection.  *See generally* (Doc. # 67.)

The doctrine of abstention, "under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (internal quotation omitted).  The Supreme Court has "confined the circumstances appropriate for abstention to three general categories." *Id*. at 814.  Relevant here is the category referred to as the "*Burford* doctrine," which is derived from *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).  The Supreme Court articulated the *Burford* doctrine as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (quoting *Colo. River Water Conservation Dist.*, 424 U.S. at 813).

The Magistrate Judge concluded that *Burford* abstention is "unwarranted" under the circumstances presented in the case now before the Court.  (Doc. # 63 at 16–17.) First, she noted that PUC's initial proceedings "that may ultimately lead to a formal rulemaking that amends and/or alters Rule 3902(c) . . . are in their incipiency" and reasoned that it "therefore cannot be said at this juncture that this matter would have disruptive efforts on 'state efforts to establish a coherent policy'" with respect to an issue of public concern.  (*Id*. at 16 (quoting Colo. River Water Conservation Dist., 424 U.S. at 813).)  Second, the Magistrate Judge stated that sPower asserts is claim pursuant to

Section 210(h) of PURPA, "which mandates that such actions are to be brought in **federal** court." (*Id.* at 17 (citing, e.g., *Occidental Chem. Corp. v. La. Pub. Serv. Comm'n*, 494 F. Supp. 2d 401, 414 (M.D. La. 2007)).) Third, Magistrate Judge Wang stated the *Burford* abstention is inappropriate where, like here, the plaintiff asserts a well-founded preemption claim. (Id. (citing *Am. Petrofina Co. of Tex. v. Nance*, 859 F.2d 840, 842 (10th Cir. 1988)).)

PUC and Public Service both object and argue that the Court should abstain under the *Burford* doctrine to avoid disrupting PUC's efforts to establish a coherent energy policy. (Doc. # 66 at 11–13; Doc. # 67 at 7–12.) The Court disagrees. For the same reasons that potential changes to PUC's rules do not affect the ripeness of sPower's claim (see above), speculation about PUC's rulemaking process does not warrant *Burford* abstention. *See* (Doc. 68 at 13.) Indeed, clear guidance from this Court on PURPA's requirement may actually accelerate and add to PUC's efforts. The Court therefore affirms Magistrate Judge Wang's analysis of PUC's third and final argument in favor of dismissal.

## D. <u>CONCLUSION</u>

For the foregoing reasons, the Court ORDERS that Magistrate Judge Wang's Report and Recommendation (Doc. # 63) is AFFIRMED AND ADOPTED as an Order this Court. It is

FURTHER ORDERED that PUC's Motion to Dismiss (Doc. # 52) is DENIED.

DATED:  June 18, 2018

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge