1

```
1            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLORADO
2
    Case No. 17-cv-00683-CMA-NYW
3   _____

4   SPOWER DEVELOPMENT COMPANY, LLC,

5       Plaintiff,

6   vs.

7   COLORADO PUBLIC UTILITIES COMMISSION, et al.,

8       Defendants.
    _____
9

10          Proceedings before NINA Y. WANG, United States

11  Magistrate Judge, United States District Court for the

12  District of Colorado, commencing at 10:00 a.m., August 8,

13  2018, in the United States Courthouse, Denver, Colorado.

14  _____

15          WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16  ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17  _____

18                          APPEARANCES

19          SCOTT F. DUNBAR, Attorney at Law, appearing for

20  the Plaintiff.

21          ERIN L. McLAUTHLIN, TYLER E. MANSHOLT, and PHILIP

22  J. ROSELLI, Attorneys at Law, appearing for the Defendants.

23  _____

24                       STATUS CONFERENCE

25
```

**EXHIBIT A**

2

```
 1                  P R O C E E D I N G S
 2              (Whereupon, the within electronically recorded
 3   proceedings are herein transcribed, pursuant to order of
 4   counsel.)
 5              THE COURT:  We are here in 17-cv-683-CMA-NYW,
 6   SPower Development Company, LLC, vs. Public Utilities
 7   Commission of the State of Colorado, et al.
 8              Could I have appearances of counsel, please.
 9              MR. DUNBAR:  Good morning, Your Honor.  Scott
10   Dunbar with the law firm of Keyes & Fox here on behalf of
11   sPower.
12              THE COURT:  Good morning, Mr. Dunbar.
13              MS. McLAUTHLIN:  Erin McLauthlin, assistant
14   attorney general on behalf of the Commission.
15              THE COURT:  Good morning.
16              MR. ROSELLI:  Good morning, Your Honor.  Philip
17   Roselli with Wilkinson Barker on behalf of Public Service
18   Company of Colorado.
19              THE COURT:  Good morning, Mr. Roselli.
20              MR. MANSHOLT:  Good morning.  Tyler Mansholt on
21   behalf of Black Hills Corporation.
22              THE COURT:  Good morning, Mr. Mansholt.
23              All right.  We are here for a status conference in
24   this case.  As I understand it, we had set this for a status
25   conference after Judge Arguello's rulings, and then you all
```

**EXHIBIT A**

1 had indicated that there might be some administrative action
2 and wanted to talk about that. So we converted the
3 scheduling conference to a status conference and hopefully
4 someone can tell me what's going on, how we're going to move
5 forward.
6      MR. DUNBAR: Scott Dunbar on behalf of sPower.
7 Your Honor, I'm happy to offer our thoughts on sPower's
8 behalf. As noted in the unopposed motion that we filed and
9 the attachments to that motion, the Colorado Public Utilities
10 Commission has issued a Notice of Proposed Rulemaking, or
11 NOPR --
12      THE COURT: Yep.
13      MR. DUNBAR: -- proposing to strike the second
14 sentence of Rule 3902(c), which is, of course, at issue in
15 this case. As Your Honor is probably aware, as a public
16 state agency, it takes time for the Commission to go through
17 its administrative procedures, and from sPower's perspective,
18 we're -- we're willing to -- well, we're convinced that the
19 Commission has a sufficient sense of urgency to get that
20 rulemaking done. The -- there is a hearing scheduled in
21 September, comments will be filed before that, and so the
22 reason we've asked to extend the schedule in this proceeding
23 is to allow time for those procedures to take place.
24      We're, of course, here because we would like to see
25 the Commission implement PURPA and the FERC's regulations,

```
 1   and we hope that by the time late November rolls around,
 2   which is when we suggested a second scheduling conference,
 3   we'll know the status of the rule and we'll know the status
 4   of some applications that sPower has filed at the Public
 5   Utilities Commission seeking legally enforceable obligations.
 6            So it's our goal to ensure that or to be -- yeah,
 7   to ensure that the Commission is actually going to enforce
 8   PURPA, that it's going to both revoke its rule that's not
 9   consistent with PURPA, which is at issue in this case, and
10   that it's going to enforce the (inaudible) obligation.
11            THE COURT:  Okay.  Does anyone want to add anything
12   from defense side?
13            MS. McLAUTHLIN:  Your Honor, may I?
14            THE COURT:  Go ahead.
15            MS. McLAUTHLIN:  So from the Commission's
16   standpoint, I would add that what Mr. Dunbar says is correct,
17   that the Commission has opened a rulemaking narrowly focused
18   on this rule.  The Commission does not agree that its rules
19   are in compliant with PURPA, however; but it does
20   recognize --
21            THE COURT:  I assumed you wouldn't.
22            MS. McLAUTHLIN:  It does recognize inconsistencies
23   between the rules and there are current opportunities and to
24   make that more clear.  And as Mr. Dunbar did allude to, we
25   did receive last week, the Commission did, 18 filings from
```

