IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 17-cv-00683-CMA-NYW

sPOWER DEVELOPMENT COMPANY, LLC, a Delaware limited liability company,

  Plaintiff,

v.

COLORADO PUBLIC UTILITIES COMMISSION, an agency of the State of Colorado,
JEFFREY P. ACKERMANN, in his official capacity as Commissioner and Chairman of the Colorado Public Utilities Commission,
FRANCES A. KONCILJA, in her official capacity as Commission of the Colorado Public Utilities Commission,
WENDY M. MOSER, in her official capacity as Commissioner of the Colorado Public Utilities Commission,
PUBLIC SERVICE COMPANY OF COLORADO, and
BLACK HILLS COLORADO ELECTRIC, INC.,

  Defendants.

## ORDER GRANTING DEFENDANTS' JOINT REQUEST FOR ADMINISTRATIVE CLOSURE

This matter is before the Court on all Defendants' Joint Motion Requesting Administrative Closure. (Doc. # 86.) For the following reasons, the Court grants Defendants' request for administrative closure.

### I. BACKGROUND

The Court's June 18, 2018 Order (Doc. # 69) recites the applicable factual and procedural background of this case and is incorporated herein by reference. Additional

factual background will be reiterated only to the extent necessary to address the instant motion.

## A.     CONTROLLING LAW AND REGULATIONS

In Section 210 of the Public Utility Regulatory Policies Act of 1978 ("PURPA"), Congress directed the Federal Energy Regulatory Commission ("FERC") to prescribe rules requiring electric utilities to sell electricity to, and purchase electricity from, qualifying facilities ("QF").[1] 16 U.S.C. § 824a-3(a); *F.E.R.C. v. Mississippi*, 456 U.S. 742, 751 (1982). Relevant here is FERC's rule that provides QFs with two mechanisms to sell their electrical output to a utility: (1) on an "as available" basis, with the purchasing utility's avoided costs[2] calculated at the time of delivery; or (2) pursuant to a contract or "legally enforceable obligation" for a specified term, with the purchasing utility's avoided costs calculated at the time of delivery or at the time the obligation is incurred. 18 C.F.R. § 292.304(d).

PURPA requires state regulatory agencies to implement FERC's regulations. 16 U.S.C. § 824a-3(f). Defendant Colorado Public Utilities Commission ("PUC"), the state's regulatory agency, instituted "the use of competitive bidding in an electric utility resource acquisition process to establish the avoided cost for capacity purchased from [QFs]." *In*

---

[1] QFs are cogeneration or small power production facilities. A "cogeneration facility" is one that produces electric energy, and steam or forms of useful energy (such as heat) which are used for industrial, commercial, heating, or cooling purposes." 16 U.S.C. § 796(18)(A). A "small power production facility" is a facility "which is an eligible solar, wind, waste, or geothermal facility." 16 U.S.C. § 796(17)(A).

[2] The Supreme Court explained, "[t]he utility's full avoided cost is 'the cost to the electric utility of the electric energy which, but for the purchase from such cogenerator or small power producer, such utility would generate or purchase from another source.'" *Am. Paper Inst. Inc. v. Am. Elec. Power Service Corp.*, 461 U.S. 402, 406 (quoting 16 U.S.C. § 824a-3(d)).

*the Matter of the Application of Pub. Serv. Co. of Colo. For Approval of Its 2016 Elec. Res. Plan.,*16A-0396E, 2016 WL 7430542, at *1 n.4 (Dec. 19, 2016) (collecting PUC decisions). At issue in this case is Defendant PUC's Rule 3902(c):

> A utility shall use a bid or an auction or a combination procedure to establish its avoided costs for facilities with a design capacity of greater than 100 KW. The utility is obligated to purchase capacity or energy from a qualifying facility **only if** the qualifying facility is awarded a contract under the bid or auction or combination procedure.

4 C.C.R. § 723-3:3902(c) (emphasis added); *In the Matter of the Application of Pub. Serv. Co. of Colo. For Approval of Its 2016 Elec. Res. Plan.*, 2016 WL 7430542, at *2.

