IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 17-cv-00683-CMA-NYW

sPOWER DEVELOPMENT COMPANY, LLC, a Delaware limited liability company,

Plaintiff,

v.

COLORADO PUBLIC UTILITIES COMMISSION, an agency of the State of Colorado,
JEFFREY P. ACKERMANN, in his official capacity as Commissioner and Chairman of the Colorado Public Utilities Commission,
FRANCES A. KONCILJA, in her official capacity as Commissioner of the Colorado Public Utilities Commission,
WENDY M. MOSER, in her official capacity as Commissioner of the Colorado Public Utilities Commission,
PUBLIC SERVICE COMPANY OF COLORADO, and
BLACK HILLS COLORADO ELECTRIC, INC.,

Defendants.

---

**ORDER DENYING PLAINTIFF'S MOTION TO REOPEN CASE AND DISMISSING CASE AS MOOT**

---

This matter is before the Court on Plaintiff sPower Development Company, LLC's ("sPower") Motion to Reopen the Case (Doc. # 92), as well as the parties' various Notices updating the Court on the status of a rulemaking proceeding and application proceedings (Doc. ## 91, 93, 94). For the reasons discussed herein, the Court denies sPower's Motion to Reopen the Case and dismisses this action in its entirety as moot.

# I. BACKGROUND

The Court recited the applicable factual and procedural background of this matter in its June 18, 2018 Order Adopting the Recommendation of United States Magistrate Judge (Doc. # 69) and in its November 15, 2018 Order Granting Defendants' Joint Request for Administrative Closure (Doc. # 90). Those Orders are incorporated herein by reference. Additional factual and procedural background will be reiterated only to the extent necessary to address sPower's Motion to Reopen the Case and the parties' Notices.

As the Court previously explained, sPower develops and builds electric generation facilities, including qualifying facilities ("QFs"), powered by renewable energy sources in Colorado.[1] (Doc. # 62 at 3.) sPower initiated this action on March 15, 2017, against Defendant Colorado Public Utilities Commission (the "PUC") and its Commissioners[2] to challenge the PUC's promulgation of Rule 3902(c) of its Rules Regulating Electric Utilities. (Doc. ## 1, 62.) Defendants Public Service Company of Colorado ("Public Service") and Black Hills Colorado Electric, Inc. ("Black Hills"), with whom sPower had unsuccessfully attempted to enter long-term contracts for the

---

[1] QFs are cogeneration or small power production facilities. A "cogeneration facility" is one that produces electric energy, and steam or forms of useful energy (such as heat) which are used for industrial, commercial, heating, or cooling purposes." 16 U.S.C. § 796(18)(A). A "small power production facility" is a facility "which is an eligible solar, wind, waste, or geothermal facility." 16 U.S.C. § 796(17)(A).

[2] Jeffrey P. Ackerman, Frances A. Koncilja, and Wendy M. Moser are Defendants in this matter in their official capacity as the Commissioners of the Colorado Public Utilities Commission.

2

purchase of sPower's energy and capacity, joined this action shortly thereafter. (Doc.
## 58–60); see (Doc. # 46-6 at 2.)

At the time sPower brought suit, Rule 3902(c) stated:

> A utility shall use a bid or an auction or a combination procedure to establish its avoided costs for facilities with a design capacity of greater than 100 KW. **The utility is obligated to purchase capacity or energy from a qualifying facility <u>only if</u> the qualifying facility is awarded a contract under the bid or auction or combination procedure**.

4 C.C.R. § 723-3:3902(c) (2017) (emphasis added). The bid, auction, or combination procedure—in other words, a competitive solicitation or a request for proposals—referred to in Rule 3902(c) is a component of the electric resource planning ("ERP") process, which each regulated utility undergoes every four years. 4 C.C.R. § 723-3:3603(a); 4 C.C.R. § 723-3:3611. Importantly, "[t]hrough [PUC] Rule 3902(c), QFs are awarded a contract 'only' if they win a competitive bid." *In the Matter of the Application of Pub. Serv. Co. of Colo. For Approval of Its 2016 Elec. Res. Plan.,* 16A-0396E, 2016 WL 7430542, *2 (Dec. 19, 2016); see also 4 C.C.R. § 723-3:3611(a) ("It is the Commission's policy that a competitive acquisition process will normally be used to acquire new utility resources.").