1  sPower on specific adjudications.  We -- at this point those
2  are in process before the Commission, and I also agree with
3  Mr. Dunbar that by the late November date these parties will
4  know more about both the NOPR and any other filings that are
5  before the Commission and can, of course, make appropriate
6  filings at that time.
7           THE COURT:  All right.  So let's say that the
8  rulings from the Commission don't go the way that sPower
9  would like, so let's take that scenario first.  Are there
10 appeals that then would ensue through the Commission process
11 that would further delay this action or would they be done in
12 parallel?  Because I'm assuming if the ruling goes the way
13 that sPower wants it to, that this case is probably moot, but
14 maybe that assumption is not correct.
15          MR. DUNBAR:  Happy to speak to that, Your Honor.
16          From sPower's perspective, we really need to see
17 what the final decision and the NOPR is, and we also need to
18 see that the Commission is not going to impose other road
19 blocks to enforcing PURPA.  As Ms. McLauthlin noted, the
20 Commission has stated that it's revoking -- or excuse me,
21 that it's revising its rule for reasons completely unrelated
22 to PURPA.
23          Your Honor, I've been practicing in front of the
24 Public Utilities Commission for a while now, and I'm not
25 aware of anyone having ever filed applications for legally

**EXHIBIT A**

1  enforceable obligations.  My research shows that no one ever
2  has.  So from our perspective, we're -- we're very unsure
3  what's going to happen, and given that the Public Utilities
4  Commission continues to think that it's always been in
5  compliance with PURPA, we're -- we're not ready to say
6  whether this case is going to be moot or not, if, you know,
7  for example, the Commission revokes Rule 3902(c) and imposes
8  other road blocks.
9           As Your Honor knows, one of our claims for relief
10 is to enjoin the Commission from enforcing Rule 3902(c),
11 but -- and to also enjoin it from taking any other action
12 that's contrary to PURPA or FERC's regulations.
13          THE COURT:  But if they -- let's say -- and I'm not
14 trying to preclude you, Ms. McLauthlin from answering the
15 question, but let's say they revoke 3902(c) and then they put
16 up what you have described (inaudible) other road blocks,
17 wouldn't that require an amendment or a new case?
18          MR. DUNBAR:  That's certainly potential, Your
19 Honor.  It's certainly hard to speculate.  You know, perhaps
20 we would need mind our complaint.  I would hope that we would
21 not need to refile a new case, but it's just -- from our
22 perspective, it's too early to speculate exactly what will
23 happen because, as I said, this is I believe uncharted
24 territory.
25          THE COURT:  Okay.

1          MS. McLAUTHLIN: Yes, Your Honor. (Inaudible) to

2    the Zinky (ph) case that was both cited by this Court and by

3    Public Service, we do take the position that it would be moot

4    upon striking the rule. Whether there are additional actions

5    based on the direct case-by-case analysis, I think that that

6    would be more of an as-applied challenge and we would need to

7    pursue different action. Again, that all is based on

8    assumptions of whether and how those proceedings go before

9    the Commission.