## B.   FACTUAL BACKGROUND

Plaintiff sPower Development Company, LLC ("sPower") develops and builds electric generation facilities powered by renewable energy sources—including QFs. (Doc. # 62 at 3.) sPower is a certified "qualifying small power producer" and currently owns and is developing eleven QFs in Colorado. (*Id.*)

In April and May of 2016, sPower contacted Defendant Public Service Company of Colorado ("Public Service"), a public electric utility, "regarding proposed renewable power generation projects and requested information from Public Service regarding QF pricing for these projects." (*Id.* at 11.) Public Service informed sPower of the competitive solicitation process established by Defendant PUC's Rule 3902(c). (*Id.* at 12; Doc. # 46-6 at 8.) sPower then unsuccessfully attempted to enforce PURPA's must-buy provision, 16 U.S.C. § 824a-3(a), against Public Service by citing the provision in a written request to Public Service for "long-term contracts . . . for the purchase of energy and capacity from [sPower's] QFs." (Doc. # 46-5 at 2.) On August 8, 2016, Public Service informed

3

sPower that it could not enter into a long-term contract to purchase energy and capacity from sPower's QFs because sPower had not engaged any competitive bidding process, as required by Rule 3902(c). (Doc. # 46-6 at 2.)

sPower subsequently filed a motion with PUC, requesting that it find that Rule 3902(c) does not comport with PURPA, that it waive Rule 3902(c) until it is compliant with PURPA, and that it "require [Public Service] to purchase [QF] energy and capacity at Public Service's avoided cost . . . ." (Doc. # 46-7.) PUC denied sPower's motion on December 14, 2016, stating that the motion was "procedurally improper and beyond the limited scope of [the] proceeding." *In the Matter of the Application of Pub. Serv. Co of Colo. For Approval of its 2016 Elec. Res. Plan.*, 2016 WL 7430542, at *3. PUC concluded that the "[u]se of competitive bidding is an appropriate means by which [PUC] establishes avoided costs for purchases of QFs." *Id.*

On December 30, 2016, sPower unsuccessfully petitioned FERC to initiate "an enforcement action against [PUC] for its failure to implement PURPA consistent with federal law." (Doc. # 46-4.) FERC has not taken any action on sPower's petition for enforcement because it currently lacks the quorum necessary to act. (Doc. # 62 at 15.)

Finally, sPower filed the instant action against PUC and its commissioners[3] pursuant to Section 210(h)(2)(B)[4] on March 16, 2017. (Doc. # 1.) Defendant Intervenors

---

[3] Jeffrey P. Ackerman, Frances A. Koncilja, and Wendy M. Moser are Defendants in this matter in their official capacity as the Commissioners of the Colorado Public Utilities Commission.
[4] Section 210(h)(2)(B) of PURPA provides:
    Any electric utility, qualifying cogenerator, or qualifying small power producer may petition the Commission to enforce the requirements of subsection (f) as provided in subparagraph (A) of this paragraph. If the Commission does not initiate an enforcement action under subparagraph (A) against a State regulatory authority or nonregulated electric utility within 60 days following the date on which a petition is

4

Public Service and Black Hills Colorado Electric, Inc. ("Black Hills") joined this action shortly thereafter. (Doc. ## 58–60.)

On July 25, 2018, PUC issued a Notice of Proposed Rulemaking ("NOPR"), proposing to strike the sentence at issue in Rule 3902(c)—"[t]he utility is obligated to purchase capacity or energy from a qualifying facility only if the qualifying facility is awarded a contract under the bid or auction or combination process." 7 C.C.R. § 723-3:3902(c); (Doc. # 74.)

On July 27, 2018, sPower filed an unopposed Motion to Vacate and reset the scheduling conference in this matter set for August 8, 2018, because the NOPR proceeding "may resolve this litigation" by striking the very sentence sPower asserts does not comply with PURPA. (Doc. # 74 at 2.) sPower requested that the scheduling conference be reset on or after November 19, 2018, so that "the parties [can] focus on the NOPR proceeding . . . ." (Doc. # 74-4 at 2.) On that same day, the Court granted the Motion to Vacate and converted the scheduling conference into a status conference. (Doc. # 76.)

sPower and Defendants met with United States Magistrate Judge Nina Wang for the status conference on August 8, 2018. (Doc. # 81.) sPower advocated for a scheduling conference in November on the grounds that by November, the status of

---

filed under this subparagraph with respect to such authority, **the petitioner may bring an action in the appropriate United States district court to require such State regulatory authority or nonregulated electric utility to comply with such requirements, and such court may issue such injunctive or other relief as may be appropriate**. The Commission may intervene as a matter of right in any such action.
16 U.S.C. § 824a-3(h)(2)(B) (emphasis added).