sPower argues that "[c]ontrary to [the Public Utility Regulatory Policies Act of 1978 ('PURPA'), 16 U.S.C. § 824a-3(a),] and the [Federal Energy Regulatory Commission's ('FERC')] regulations implementing PURPA," Rule 3902(c) unreasonably restricts "the rights of [QFs] to enter into long-term obligations by requiring QFs, such as those [sPower owned], to win a competitive solicitation process before they may enter into a contract or legally enforceable obligation with a regulated electric utility in

3

Colorado." (Doc. # 62 at 2.) sPower's sole claim is for declaratory relief; it seeks a declaration by the Court that "**the second sentence of [Defendant PUC's] Rule 3902(c)** is inconsistent with and does not comply with the requirements of PURPA or FERC's regulations implementing PURPA," as well as an order enjoining the PUC "from enforcing the second sentence of Rule 3902(c) or otherwise taking any action inconsistent with . . . PURPA." (*Id.* at 16–18) (emphasis added).

On July 25, 2018, approximately a month after the Court denied the PUC's Motion to Dismiss, *see* (Doc. # 69), the PUC issued a Notice of Proposed Rulemaking ("NOPR") to strike the sentence in Rule 3902(c) with which sPower takes issue, the second sentence: "The utility is obligated to purchase capacity or energy from a qualifying facility only if the qualifying facility is awarded a contract under the bid or auction or combination process." PUC Proceeding No. 18R-0492E, Notice of Proposed Rulemaking, Decision No. C18-0601 (July 25, 2018); *see* 7 C.C.R. § 723-3:3902(c); (Doc. # 74-1.)

On July 30 and 31, 2018, sPower filed 18 new applications with the PUC, "requesting the adjudication and enforcement of a legally enforceable obligation under PURPA requiring [Defendant] Public Service (for 17 of the applications) and [Defendant] Black Hills (for one of the applications) to purchase energy and capacity" from sPower's QFs. *See* (Doc. # 86 at 3.)

On August 22, 2018, Defendants filed a Joint Motion Requesting Administrative Closure on the grounds that "[t]he rulemaking proceeding at [the PUC, concerning Rule 3902(c)], along with the 18 sPower application proceedings, could resolve or

significantly impact the proceedings in this case." (*Id.*) The Court granted Defendants' request and administratively closed this matter on November 15, 2018. (Doc. # 90.) Weighing the five *String Cheese Incident* factors relevant to staying a civil action, *see Atkins v. HCA-HealthONE, LLC*, No. 15-CV-00037-WYD-KLM, 2015 WL 1298507, *4 (D. Colo. Mar. 19, 2015) (citing *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 1:02-CV-01934-LTB-PA, 2006 WL 894955, *2 (D. Colo. Mar. 30, 2006) (internal citation omitted)), the Court concluded that it was appropriate to administratively close the case until the NOPR regarding the second sentence of Rule 2902(c) and sPower's 18 application proceedings were completed and "pending a showing of good cause to reopen." (Doc. # 90 at 13–14.) It further ordered that within ten days of the completion of the rulemaking proceeding and sPower's application proceedings, the parties were to notify the Court of the outcome of the proceedings and to request either that the case be dismissed or reopened. (*Id.* at 14–15.)

A.  **RULEMAKING PROCEEDING REGARDING RULE 3902(C)**

As the Court stated above, the PUC issued a NOPR to strike the second sentence in Rule 3902(c) on July 25, 2018. PUC Proceeding No. 18R-0492E, Notice of Proposed Rulemaking, Decision No. C18-0601 (July 25, 2018); *see* (Doc. # 74-1.) The PUC explained in the NOPR that its staff had been hosting workshops with stakeholders to discuss possible changes to the Electric Rules and had learned from stakeholders that Rule 3902(c) "had not been updated to reflect that various alternative avenues for utility resource procurement in later-promulgated ERP . . . rules for a QF to present a contract or legally enforceable obligation from a utility." (*Id.* at 2–3.) Striking the second

5

sentence of Rule 3902(c) would "clarif[y] that the ERP process is not the only opportunity to receive a contract or legally enforceable obligation from a utility," according to the PUC. (*Id.* at 3.)