10         THE COURT: Okay. So this is my suggestion to you

11   all. I can set another scheduling conference in November,

12   but that's about three months out, and I'm not trying to

13   malign the public -- the Commission at all, but I think we

14   all know that we don't know exactly what the decision is

15   going to be, when it's going to come, and how long it's going

16   to take you all to sort of regroup and figure out how to go

17   forward unless a certain set of actions happen.

18         So my suggestion would actually be for me to

19   recommend to Judge Arguello that the case be administratively

20   closed until -- and reopened for good cause. That could be

21   that -- reopening for good cause could be in November, and I

22   could get you in for a scheduling conference very shortly

23   thereafter.

24         But my concern is if I simply set a scheduling

25   conference out for November -- and this is just out of pure

1  practicality.  Your case has been pending since 2017, early
2  2017.  So that's going to get us into early 2019 before we
3  really start rolling on discovery, and then I think that I'm
4  going to feel a little bit of pressure to get you on a fairly
5  tight turnaround for discovery if the case goes forward in
6  any form.
7            And if you then figure out I need to amend my
8  pleading or seek to amend, and then there is a dispute from
9  the other side, whether or not you can amend this case or
10 not, then there is going to be motions practice, right.  I
11 would -- I would like to recommend administrative closure
12 until you figure those things out.  What that does is close
13 the case and it doesn't count anymore.  So the time clock is
14 not ticking and it doesn't -- the time period that the case
15 is administratively closed doesn't count towards the district
16 court's counting of having a case opened three or more years.
17           Now, I can't say that Judge Arguello is
18 particularly troubled by having three-year cases or not
19 three-year cases, but what I will say is, as the person who
20 is going to help you through the pretrial process, that takes
21 the pressure off as you're figuring those things out and
22 gives me a little bit more latitude that once discovery
23 starts again, I don't have to be worried about the three or
24 six months that we haven't done anything, particularly
25 because it's taken us little bit of time to get to the stage

```
 1   2.
 2              So what do you all think about that?
 3              MR. DUNBAR:  If I may ask a question, Your Honor.
 4              THE COURT:  Sure.
 5              MR. DUNBAR:  That procedural solution is just
 6   something that I'm not familiar with.
 7              THE COURT:  Sure.
 8              MR. DUNBAR:  So if Your Honor wouldn't mind saying
 9   a little more about what the burden of reopening the case
10   would be.
11              THE COURT:  It's for good cause, but honestly I've
12   never seen any district court not reopen an administratively
13   closed case.  It's actually just an administrative procedure
14   to get the case off of the Civil Justice Reporting Act docket
15   and gives me more time.
16              So, for instance, if -- you know, if you all don't
17   want to do that, then I can set a scheduling conference in
18   late November for you all and we can reconvene; but if at
19   that scheduling conference you tell me, well, we want to
20   explore amending the complaint and the other side doesn't
21   agree, or the PUC hasn't ruled yet, or the PUC has ruled, but
22   we think that we have these various administrative
23   challenges, then I've had three months that you aren't doing
24   anything in front of me that counts against the three years,
25   and then I set you for a six-month discovery period.  And
```