Rule 3902(c) and the status of sPower's applications requesting the adjudication and enforcement of a legally enforceable obligation under PURPA would be finalized. This would result in the parties being able to clarify the current ambiguous state of this litigation. (Doc. # 86-1 at 4.) sPower also expressed concern that, although its current issue with Rule 3902(c) could be remedied by striking the sentence in dispute, the PUC could potentially set up "other roadblocks" such as "taking any other action that's contrary to PURPA or FERC's regulations." (*Id.* at 5–6.) Although PUC maintained that its rules are compliant with PURPA, it supported the request for a scheduling or status conference for the same clarification reasons sPower articulated. (*Id.* at 4.) After inquiring about the relationship between the NOPR and the instant case, such as the possibility that the NOPR would moot sPower's claim, Magistrate Judge Wang suggested administratively closing this case and wait to see if any new issues would arise after the NOPR hearing. (*Id.* at 7–9.) Magistrate Judge Wang reasoned that "all we know [right now] is that we don't know exactly what the [NOPR] decision is going to be, when it's going to come, and how long it's going to take [all of the parties] to . . . regroup and figure out how to go forward unless a certain set of actions happen." (*Id.* at 7.) In order to allow the parties ample time to confer with each other and their clients about her suggestion, Magistrate Judge Wang suggested the parties file a motion to administratively close the case by August 22, 2018. (*Id.* at 15.)

On August 22, 2018, Defendants filed their Joint Motion Requesting Administrative Closure on the grounds that the NOPR would directly address sPower's concern with Rule 3902(c) and its compliance with PURPA. (Doc. # 86.) sPower filed its

Response on September 12, 2018, opposing administrative closure because the posture of the instant case is unchanged and is ripe for review. (Doc. # 89 at 2.)

## II.     LEGAL STANDARD

Local Rule D.C.COLO.LCivR 41.2 allows for the administrative closure of matters. The First Circuit aptly explained the nature of administrative closure. *Atkins v. HCA-HealthONE, LLC*, No. 15-CV-00037-WYD-KLM, 2015 WL 1298507, at *4 (D. Colo. Mar. 19, 2015) (citing *Lehman v. Revolution Portfolio LLC*, 166 F.3d 389, 392 (1st Cir. 1999)). The First Circuit said:

> Administrative closings comprise a familiar, albeit essentially ad hoc, way in which courts remove cases from their active files without making any final adjudication. The method is used in various districts throughout the nation in order to shelve pending, but dormant, cases.

*Lehman*, 166 F.3d at 392. The First Circuit further explained that "an administrative closing has no effect other than to remove a case from the court's active docket and permit the transfer of records associated with the case to an appropriate storage repository [and] ... d[oes] not terminate the underlying case, but, rather, place[s] it in inactive status until such time as the judge, in [her] discretion or at the request of a party, cho[o]se[s] either to reactivate it or to dispose of it with finality." *Id.*

Administrative closure is "the practical equivalent of a stay." *Quinn v. CGR*, 828 F.2d 1463, 1465 n.2 (10th Cir. 1987). The Court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citation omitted). When exercising its discretion to enter a stay, the Court considers the following factors: (1) the interest of the plaintiff in proceeding expeditiously and the potential prejudice to the plaintiff of a delay; (2) the burden on the

defendant; (3) the convenience to the Court; (4) the interests of nonparties; and (5) the public interest. *Atkins*, 2015 WL 1298507 at *3 (citing *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 1:02-CV-01934-LTB-PA, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006) (internal citation omitted)).

### III.  DISCUSSION

The Court will consider sPower's opposition to the Motion in its analysis of the *String Cheese Incident* factors.

### A.  PREJUDICE TO PLAINTIFF

sPower opposes administratively closing this case for two reasons. First, sPower argues that the NOPR does not change the posture of this case, which is ripe for review. (Doc. # 89 at 2.) Second, sPower asserts that Public Service and Black Hills are currently opposing amendments to Rule 3902(c) that would allegedly interfere with amending the rule in a way that would remedy sPower's issue with Rule 3902(c). (*Id.*) The Court will address each argument.

1. Ripeness

sPower argues that this case should not be administratively closed because its issue with Rule 3902(c) is a purely legal one that is ripe for review. (*Id.*) In adopting Magistrate Judge Wang's conclusion that sPower's claim is ripe for adjudication in its June 18, 2018 Order, this Court rejected PUC's argument that "existing [PUC] rules allow[ed] for multiple, current opportunities for [QFs] to procure contracts . . ." and agreed that it was "unclear whether PUC's recent proceedings will yield a formal

8

rulemaking procedure regarding amendments to or the re-writing of Rule 3902(c)." (Doc. # 69 at 18.) Thus, the Court found sPower's claim was ripe.