The Commission received written and oral comments concerning the proposed deletion of Rule 3902(c)'s second sentence before and at a public comment hearing on September 14, 2018. It later described that "several commentators, including the Colorado Energy Office, agree[d] that the rule is in direct conflict with existing practices and rules." PUC Proceeding No. 18R-0492E, Decision Adopting Rule Revision, Decision No. C18-1045 at 7 (Oct. 31, 2018); *see* (Doc. # 91-1). It also noted some commentators' concern "that striking the rule has directly encouraged sPower's pleadings in 18 adjudication filings" and that utilities opposed revising Rule 3902(c) at least in part because of that concern. *Id.* Finally, the Commission observed, "Numerous participants in this rulemaking proceeding also provide differing comments and analysis regarding federal statutory obligations pursuant to PURPA as it relates to Colorado's implementation of the Electric Rules, generally, including the second sentence of the specific rule at issue here." *Id.*

On October 31, 2018, the PUC adopted its proposed revision and struck the second sentence because it was "in conflict with current [PUC] rules, including without limitation Rules 3615 and 3656." *Id.* at 10; *see* (Doc. # 91-1). It noted that the rule change "[was] prospective," like any of its rule changes, and would go into effect on November 27, 2018. *Id.* at 8, 10. As to sPower's 18 previously-filed applications to the PUC, the PUC explained that sPower's applications were "submitted pursuant to Rule

6

3002(a)(XIX) regarding application processes that generally permit a non-utility to file applicants for relief before [the PUC]." *Id.* at 6. The majority of sPower's applications were consolidated, and, at the time of the PUC's decision, two proceedings were assigned to an Administrative Law Judge ("ALJ") and had a "statutory deadline for a decision . . . in April of 2019." *Id.* The PUC concluded that with these "18 current adjudications pending, a determination on the request from sPower on adjudications under the rules [was] both beyond the limited scope of the instant rulemaking and inappropriate" because it "implicate[d] litigation strategies in ongoing and current proceedings." *Id.* at 8.

On March 20, 2019, the PUC upheld the striking of Rule 3902(c)'s second sentence and denied Requests for Rehearing, Reargument, or Reconsideration ("Rehearing") of its decision. PUC Proceeding No. 18R-0492E, Decision Denying Applications for Rehearing, Reargument, or Reconsideration, Decision No. C19-0304 at 2 (March 20, 2019); *see* (Doc. # 91-2). It reaffirmed that "[t]he [previous] rule language that proffer[ed] a competitive bidding process [was] the 'only' means to procure a legally enforceable obligation [was] inconsistent with other provisions in the Electric Rules." *Id.*

at 7–8.  The PUC's decision to uphold its revision to Rule 3902(c) became effective on April 8, 2019.  *Id.* at 1.

The parties agree that the PUC's rulemaking proceeding with respect to Rule 3902(c) is now complete.  See (Doc. # 91 at 3; Doc. # 94 at 3.)

**B.   sPOWER'S APPLICATION PROCEEDINGS**

As the Court has already explained, just days after the PUC issued the NOPR regarding the second sentence of Rule 3902(c), sPower filed 18 applications with the PUC on July 30, 2018, "seeking enforcement of 17 legally enforceable obligations" that sPower purportedly "created" with Public Service and one legally enforceable obligation it purportedly created with Black Hills.[3]  (Doc. # 92 at 6); *see* (Doc. # 86 at 3.)

    1.    <u>Applications Regarding Public Service</u>

sPower's 17 applications to the PUC concerning Public Service were consolidated into Proceeding No. 18A-0505E, *et al*.  See (Doc. # 91 at 3.)  These applications requested that the PUC determine that in July 2016, sPower established legally enforceable obligations that required Public Service to purchase capacity and energy from 17 of sPower's QFs.

On December 31, 2018, ALJ Steven H. Denman recommended that the PUC grant a joint motion to dismiss sPower's 17 applications and dismiss those applications

---

[3] In the Motion to Reopen the Case and the Notices presently before the Court, sPower does not address its application to the PUC regarding a legally enforceable obligation with Black Hills. It is not clear to the Court whether sPower intends to use this action to further litigate its attempts to enter a long-term contract with Black Hills for the purchase of sPower's energy and capacity.

with prejudice (the "Recommended Decision").[4] PUC Proceeding No. 18A-0505E, *et al.*, Recommended Decision of Administrative Law Judge Granting Joint Motion to Dismiss and Dismissing the Applications With Prejudice, Decision No. R18-1179 (Doc. 31, 2018); *see* (Doc. # 91-3.) The ALJ determined that Rule 3902(c), including the second sentence that "required to purchase power from the QF only if the QF has been awarded a contract through bid or auction or combination process," "was in effect in 2016, was in effect when the NOPR began, and was in effect when the sPower filed its Applications." *Id*. at 13. Accordingly, the version of Rule 3902(c) that included the second sentence "would control" sPower's 17 applications and the question they raised—whether legally enforceable obligations between sPower and Public Service were created in 2016. *Id.* at 17.