 1   then at the end of the six months you say, I'm not done yet,
 2   we still need X, Y and Z, or the PUC is still working and we
 3   don't know exactly what's going to happen, they're
 4   implementing regulations, whatever it is.
 5          At that point I'm somewhere in 2019 and I feel
 6   pressure -- whether or not Judge Arguello feels pressure, I
 7   feel pressure to get you moving and to trial in the case.  If
 8   the case is administratively closed, whatever time period
 9   you're not doing anything just doesn't count, and so that's
10   just three more months that I have.  I'm still going to be
11   aggressive with you all to be efficient in discovery, but it
12   just gives me a little bit more leeway to package the case
13   for Judge Arguello or issue any recommendations or rulings
14   that might come because I can imagine if there is an amended
15   complaint, that the defendants might file a dispositive
16   motion before summary judgment, and then we're just in that
17   same cycle of trying to figure out what really is at issue.
18          This suggestion really is, why don't we
19   administratively close the case for reopening for good cause,
20   the standard is good cause.  I think you had set out in the
21   motion or my recommendation for administrative closure what
22   you're doing it for and what you think the reopening would be
23   triggered by.  My thought would be that Judge Arguello would
24   not refer that motion to me, and if she thinks it's
25   appropriate, she would administratively close the case and

```
 1   then we would sort of move on from there.
 2            And I could -- you know, depending on -- I
 3   typically don't sua sponte recommend administrative closure,
 4   but I could certainly informally tell Judge Arguello that I
 5   think that's a good idea given -- it just seems like there is
 6   a lot of ambiguity still about what's going to happen, and
 7   not only what's going to happen, but what -- how you're going
 8   to react to what happened.
 9            So if all you said was, Your Honor, if they issue,
10   or they revoke the rule, the case will be moot, I would say,
11   okay, let's set a status conference or a scheduling
12   conference for November and we'll just wait for them to rule,
13   because it's sort of black and white, we're either going to
14   go forward with this case or we're not going to go forward
15   with this case.  So that doesn't concern me.
16            What -- what I'm saying is, there seems like, as
17   you're describing, if I'm hearing it right, there could be a
18   lot of permutations depending on what happens and how you
19   react to it, to this case.
20            MR. DUNBAR:  That's correct, Your Honor.
21            THE COURT:  All right.  So how do the defendants
22   feel about administrative closure?
23            MS. McLAUTHLIN:  From the Commission's standpoint,
24   I think that your recommendation makes a lot of sense.  It
25   sounds like you would like a motion from parties to set that
```

```
 1   out.
 2              THE COURT:  Right.  So let me -- let me figure that
 3   out.
 4              MS. McLAUTHLIN:  Okay.
 5              THE COURT:  So I don't know what the preference is
 6   of Judge Arguello's Chambers.  If the preference is for her
 7   to actually rule on a motion, I'm fine with that.  I don't
 8   want to create more work for you all, since this is my
 9   suggestion, so let me figure it out.  If it is -- if she's
10   fine with me simply writing a sua sponte recommendation with
11   respect to administrative closure, then my Chambers will take
12   care of that.  If she wants a formal motion from you all,
13   then that will be reflected in the minutes of the proceeding
14   and I'll set a deadline for you to do so, okay.
15              MR. ROSELLI:  Your Honor.
16              THE COURT:  Yes.
17              MR. ROSELLI:  The Public Service Company is fine
18   with that recommendation as well.
19              THE COURT:  All right.
20              MR. ROSELLI:  I know that there are metrics the
21   Court has to adhere to and I know that there are reports
22   (inaudible) case, and so I'm sympathetic as to why this makes
23   the most sense.
24              THE COURT:  All right.
25              MR. MANSHOLT:  Same for Black Hills.
```

**EXHIBIT A**

13

```
 1              THE COURT:  All right.  What about you?  You also
 2   have a say in this.
 3              MR. DUNBAR:  Thank you, Your Honor.  We certainly
 4   appreciate the recommendation.  I have one comment and
 5   then --
 6              THE COURT:  Sure.
 7              MR. DUNBAR:  -- one question.
 8              From sPower's perspective we see this as a legal
 9   question.  This case is primarily legal.  Before the first
10   motion to dismiss on the first complaint was granted,
11   Ms. McLauthlin and I had talked about just waiving discovery
12   altogether and, you know, moving straight to summary
13   judgment.
14              So I certainly understand your comments about
15   the -- about things being fast-tracked or compressed on the
16   other end, if the case starts moving forward again in
17   November, but from our perspective, at least, if the other
18   parties would be willing, we wouldn't need discovery at all.
19              THE COURT:  Okay.
20              MR. DUNBAR:  My question to you is -- well, number
21   one, does that help or change the recommendation at all, but
22   number two, I think I need some time to consult with my
23   client as to whether they would be okay with this
24   recommendation.
25              THE COURT:  Sure.
```