However, PUC has since addressed the Court's concern of whether PUC's proceedings would actually lead to a NOPR regarding the second sentence of Rule 3902(c). (Doc. # 74 at 2.) It is no longer speculation that PUC could possibly amend the rule; PUC fully intends to amend the rule. *See* (Doc. # 74-1.) Further, sPower has "filed 18 new applications with the [PUC], requesting the adjudication and enforcement of a legally enforceable obligation under PURPA requiring Public Service (for 17 of the applications) and Black Hills (for one of the applications) to purchase energy and capacity from facilities that sPower asserts are [QFs] under PURPA." (Doc. # 86 at 3.)

The Court agrees with Defendants that "[t]he rulemaking proceeding at the [PUC], along with the 18 sPower application proceedings, could resolve or significantly impact the proceedings in this case." (*Id.*) The Court therefore rejects sPower's argument that this case should remain open because it is ripe for review and finds sPower is not prejudiced by a stay of this case because the NOPR and application proceedings could yield positive results for sPower.

2. <u>Public Service's and Black Hills' Proposed Amendments</u>

sPower opposes closing this case because Public Service and Black Hills "are actively opposing the [PUC]'s proposed rule amendment in advocacy before the [PUC]." (Doc. # 89 at 2.) sPower argues, "[t]he Court should not allow Public Service and Black Hills to urge . . . administrative[] clos[ure] . . . on the basis of a possible amendment to Rule 3902(c) while at the same time opposing any amendment that might potentially

9

resolve the case." (*Id.*) sPower relies on and cites Public Service's and Black Hills' comments in PUC's proceedings. (*Id.*)

However, each party's comments do not, as sPower argues, oppose **any** proposed amendment that would remedy sPower's issue with Rule 3902(c). Instead, each party articulates its respective concerns specifically with the proposed amendment to the rule and adds an alternative suggestion for PUC's consideration. *See generally* (Doc. ## 89-1, 89-2.)

The Court begins with Public Services' initial comments. Public Service proposes an alternative amendment[5] to ensure Rule 3902(c) is consistent with PURPA and other commission rules. (Doc. # 89-1 at 2.) Although Public Service suggests keeping the competitive bid process out of a concern that "QFs will opportunistically seek to displace low-cost bidders," it also addresses alternative methods PUC could implement should the obligation for competitive solicitation be eliminated. (*Id.* at 4–6.) Public Service states:

> Nonetheless, if the Commission does determine to strike the second sentence of Rule 3902(c), Public Service submits that it would be appropriate for the Commission to be clear on two important points. First, the Commission should expressly state that any such rule change will have prospective effect only . . . . Second, given the language in the NOPR discussing other 'opportunities' for QFs to receive a contract or legally enforceable obligation from a utility, the Commission should clarify that this statement . . . was not meant to suggest other, unspecified paths for QFs to receive a contract.

---

[5] Public Service proposes to amend Rule 3902(c) as follows: "A utility shall use a bid or an auction or a combination procedure to establish its avoided costs for facilities with a design capacity of greater than 100 KW. ***EXCEPT AS PROVIDED IN RULE 36159(a), The*** utility is obligated to purchase capacity or energy from a qualifying facility only if the qualifying facility is awarded a contract under the bid or auction or combination process." (Doc. # 89-1 at 17.)

10

(*Id.* at 18.) Although Public Service's proposed amendment keeps the competitive bid process that sPower alleges is not compliant with PURPA, Public Service also acknowledges the possibility that PUC could strike the process altogether. (*Id.*) In the event that PUC strikes the competitive bid process, Public Service provides two different suggestions PUC could implement to address its policy concerns and consequences to its customers. (*Id.*) Thus, there is no evidence that Public Service is attempting to create additional obstacles or impede PUC's efforts to amend Rule 3902(c) to address sPower's claim, undermining sPower's argument that it may be prejudiced by Public Service's attempts at amending Rule 3902(c).