The ALJ found that sPower's applications sought enforcement of legally enforceable obligations "under the [PUC's] proposed . . . but not yet lawfully effective version of Rule 3902(c)" that did not include the Rule's second sentence. *Id.* at 19. He concluded that applying "the not yet lawfully effective, amended Rule 3902(c), retrospectively," as sPower was asking him to do, "would be unconstitutional, in violation of the Colorado *ex post facto* clause in Article 2, § 11, of the Colorado Constitution." *Id.* at 23. He wrote:

> [U]nder the plain language of Rule 3902(c), as it existed in 2016 and as it exists today, the Commission could not lawfully determine that [legally enforceable obligations] were created by the July 18, 2016 letter to counsel for Public Service, nor could we adjudicate the [legally enforceable

---
[4] The Joint Motion to Dismiss sPower's 17 applications was filed by Public Service and the trial staff of the PUC, among others. *See* (Doc. # 91-3 at 6.)

9

> obligations] alleged by sPower or order Public Service to enter into the contract requested by sPower [because sPower failed to establish that it had been awarded contracts pursuant to bid, auction, or combination] procedure]. The plain language of Rule 3902(c), as it existed in 2016 and as it exists today, prohibits the Commission from granting the relief sought in these 17 Applications. Hence, these 17 Applications provide no plausible path to relief for sPower and must be dismissed.

*Id.* at 24; *see id.* at 10. The ALJ did not explain why he recommended dismissal with prejudice. *See id.*

On March 20, 2019, the PUC considered sPower's 17 applications and the ALJ's Recommended Decision. PUC Proceeding No. 18A-0505E, *et al.*, Decision Addressing Recommendation Decision No. R18-1179; Denying Exceptions; and Dismissing Applications without Prejudice, Decision No. C19-0301 (March 20, 2019); *see* (Doc. # 91-4). The PUC upheld the Recommended Decision "consistent with [its] discussion" and dismissed sPower's 17 applications—but did so **without** prejudice, in contrast to the ALJ. *Id.* at 16–17. The PUC summarized:

> We find the applications are appropriately dismissed, particularly given their procedural flaws and the Commission's obligation to consider applications as made by the applicant. In addition, while the ALJ and the Commission do not reach the merits of these applications, we have significant concern with the lack of supporting evidence in the applications. Finally, we conclude that these unique circumstances warrant dismissing the applications without prejudice.

*Id.* at 9. With respect to the procedural flaws in sPower's applications, the PUC affirmed the ALJ's determination that dismissal was appropriate because "the applications rel[ied] on a proposed rule change" to Rule 3902(c)—the second sentence being struck—rather than the version of Rule 3902(c) that was in place at the time sPower applied to the PUC for relief. *Id.* The PUC then went further than the ALJ, noting

"substantive concerns with the lack of documentation provided to support [sPower's applications], which included nothing more than testimony from one supporting witness, self-certification QF Form 556, and letters from counsel." *Id.* at 13. Finally, the PUC found it appropriate to dismiss sPower's applications without prejudice because "the substantive issues were not fully litigated." *Id.* at 15. It stated that "should sPower choose to adjudicate its claims, dismissing the matter without prejudice permits sPower to move forward as it sees fit through a separate proceeding with renewed timeliness." *Id.* at 15–16.

On April 23, 2019, the parties that moved to dismiss sPower's 17 applications, including Public Service and the trial staff of the PUC, filed a Joint Application for Rehearing of the PUC's decision. (Doc. # 91-5.) The moving parties sought "rehearing on [a] limited issue": the PUC's decision to dismiss sPower's 17 applications **without** prejudice. *Id.* at 5. They asserted:

> sPower's applications should be dismissed with prejudice because, as a matter of law, sPower is not entitled to the relief it seeks through those applications. Although sPower may file new applications asserting LEOs at some point in the future, the [PUC] should explicitly state that sPower is precluded from refiling applications that again assert it established [legally enforceable obligations] in 2016, or at any time when the second sentence of current Rule 3902(c) remained in effect.

*Id.* at 5–6.

On May 8, 2019, the PUC denied the moving parties' Joint Application for Rehearing and upheld its decision to dismiss sPower's 17 applications without prejudice. PUC Proceeding No. 18A-0505E, *et al.*, Decision Denying Joint Application

for Rehearing, Reargument, or Reconsideration, Decision No. C19-0414 (May 8, 2019); *see* (Doc. # 93-1).

The parties agree that sPower's application proceedings concerning Public Service, Proceeding No. 18A-0505E, *et al.*, are now complete. (Doc. # 91 at 4; Doc. # 94 at 5–6).

### 2. Application Regarding Black Hills

sPower's single application to the PUC concerning Black Hills remained a separate application proceeding, Proceeding No. 18A-0524E. On March 20, 2019, the PUC ultimately dismissed sPower's application concerning Black Hills without prejudice, just as it did with sPower's applications as to Public Service. PUC Proceeding No. 18A-0524E, Decision Addressing Recommended Decision No. R18-1180; Denying Exceptions; and Dismissing Application Without Prejudice, Decision No. C19-0302 (March 20, 2019); *see* (Doc. # 94-1). No party filed a Request for Rehearing. *See* (Doc. # 94 at 6.) Accordingly, the application proceedings concerning Black Hills, Proceeding No. 18A-0524E, concluded on April 23, 2019. *See* (*id.*)

### C. RECENT PROCEDURAL HISTORY

This case has been administratively closed since November 15, 2018, "pending a showing of good cause to reopen" (Doc. # 90 at 14), as the Court explained above. When it administratively closed the case, the Court ordered the parties to notify the

Court within ten days of completion of the rulemaking proceeding and the application proceedings and to request that the case be dismissed or reopened. (*Id.* at 14–15.)

sPower filed its First Notice on May 3, 2019, notifying the Court that the rulemaking proceeding had concluded and that, in its view, the application proceedings were also complete. (Doc. # 91.) It indicated that Defendants disagreed that the application proceedings were complete because "the other parties to that proceeding filed an application for rehearing, reargument, or reconsideration" on which the PUC had not yet taken action. (*Id.* at 2.) In sPower's view though, the outstanding application for reconsideration was immaterial because it was limited to a narrow question and would "not change the [PUC's] decision to dismiss sPower's applications on the basis of . . . Rule 3902(c)." (*Id.* at 4.)

On May 9, 2019, approximately a week later, sPower filed a Motion to Reopen the Case. (Doc. # 92.) sPower asserts that neither the rulemaking proceeding nor the application proceedings "have resolved sPower's injuries that prompted [it] to initiate the litigation" because the PUC "continues to enforce the competitive bidding requirement that appears in . . . Rule 3902(c)" and argues that "this case is ripe for adjudication. (*Id.* at 3–4, 12.) On May 14, 2019, sPower filed a Second Notice to inform the Court that the PUC had issued a written decision denying an application for Rehearing of the PUC's decision to dismiss without prejudice sPower's 17 applications concerning Public Service in Proceeding No. 18A-0505E, *et al*. (Doc. # 93.)

Defendants submitted a Joint Notice Responding to sPower's First Notice and Updating the Court on May 23, 2019. (Doc. # 94.) Defendants explained that they and

sPower "could not reach agreement on the timing of the required notice because the [application] proceedings were still ongoing" when sPower filed its First Notice, pursuant to the PUC's Rehearing processes, and argued sPower's First Notice and Motion to Reopen the Case were premature. (*Id.* at 2–3.) Defendants then sought to clarify and correct sPower's "premature, inaccurate, and incomplete" First Notice by recounting their understanding of the conclusion of the rulemaking and application proceedings. (*Id.* at 2–7.)

Defendants filed a Joint Response to the Motion to Reopen the Case on May 30, 2019. (Doc. # 95.) They argue that sPower's claim for relief—"seek[ing] a declaration that the second sentence of . . . Rule 3902(c) does not comply" with federal law—"is now moot, as the [PUC] . . . has stricken the second sentence of Rule 3902(c), and that rule change is now effective." (*Id.* at 2.) Defendants also assert that sPower may now be seeking to assert a new, different claim "relating to a proposed rule that the [PUC] is considering adopting in a separate, comprehensive rulemaking" but that reopening this case to hear such a premature claim would be futile and waste judicial resources. (*Id.* at 2, 9.)

sPower replied in support of its Motion to Reopen the Case on June 13, 2019. (Doc. # 97.) sPower argues that "it is irrelevant that the [PUC] recently amended Rule 3902(c) to remove the competitive bidding requirement" in the second sentence because the PUC "has continued to apply its unlawful competitive bidding requirement to prevent sPower from exercising its right to force QF sales on [Public Service]." (*Id.* at 2.) It characterizes "the primary issue in this case" as "ripe" and asks the Court to

reopen this matter to address the issue. (*Id.* at 3.) Replying to Defendants' Joint Response, sPower clarifies that it "does not seek to challenge a rule that has not yet [been] adopted, as the Defendants suggest," and does not seek to assert a new claim. (*Id.* at 9.)

## II. <u>LEGAL STANDARD</u>

District courts have broad discretion in managing their own dockets. *Patterson v. Santini*, 631 F. App'x 531, 533 (10th Cir. 2015) (citing *United States v. Nicholson*, 983 F.2d 983, 988 (10th Cir. 1993)). In the District of Colorado, a district court "may order the clerk to close a civil action administratively subject to reopening for good cause." *Id.* at 524 (quoting D.C.COLO.LCivR 41.2). "Therefore, in the District of Colorado, a party seeking to reopen a case that has been administratively closed must demonstrate good cause." *Id.* Good cause is not an onerous standard. *Id.* "[G]ood cause to reopen a cause exists where 'the parties wish to litigate the remaining issues that have become ripe for review.'" *Id.* (quoting *Am. Family Mut. Ins. Co. v. Teamcorp, Inc.*, 835 F. Supp. 2d 1083, 1086 (D. Colo. 2011)).

Courts in this jurisdiction, in addition to numerous other courts, have declined to reopen administratively closed cases where doing so would be futile. *Teamcorp, Inc.*, 835 F. Supp. 2d at 1086 (collecting cases). Reopening a case is futile where the case, if reopened, "would be subject to dismissal." *Id.* (quoting *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) (explaining why a motion to amend a complaint would be futile)); *see, e.g.*, *Nesmith v. Gen. Motors Corp.*, No. 03-CV-6494 CJS, 2006 WL

15

2786840, *3 (W.D.N.Y. Aug. 9, 2006) ("clearly it would be futile to grant plaintiffs' motion to reopen the case, only to have summary judgment entered against plaintiffs.").

### III. ANALYSIS

The Court denies sPower's Motion to Reopen the Case because its sole claim is moot in light of the rulemaking proceeding. Reopening the case to permit sPower to assert its claim would amount to little more than an exercise in futility.

### A. PRINCIPLES OF MOOTNESS

Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). Mootness is accordingly a threshold issue. *Schell v. OXY USA Inc.*, 814 F.3d 1107, 1113–14 (10th Cir. 2016) (quoting *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010)). If a case is moot, the court lacks subject-matter jurisdiction. *Id.* (citing *Unified Sch. Dist. No. 259 v. Disability Rights Ctr. of Kan.*, 491 F.3d 1143, 1146–47 (10th Cir. 2007)). "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (quoting *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). Relevant here, "even where litigation poses a live controversy when filed, the doctrine requires a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Schell*, 814 F.3d at 1114 (quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc)).

"Declaratory judgment actions," such as the matter presently before the Court, "must be sustainable under the same mootness criteria that apply to any other lawsuit," *Rio Grande Silvery Minnow*, 601 F.3d at 1109 (citing *Unified Sch. Dist. No. 259*, 491 F.3d at 1147)—that is, "an actual case or controversy between the parties must exist," *Schell*, 814 F.3d at 1114. "In the declaratory-judgment context, the mootness inquiry looks to whether the requested relief will actually alter the future conduct of the named parties." *Id.* (citing *Hewitt v. Helms*, 482 U.S. 755, 761 (1987)). Put simply, "[t]he crucial question is whether granting a **present** determination of the issues offered will have some effect in the real world." *Wyo. v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1212 (10th Cir. 2005) (emphasis added) (quoting *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000)).

**B. PLAINTIFF'S SOLE CLAIM IS MOOT**

As the Court explained in Section I above, sPower asserts just one claim: a claim for declaratory relief "declaring that the second sentence of Rule 3902(c) is unlawful and was implemented by the [PUC] in violation of PURPA and the FERC's regulations interpreting PURPA." (Doc. # 62 at 17.) It asks the Court to enter such a declaration and to enjoin the PUC "from enforcing the second sentence of Rule 3902(c) or otherwise taking any action inconsistent with Section 210(f) of PURPA." (*Id.* at 18.)

However, in the time since sPower initiated this litigation, the PUC has stricken the second sentence of Rule 3902(c). There is no dispute that the rulemaking proceeding described in Section I(A) is complete, *see* (Doc. # 91 at 3; Doc. # 94 at 3), and that Rule 3902(c) presently reads only: "A utility shall use a bid or an auction or a

combination procedure to establish its avoided costs for facilities with a design capacity of greater than 100 KW," 4 C.C.R. § 723-3:3902(c) (2019).

The rulemaking proceeding, in which the PUC struck the second sentence of Rule 3902(c), mooted sPower's prayer for declaratory relief. Were this Court to declare that the second sentence of Rule 3902(c) is unlawful and to enjoin the PUC from enforcing it, "it would have no effect in the real world" because the second sentence no longer exists. *See Rio Grande Silvery Minnow*, 601 F.3d at 1111–12 (in an injunctive and declaratory relief action, finding that the plaintiffs' claims were moot because the biological opinions with which they took issue had been superseded by a subsequent biological opinion); *Wyo. v. U.S. Dep't of Agric.*, 414 F.3d at 1212 (where the plaintiff sought an injunction against a rule of the U.S. Forest Service and, during litigation, the Forest Service adopted a rule that replaced the rule the plaintiff challenged, holding that "[b]y eliminating the issues upon which this case is based, adoption of the new rule . . . rendered the appeal moot"); *Jones v. Temmer*, 57 F.3d 921, 922 (10th Cir. 1995) (holding that the plaintiffs' action against the PUC on the basis of its regulations of taxicab companies was moot where, while the appeal was pending, the state legislature "passed a new law amending a portion of the statutory scheme upon which [the] plaintiffs' constitutional challenge was based").

The Court is not moved by sPower's argument that "it is irrelevant that the [PUC] recently amended Rule 3902(c) to remove the competitive bidding requirement" because the argument is founded on sPower's wholly unsupported assertion that the PUC "has continued to apply its unlawful competitive bidding requirement to prevent

18

sPower from exercising its right to force QF sales on [Public Service]." (Doc. # 97 at 2.) The Court sees **no** evidence suggesting that the PUC continues to enforce the competitive bidding requirement provided for in the second sentence of the previous version of Rule 3902(c). sPower's contention that the PUC "recently enforced" the second sentence's competitive bidding requirement "when it dismissed sPower's applications that requested the [PUC] to enforce the legally enforceable obligations that sPower created between its QFs and [Public Service] in 2016"—that is, when it dismissed sPower's 17 applications concerning Public Service in Proceeding No. 18A-0505E, *et al.*—is without merit. *See* (*id.* at 3.) The PUC did not dismiss sPower's 17 applications solely because it determined that sPower had failed to comply with the competitive bidding requirement. Rather, as the Court explained in Section I(B)(1), the PUC also "note[d] substantive concerns" about sPower's applications, especially with the "lack of documentation [sPower] provided to support" the substantive relief it sought. (Doc. # 91-4 at 13–15.) The PUC wrote, "[t]he information provided is rudimentary compared to the complicated relief sPower seeks." (*Id.* at 13.) Thus, the Court does not view the PUC's dismissal of sPower's 17 applications regarding Public Service to be evidence that the PUC is still enforcing the competitive bidding requirement of the now-stricken second sentence of Rule 3902(c).

Because the rulemaking proceeding has mooted sPower's sole claim for relief, the Court concludes that reopening the case would be futile. *See Teamcorp, Inc.*, 835 F. Supp. 2d at 1086. The Court denies sPower's Motion to Reopen the Case. (Doc. # 92.)

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS that sPower's Motion to Reopen the Case (Doc. # 92) is DENIED. It is

FURTHER ORDERED that this case is dismissed in its entirety as moot.

DATED: July 18, 2019

BY THE COURT:

*Christine M Arguello*

_____
CHRISTINE M. ARGUELLO
United States District Judge