**EXHIBIT A**

14

```
 1              MR. DUNBAR:  And so just wondering logistically
 2   what the best way to let you know or inform the Court is.
 3              THE COURT:  So probably the best thing to do, given
 4   your two concerns, is to actually require you to file a
 5   motion for administrative closure or to reset the scheduling
 6   conference.  That will trigger me in knowing what your
 7   relative positions are.
 8              If your position really is, and you all agree, we
 9   don't need discovery and once this gets kicked back up, all
10   we're going to do is file dispositive motions for Judge
11   Arguello, then I don't have as much concern.  My concern
12   isn't really the three months between now and November, it's
13   really what happens in November to this case and have I then
14   extended you all for three months only to hear then you need
15   another six months, nine months to figure things out.  We
16   could always administratively close the case at that point,
17   if that makes you or your client more comfortable.
18              I'm not trying to force the issue of administrative
19   closure.  I'm just trying to make sure that as I'm working
20   with you all pretrial I have as much latitude as possible
21   from a timeline perspective and that I'm not wasting time
22   simply sitting that I might need later when you need
23   substantive extensions for other reasons, and I just am
24   trying to make sure that my hands aren't bound at that point
25   to say to you all, I can't give you that because we had a
```

**EXHIBIT A**

```
 1   three-month, six-month essentially a stay.  Okay.
 2           So why don't I do this.  Is two weeks enough for
 3   you all to sort of meet and confer about if you think you
 4   need discovery after the PUC action and then file either a
 5   motion to reset a scheduling conference or to
 6   administratively close the case?
 7           MR. DUNBAR:  That should be plenty of time from our
 8   perspective.
 9           THE COURT:  Is that enough for defendants?
10           MS. McLAUTHLIN:  Yes, that should be enough time.
11   As far as the discovery discussion, I believe it would be
12   regarding the case as it sits now and where we would be.
13           THE COURT:  Yeah, obviously.
14           MS. McLAUTHLIN:  Thank you.
15           THE COURT:  All right.  So I'm going to set that
16   deadline for August 22 for you all to actually file a motion
17   to reset the scheduling conference or to administratively
18   close the case.
19           Is there anything else we can talk about today that
20   would be helpful to you all?
21           MR. MANSHOLT:  Just a small administrative matter.
22           THE COURT:  Yes.
23           MR. MANSHOLT:  On July 26 Black Hills filed a
24   notice of its name change.
25           THE COURT:  Okay.
```

**EXHIBIT A**

 1          MR. MANSHOLT:  This caption does not yet reflect
 2   the updated name change.  I was wondering if Your Honor would
 3   prefer a motion to change the caption or if that's
 4   appropriate or not?
 5          THE COURT:  So typically you would have to file a
 6   motion under Rule 25 to change the name, but I'm just going
 7   to do it in the minutes of this proceeding.  I'll direct the
 8   clerk of the court and make sure -- we're probably just
 9   carrying the old caption.
10          MR. MANSHOLT:  Thank you, Your Honor.
11          THE COURT:  All right.  Anything else?
12          MR. DUNBAR:  Your Honor, just one more question.
13          THE COURT:  Sure.
14          MR. DUNBAR:  I assume that if the parties do not
15   agree on the two alternatives that you mentioned, that we
16   would just file our own motion.
17          THE COURT:  Just file your own motion.  It would be
18   disputed.  Whomever wanted to respond, would respond, and
19   then either Judge Arguello will decide for herself or she
20   will refer it to me for recommendation.  Okay.
21          Anything else that would be helpful?  All right,
22   thank you very much.  We'll be in recess.
23          (Whereupon, the within hearing was then in
24   conclusion at 10:20 a.m.)
25

**EXHIBIT A**

```
 1                  TRANSCRIBER'S CERTIFICATION

 2    I certify that the foregoing is a correct transcript to the

 3    best of my ability to hear and understand the audio recording

 4    and based on the quality of the audio recording from the

 5    above-entitled matter.

 6

 7    /s/ Dyann Labo                        August 20, 2018

 8    Signature of Transcriber              Date

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**EXHIBIT A**