Next, the Court considers Black Hills' initial comments related to PUC's proposed amendment to Rule 3902(c). Black Hills submits that "these issues require a thorough vetting to ensure that the Commission's proposal does not negatively impact utility customers." (Doc. # 89-2 at 1.) Black Hills proceeds to outline different issues with the proposed amendment, such as decreasing the cost effectiveness of the current Rule 3902(c) framework and potential consequences to the electric resource planning ("ERP") process and utility systems. (*Id.* at 2–11.) Black Hills then clarifies that it "recommends the Commission assess the issues discussed above when ruling on its NOPR," (id. at 12), which suggests it is open to compromise and is committed to finding a resolution that works for everyone. Black Hills recommends that in the event PUC

strikes the sentence at issue, then PUC should "impose limitations on PURPA acquisitions to ensure they do not result in increased customer rates."[6] (*Id.*)

Contrary to sPower's argument, Black Hills is not opposing "any amendment that might potentially resolve the case." (Doc. # 89 at 2.) Instead, Black Hills proposes an amendment that allows elimination of the competitive solicitation process but also addresses its concerns with "double payment of energy" resulting in more costs for its customers and with the potential inequitable impact the new rule would have against "developers that complied with the existing ERP process". (*Id.* at 11.)

Accordingly, the Court finds that neither Public Service nor Black Hills is proactively attempting to block PUC from amending Rule 3902(c) in a way that would address sPower's complaint. sPower faces no potential prejudice from Public Service's or Black Hills' efforts to amend Rule 3902(c).

The other part of the first *String Cheese Incident* factor is sPower's interest in proceeding with this case expeditiously. sPower filed the unopposed Motion to Vacate so that the parties could focus on the NOPR and application proceedings because the proceedings may directly affect the claim at issue in this case. (Doc. # 76.) Therefore, the Court finds that staying or administratively closing this case now would not affect the overall movement of this case in light of the proceedings currently taking place.

---

[6] Black Hills proposes the following: "A utility shall . . . file tariffs setting forth a process . . . to establish its avoided costs for facilities with a design capacity of greater than 200 kW. The utility is obligated to purchase capacity or energy from a qualifying facility, *unless a utility can demonstrate that the purchase of capacity or energy from a qualifying facility is not needed to balance the utility's load and resources or that it will increase rates to customers . . . .*" (Doc. # 89-2 at 12) (italics signify proposed amendments to the rule) (proposed deletions omitted).

Thus, the Court finds sPower is not prejudiced by a stay or administrative closure of this case because Public Service's and Black Hills' comments do not unyieldingly oppose the NOPR proceeding addressing sPower's issue in this matter. Further, the result of the proceedings may be directly dispositive in this case, so a stay would not affect sPower's interest in expeditiously moving forward.

**B.     BURDEN ON DEFENDANT**

Defendants do not oppose the administrative closure of this case. Indeed, it is their motion that is being presently considered. Therefore, the second *String Cheese Incident* factor weighs in favor of granting their motion.

**C.     CONVENIENCE TO THE COURT**

It is more convenient for the Court to enter a stay or administratively close this case to allow the NOPR and the application proceedings to conclude. sPower conceded that it is in "uncharted territory" and articulated the possibility of needing to amend its complaint as a result of the proceedings. (Doc. # 86-1 at 6.) As Magistrate Judge Wang articulated, "we're just in that same cycle of trying to figure out what really is at issue [here]." (*Id.* at 10.)

Accordingly, the Court finds that the third *String Cheese Incident* factor weighs in favor of a stay or administrative closure to allow the parties to crystallize the issue(s) in dispute, if necessary.

**D.     INTERESTS OF NONPARTIES AND THE PUBLIC**

The Court is not aware of any nonparties with significant and particularized interests in this case. As for the public, the Court finds that the public's only interest in this case so far is a general interest in its efficient and just resolution. Allowing the NOPR and application proceedings to run its course may clarify sPower's dispute with Defendants and lead to a more efficient and streamlined adjudication. Accordingly, the Court finds the fourth and fifth *String Cheese Incident* factors weigh in favor of a stay.

Taking these factors into consideration, the Court concludes that a stay of all proceedings in this case is appropriate until the NOPR and application proceedings are completed. The Tenth Circuit has construed an administrative closure to be "the practical equivalent of a stay." *Atkins*, 2015 WL 1298507, at *4 (citing *Quinn*, 828 F.2d at 1465 n.2). Accordingly, this Court finds it is appropriate to administratively close this case.

## IV.     CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Joint Motion Requesting Administrative Closure. (Doc. # 86.) It is

FURTHER ORDERED that the Clerk of the Court shall ADMINISTRATIVELY CLOSE this action pursuant to D.C.COLO.LCivR 41.2, pending a showing of good cause to reopen. It is

FURTHER ORDERED that within 10 days of completion of the Notice of Proposed Rulemaking and sPower's application proceedings, the parties are

DIRECTED to file a notice informing the Court of the outcome of the proceedings and requesting either that this case be dismissed or reopened.

DATED: November 15, 2018

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge